**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

JOSUE JOSEPH, individually and on behalf of all others similarly situated,

Plaintiff,

v.

IGN ENTERTAINMENT, INC.

Defendant.

Case No. 1:24-cv-11579-MJJ

# DEFENDANT IGN ENTERTAINMENT, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF JOSUE JOSEPH'S COMPLAINT

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................ 1

I. FACTUAL BACKGROUND ........................................ 2

A. The IGN Website and IGN's Purported Use of Piano ........................................ 2

B. Plaintiff's Free IGN Website Account ........................................ 5

C. The Putative Class ........................................ 6

II. LEGAL STANDARD ........................................ 6

III. ARGUMENT ........................................ 7

A. This Action Must Be Dismissed Because Plaintiff Has Not Plausibly Alleged a Violation of the VPPA ........................................ 7

1. Plaintiff Does Not—And Cannot—Allege He is a "Consumer" of IGN's Video Content ........................................ 7

2. Plaintiff Does Not Allege IGN Knowingly Discloses *His* PII to Piano ... 12

3. IGN's Alleged Disclosures Were "[I]ncident to the [O]rdinary [C]ourse of Business" ........................................ 13

B. The Action Must Be Dismissed for Lack of Subject Matter Jurisdiction Because Plaintiff Does Not Have Article III Standing ........................................ 14

IV. CONCLUSION ........................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aduayi v. PHH Mortg. Servs.*,
No. 23-CV-10857, 2024 WL 1018441 (D. Mass. Mar. 8, 2024)....15

*Alex v. NFL Enters. LLC*,
No. 1:22-CV-09239, 2023 WL 6294260 (S.D.N.Y. Sept. 27, 2023)....8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....6

*Austin-Spearman v. AMC Network Ent. LLC*,
98 F. Supp. 3d 662 (S.D.N.Y. 2015)....9

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)....6

*Belozerov v. Gannett Co.*,
646 F. Supp. 3d 310 (D. Mass. 2022)....7

*Bowen v. Select Portfolio Servicing, Inc.*,
No. 1:23-CV-11231, 2024 WL 3552620 (D. Mass. July 26, 2024)....14, 15

*Carter v. Scripps Networks, LLC*,
670 F. Supp. 3d 90 (S.D.N.Y. 2023)....10, 11

*Edwards v. Learfield Commc'ns, LLC*,
697 F. Supp. 3d 1297 (N.D. Fla. 2023)....9

*Freeman v. Town of Hudson*,
714 F.3d 29 (1st Cir. 2013)....4

*Gardener v. MeTV*,
681 F. Supp. 3d 864 (N.D. Ill. 2023)....9, 11

*Giragosian v. Ryan*,
547 F.3d 59 (1st Cir. 2008)....4

*Golden v. NBCUniversal Media, LLC*,
688 F. Supp. 3d 150 (S.D.N.Y. 2023)....8

*Jefferson v. Healthline Media, Inc.*,
674 F. Supp. 3d 760 (N.D. Cal. 2023)....8

*Kuzenski v. Uproxx LLC*,
No. 2:23-CV-00945, 2023 WL 8251590 (C.D. Cal. Nov. 27, 2023) ....................................4, 9

*Lamb v. Forbes Media LLC*,
No. 22-CV-06319, 2023 WL 6318033 (S.D.N.Y. Sept. 28, 2023)...........................................8

*Premera Blue Cross v. Takeda Pharm. Co.*,
No. CV 23-11254, 2023 WL 9474011 (D. Mass. Nov. 20, 2023)...........................................15

*Rodriguez v. Sony Computer Ent. Am., LLC*,
801 F.3d 1045 (9th Cir. 2015) ..................................................................................................13

*Ruiz Rivera v. Pfizer Pharms., LLC*,
521 F.3d 76 (1st Cir. 2008)..........................................................................................................6

*Salazar v. National Basketball Ass'n*,
685 F. Supp. 3d 232 (S.D.N.Y. 2023), *appeal docketed*, No. 23-1147 (2d Cir.) ................9, 11

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)..................................................................................................................14

*Sterk v. Redbox Automated Retail, LLC*,
770 F.3d 618 (7th Cir. 2014) ...............................................................................................13, 14

*Sterk v. Redbox Automated Retail, LLC*,
No. 11-1729,. 2013 WL 4451223 (N.D. Ill. Aug. 16, 2013), *aff'd*, 770 F.3d 618 (7th Cir. 2014)
.....................................................................................................................................13

*Taylor v. UKG, Inc.*,
693 F. Supp. 3d 87 (D. Mass. 2023) .........................................................................................15

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)..............................................................................................................14, 15

*Watterson v. Page*,
987 F.2d 1 (1st Cir. 1993)............................................................................................................4

*Yershov v. Gannett Satellite Info. Network, Inc.*,
820 F.3d 482 (1st Cir. 2016).......................................................................................................10

**Statutes**

18 U.S.C. § 2710.............................................................................................................. *passim*

18 U.S.C. § 2710(a)(1).................................................................................................................7

18 U.S.C. § 2710(a)(2)...........................................................................................................2, 13

18 U.S.C. § 2710(a)(3) ....................7, 12

18 U.S.C. § 2710(a)(4) ....................7

18 U.S.C. § 2710(b)(1) ....................12

18 U.S.C. § 2710(b)(2)(E) ....................2, 7, 13

18 U.S.C. § 2710(c)(2)....................1

**Other Authorities**

Federal Rule of Civil Procedure Rule 12(b)(1)....................1, 15

Federal Rule of Civil Procedure Rule 12(b)(6)....................1, 6, 7

Defendant IGN Entertainment, Inc. ("IGN") hereby submits this memorandum of law in support of its Motion to Dismiss with prejudice the putative class action complaint filed by Josue Joseph ("Plaintiff") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiff, on behalf of a putative class of similarly situated persons, asks this Court to extend the safeguards of the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710 *et seq.*, far beyond the intended scope of the statute. At the time of its passage in 1988, the purpose of the VPPA was to prevent "video tape service providers" from disclosing their customers' records without consent. Since the VPPA authorizes $2,500 in "liquidated damages" (18 U.S.C. § 2710(c)(2)), it is an appealing mechanism for class action litigation. Unsurprisingly, there has been a flurry of attempts to misapply the VPPA to extract statutory damages for routine internet browsing by targeting any company that features audiovisual content on its website, even if the content is *freely* accessible to any casual visitor *without* the need to create an account or make a purchase from the website. Plaintiff's purported class action is yet another attempt.

Plaintiff claims he is entitled to statutory and punitive damages because IGN collected and shared his personally identifiably information ("PII") with a third party, piano.io ("Piano"), after he created an account on IGN's website and watched unspecified publicly available pre-recorded video content. But Plaintiff *admits* that all of IGN's video content is accessible for *free* on its website, and, tellingly, does not (because he cannot) allege that IGN required him to create an account to view video content or that doing so provided him with exclusive access to video content. Plaintiff's theory of VPPA liability is wholly untenable and suffers from several defects.

*First*, Plaintiff is not a "consumer" as defined under the VPPA since he has not, and cannot, allege that he "subscribed" to IGN's audiovisual content or that his unpaid "subscription" to IGN's website gave him access to audiovisual content that was not otherwise publicly available. Plaintiff does not and cannot allege that creating his admittedly free account gave him access to the videos he watched (because it did not), or even that it was necessary for him to create an account to access IGN's website or view the videos (because it was not).

*Second,* Plaintiff has not pled that IGN disclosed *his* PII, as Plaintiff does not allege a single fact supporting that *his* information was disclosed. Plaintiff offers no facts showing, *inter alia*, what videos he allegedly watched on IGN's website. Instead, Plaintiff relies on allegations and screen shots purporting to show a "dynamic analysis" of IGN's website conducted by a third party.

*Third*, even if Plaintiff qualified for protections of the VPPA, which he does not, any of IGN's alleged disclosures were "incident to the ordinary course of business," and therefore not actionable under the VPPA. 18 U.S.C. § 2710(b)(2)(E). The VPPA permits limited disclosure of PII to third parties when those disclosures are made as part of the "ordinary course of business", which includes, *inter alia*, "order fulfillment" and "request processing." 18 U.S.C. § 2710(a)(2). Plaintiff concedes that IGN transmitted his PII to Piano to create analytics reports that IGN then used to create customized and personalized experiences for IGN's users, like Plaintiff, the very types of limited disclosures authorized by the VPPA.

*Finally*, Plaintiff has pled only a statutory harm based on the purported violation of the VPPA and does not have Article III standing to bring his suit in federal court.

Plaintiff's attempt to skirt the VPPA's pleading requirements must be rejected. Permitting such allegations to pass judicial muster will only further embolden causal online browsers—who are not actually "consumers" under the ambit of the VPPA—to seek liability against companies offering publicly available video content on their websites. For all of these reasons, this Court should dismiss Plaintiff's VPPA claim with prejudice.

## I. FACTUAL BACKGROUND[1]

### A. The IGN Website and IGN's Purported Use of Piano

IGN is a leading Internet media company and owns and operates www.ign.com (the "IGN Website"). Compl. ¶ 2. The IGN Website features free news and reviews about television, movies, video games, comics, and technology, including video content, that users can access "via their web browers [.]" *Id.* ¶¶ 2, 8, 9. As Plaintiff acknowledges, IGN "provide[s] content to its

[1] The Factual Background reflects the facts as pled in the Complaint for the purposes of this motion. IGN reserves the right to dispute and/or contest the facts if the case proceeds beyond the pleadings stage.

extensive viewership for free [.]" Compl. ¶ 10. According to Plaintiff, IGN "prominently informs users that it provides pre-recorded video content" that can be accessed "through a 'Video' option on [the IGN] Website main menu:




*Id.* ¶ 12. As further alleged, "[u]pon clicking the 'Video' category on [the IGN] Website, users can view an assortment of pre-recorded videos, including original shows, trailers, and gameplay videos (for video games):"



Compl. ¶ 13. As Plaintiff acknowledges, *any visitor* to the IGN Website "can access the [IGN] Website to view videos such as game previews, movie trailers, and television show clips" for free. *Id.* ¶¶ 9, 10, 11, 13. Plaintiff does not allege that IGN Website visitors need a subscription to view videos on the IGN Website or that IGN Website visitors need to provide any information, including any PII, in order to access the videos, and in fact they do not as can be determined by visiting the IGN Website.[2] Indeed, Plaintiff admits as much when alleging that the URL for a video takes "anyone" who enters that URL into an Internet search browser directly to the webpage containing the video. *See Id.* ¶ 34 (featuring the below image depicting a purportedly disclosed IGN URL entered into a web browser).

Plaintiff alleges that IGN integrates an application programming interface ("API") onto the IGN Website, namely the Piano API, as either part of a Piano Software Development Kit ("SDK") or as a standalone API. *Id.* ¶ 15.[3] According to Plaintiff, Piano "empowers customers like [IGN]




to create customized digital experiences and build commercial relationships with [their] users –

[2] On a motion to dismiss, courts may consider extrinsic documents if those documents are "central to plaintiffs' claim" or are "sufficiently referred to in the complaint." *Freeman v. Town of Hudson*, 714 F.3d 29, 36 (1st Cir. 2013) (quoting *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993)); *see also Giragosian v. Ryan*, 547 F.3d 59, 65 (1st Cir. 2008). Here, the Complaint relies entirely on the content of a website operated by IGN and Plaintiff specifically identifies the link to the IGN Website (Compl. ¶ 2), identifies screenshots from the IGN Website (*id.*, ¶¶ 12, 13, 34), and repeatedly refers to the IGN Website through the Complaint (*see, e.g.*, ¶¶ 49, 53, 54, 75). Thus, the Court can take notice of IGN Website's content "for the limited purpose of acknowledging its existence and that its content is publicly available." *Kuzenski v. Uproxx LLC*, No. 2:23-CV-00945, 2023 WL 8251590, at *1 n.1 (C.D. Cal. Nov. 27, 2023).

[3] Plaintiff does not allege when IGN supposedly integrated Piano on the IGN Website. Plaintiff only alleges that he created a free account on the IGN Website in 2014, watched numerous videos, and "most recently viewed a video on the [IGN] Website in or around September 2023." Compl. ¶ 49.

fueling [their customers'] subscription, conversion, analytics, entitlement[,] and personalization goals." Compl. ¶ 37 (quotations omitted). Plaintiff further alleges that Piano allows IGN to leverage "analytics processes to '[d]eliver personalized experiences' and '[c]control [users'] premium content access,' among other marketing, analytics, and advertising initiatives." *Id.* ¶ 38 (quotations omitted). Specifically, Plaintiff claims that IGN's purported use of "Piano VX" enables IGN to obtain data that enables it "to improve its marketing, analytics, and advertising capabilities." *Id.* ¶ 39.

Plaintiff claims that when a user creates an account on the IGN Website and views a pre-recorded video while logged into that account, IGN discloses the user's e-mail address, user identification, video name, and video URL to Piano. *See, e.g., Id.* ¶¶ 3, 22; 25-26; 31; 32; 35. Plaintiff does not allege, because he cannot, that one needs to create an account, or be logged into an account in order to view pre-recorded videos on the IGN Website.[4] Plaintiff alleges that IGN intentionally and knowingly discloses such data to Piano, and, in turn, Piano provides IGN with "improved marketing, advertising, and analytics[.]" *Id.* ¶ 44, 45.

### B. Plaintiff's Free IGN Website Account

In 2014, Plaintiff alleges that he "created a free IGN account on the [IGN] Website[,]" and "[s]ince that time, Plaintiff [] has watched numerous pre-recorded videos on the [IGN] Website while signed into his account [.]" *Id.* ¶ 49. Plaintiff admits that "his account was free of charge" and claims that he "was required to provide [IGN] with his e-mail address as part of the sign-up process." *Id.* ¶ 50. Plaintiff alleges that he "most recently viewed a video on the [IGN] Website in or around September 2023." *Id.* ¶ 49. Plaintiff does not allege that creating an account on the IGN Website was a precondition to accessing videos on the IGN Website, or that he was required to provide any information to IGN in order to view or access videos on the IGN Website. Plaintiff does not allege that he paid or was required to pay any money to view videos available on the IGN Website.

---

[4] *See* footnote 4, *supra*.

Nonetheless, Plaintiff claims that "each time" he "viewed a pre-recorded video on the [IGN] Website, [IGN] disclosed [his] PII to Piano via the Piano API." Compl. ¶ 53. Plaintiff alleges that IGN shared his: "(i) e-mail address, (ii) Piano user ID, and (iii) the title and URL of the video Plaintiff [] watched, including the fact that Plaintiff [] actually viewed the video." *Id.* Plaintiff further claims that Piano "compiled" his "PII and activity on the [IGN] Website (including video-viewing information), which [IGN] used and continues to use for marketing, advertising, and analytics purposes." *Id.* ¶ 54. Plaintiff does not identify a single video that he requested or viewed on the IGN Website during the relevant period or at any time.

### C. The Putative Class

Plaintiff purports to bring this action on behalf of a "class of similarly situated individuals defined as all persons in the United States who created an account on the Website, watched a pre-recorded video on the Website while signed into their IGN account, and had their PII transmitted to a third party." *Id.* ¶ 64.

## II. LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim und Fed. R. Civ. P. 12(b)(6), Plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Plaintiff's complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). This requires Plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). A dismissal is warranted where the non-conclusory facts alleged do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharms., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (citation and alterations omitted).

## III. ARGUMENT

### A. This Action Must Be Dismissed Because Plaintiff Has Not Plausibly Alleged a Violation of the VPPA

Plaintiff's claim must be dismissed because he has not plausibly alleged a claim under the VPPA. The VPPA prohibits knowing disclosure of PII relating to "*renter*[s], *purchaser*[s], or *subscriber*[s] of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1) (emphasis added). A "video tape service provider" is defined as "any person, engaged in the business . . . of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." *Id.* § 2710(a)(4). The VPPA defines PII as "information which identifies a person as having requested or obtained *specific* video materials or services from a video tape service provider." *Id.* § 2710(a)(3) (emphasis added). A video tape service provider is permitted to disclose PII "to any person if the disclosure is *incident* to the ordinary course of business of the video tape service provider." 18 U.S.C. § 2710(b)(2)(E) (emphasis added).

To state a claim under the VPPA, a plaintiff must allege that (1) a defendant is a "video tape service provider," (2) the defendant disclosed "personally identifiable information concerning any consumer" to any person, (3) the disclosure was made knowingly, and (4) the disclosure was not authorized by another part of the statute. *See, generally* 18 U.S.C. § 2710(b)(2)(E); *see also Belozerov v. Gannett Co.*, 646 F. Supp. 3d 310, 313 (D. Mass. 2022). Here, Plaintiff fails to plead that: (1) he is a "consumer," as defined under the VPPA; (2) that IGN disclosed his PII; and (3) any purported disclosures were not incident to the ordinary course of business.[5] For all of these reasons, Plaintiff's action should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

#### 1. Plaintiff Does Not—And Cannot—Allege He is a "Consumer" of IGN's Video Content

The VPPA only applies to a "consumer" of video services defined as a "renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1).

[5] IGN reserves the right to assert that it is not a "video tape service provider" under the VPPA.

To qualify as a consumer under the VPPA, a person must rent, purchase, or subscribe "to audio visual materials, not just any products or services from a video tape provider." *Golden v. NBCUniversal Media, LLC*, 688 F. Supp. 3d 150, 166 (S.D.N.Y. 2023) (citations omitted). Plaintiff does not allege that he rented or purchased anything from IGN. Instead, his sole allegation is that he "subscribed" to IGN's Website by creating a free IGN account and thereafter watched videos on IGN's Website. Compl. ¶ 49.

The VPPA does not define "subscriber." Courts have held that for a plaintiff to qualify as a "subscriber" under the VPPA a connection must exist between a subscription and the defendant's provision of video content. Neither the text nor the intent of the VPPA covers the provision of materials or services *unrelated* to video delivery by a business—even those businesses engaged in the videotape rental. *See* S. Rep. No. 100-599, at *11-12 (1988) ("[S]imply because a business is engaged in the *sale or rental* of video materials or services does not mean that all of its products or services are within the scope of the bill.") (emphasis added).

Courts have repeatedly agreed that to qualify as a "consumer" under the VPPA a person must subscribe to audiovisual materials, not just any product, and that simply joining or subscribing to a website, without further allegations that the subscription was connected to access to video content, does not come within the VPPA's ambit. *See, e.g.*, *Lamb v. Forbes Media LLC*, No. 22-CV-06319, 2023 WL 6318033, at *11-14 (S.D.N.Y. Sept. 28, 2023) ("*Lamb*") (subscribing to website did not qualify as being a "subscriber" under the VPPA where plaintiff had not adequately pled that subscription was "[]connected to [his] ability to access video content") (citation omitted); *Alex v. NFL Enters. LLC*, No. 1:22-CV-09239, 2023 WL 6294260, at *3-4 (S.D.N.Y. Sept. 27, 2023) (same); *Golden*, 688 F. Supp. 3d at 166 (plaintiff not subscriber because complaint did not allege that defendant had to sign up for app to access video content).

Furthermore, "a VPPA subscriber is not just someone who provides her name and address to a website, for some undisclosed purpose or benefit." *Jefferson v. Healthline Media, Inc.,* 674 F. Supp. 3d 760, 764 (N.D. Cal. 2023). Rather, a "'subscription' entails an exchange between subscriber and provider whereby the subscriber imparts money and/or personal information in

order to receive a future and recurrent benefit." *Austin-Spearman v. AMC Network Ent. LLC*, 98 F. Supp. 3d 662, 669 (S.D.N.Y. 2015). Courts have repeatedly dismissed VPPA claims where plaintiffs—like Plaintiff and the putative class members—try to leverage the safeguards of the VPPA by claiming they are merely "subscribers" of a website without any real commitment or exchange. *See, e.g., Kuzenski v. Uproxx LLC*, No. 2:23-CV-00945, 2023 WL 8251590, at *5 (C.D. Cal. Nov. 27, 2023) (Plaintiff failed to "allege that becoming a subscriber is connected in any way to Defendant's video content."); *see also Edwards v. Learfield Commc'ns, LLC*, 697 F. Supp. 3d 1297, 1306 (N.D. Fla. 2023) ("Plaintiffs' signing up for email updates here did not make them 'subscribers.' Signing up requires no 'durable' commitment or real exchange at all..."); *see also Salazar v. Nat'l Basketball Ass'n,* 685 F. Supp 3d 232, 245 (S.D.N.Y. 2023), *appeal docketed*, Case No. 23-1147 (2d Cir.) ("Plaintiff has alleged that he was a 'subscriber[ ] to newsletters, not [a] subscriber[ ] to audio visual materials.'"); *see also Gardener v. MeTV*, 681 F. Supp. 3d 864, 869 (N.D. Ill. 2023) (rejecting allegations that opening "an account separate and apart from viewing video content on MeTV's website is sufficient to render [plaintiffs] 'subscribers' under the [VPPA]").

Plaintiff has not, and cannot allege, that creating an account on the IGN Website creates "any real benefit in exchange." *Edwards*, 697 F. Supp. 3d at 1306. Plaintiff "[s]igning up [for the IGN Website] does not grant access to any exclusive or restricted content, much less any exclusive video content." *Id.* Plaintiff concedes that he did not "subscribe" to IGN's audio visual materials—he "created a *free IGN account* on the [IGN] Website[,]" and "[s]ince that time ... has watched numerous pre-recorded videos on the [IGN] Website *while* signed into his account [.]" Compl. ¶ 49; *see also id.* ¶¶ 74, 75 (emphasis added). Plaintiff admits that "[u]sers can access the [IGN] Website to view videos such as game previews, movie trailers, and television show clips," and can do so for free. *Id.* ¶¶ 10, 11, 13.

At best, Plaintiff claims that he was "required to provide [IGN] with his e-mail address as part of the sign-up process" (*see id.* ¶ 50), but never alleges—because he cannot—that IGN specifically offered the benefit of accessing videos *in exchange* for his e-mail address. *See, e.g.*,

Compl. ¶¶ 10-13; 34. Simply put: Plaintiff was not *required* to provide IGN with anything for the benefit of watching videos on the IGN Website and he had no greater access to video content by signing up for an account than anyone else—he was "free to watch or not watch" video content "without any type of obligation," not any different than the other visitors to the IGN Website. *See Carter v. Scripps Networks, LLC*, 670 F. Supp. 3d 90, 99–100 (S.D.N.Y. 2023).

The instant case is easily distinguishable from other cases in the First Circuit where courts have found plaintiffs' allegations that they may be considered subscribers under the VPPA sufficient to withstand motions to dismiss. In *Yershov v. Gannett Satellite Info. Network, Inc.*, for example, the First Circuit concluded that the plaintiff, who downloaded and installed defendant's mobile app on his phone to access an electronic version of *USA Today*, featuring, *inter alia*, video content, was a "consumer" under the VPPA. 820 F.3d 482, 487 (1st Cir. 2016). The Court explained: "[t]o *use the App*, [plaintiff] *did indeed have to provide* [defendant] with personal information, such as his Android ID and his mobile device's GPS location at the time he viewed a video, each linked to his viewing selections." *Id*. at 489 (emphasis added). The Court reasoned that "[w]hile he paid no money, access was not free of a commitment to provide consideration in the form of that information, which was of value to [defendant]." *Id.*

Plaintiff's circumstances are distinct. Unlike the defendant in *Yershov*, IGN does *not require use* of an app—let alone use of an IGN online account—in order to view its content. Plaintiff admits as much. *See, e.g.,* Compl. ¶¶ 2, 8, 9, 10 ("[IGN] is able to provide content to it extensive viewership for free[.]"). The First Circuit accounted for such distinctions in its analysis. In *Yershov*, the Court opined that plaintiff's installation of the mobile app on his phone created "seamless access" and "established a relationship with [defendant] that is materially different from what would have been the case had *USA Today* simply remained one of millions of sites on the web that [plaintiff] might have accessed through a web browser." 820 F.3d at 489. Moreover, unlike the case here, in *Yershov*, "access [to video content] was *not free* of a commitment to provide consideration in the form of that information," but was instead provided "in return for" the plaintiff's personal information, including email address and geolocation. Simply put:

Plaintiff here was not obligated to create an account in consideration for access to IGN's video content; that he decided to set up an account with the IGN Website in 2014 does not mean he was required to, or that it granted him any additional benefits than any other casual website visitor. *See* Compl. ¶ 49.

The Southern District of New York's decision in *Salazar v. National Basketball Ass'n*, 685 F. Supp. 3d 232, 244–45 (S.D.N.Y. 2023) is instructive as to the growing consensus of what is required to become a "subscriber." In *Salazar*, the plaintiff alleged that he "used his digital subscription to view videos on NBA.com or on the NBA app." *Id.* The Court found that the bald allegation that plaintiff "used" his subscriptions to view videos on the website was not enough, since the complaint demonstrated that, as here, "viewing the video does not require a viewer to be a subscriber or have an account to see the videos." *Id.* Furthermore, plaintiff had not alleged "that a user must log in to watch the video" or that "the video content [plaintiff] accessed was exclusive to a subscribership." *Id*. The Court concluded that "Plaintiff had the same access to videos on the NBA.com site as any other visitor to the site" and had failed to allege that he was a subscriber to audiovisual content. *Id.*

Reviewing a factually similar complaint to the instant case, the Northern District of Illinois in *Gardener v. MeTV* held that plaintiffs like those in *Carter v. Scripps Networks, LLC*, which held subscribers to a newsletter were not subscribers under the VPPA, were indistinguishable from the plaintiffs in that case—who had subscribed to defendant's website—because "both had subscriptions (newsletter or website) of a kind that were unconnected to their ability to access video content," and "[n]either set of plaintiffs paid for this privilege, made any commitment to do so, otherwise exchanged anything of value to do so, or received special access to certain content." 681 F. Supp. 3d at 869. Thus, the court deemed the plaintiffs "subscribers to a website, 'not subscribers to audio visual materials.'" *Id*. (quoting *Carter*, 670 F. Supp. 3d at 99).

Plaintiff has not plausibly alleged that any of IGN's video content was *solely* available to IGN account holders or that an account was required to access such content. Plaintiff has the *same access* and *relationship* to IGN's video content as any other casual visitor to the IGN Website who

did not create an account. Furthermore, Plaintiff's allegations fail to link his use of his account on the IGN Website to his alleged viewing of unidentified videos.[6] Permitting Plaintiff to assert a VPPA claim in this instance would wholly transgress the limitation imposed by Congress.

Because Plaintiff is not a "consumer" contemplated under the VPPA, he has not—and cannot—state a viable cause of action. Plaintiff's VPPA claim should be dismissed for that reason alone.

### 2. Plaintiff Does Not Allege IGN Knowingly Discloses *His* PII to Piano

The VPPA prohibits only a video tape service provider "who knowingly discloses, to any person" a consumer's PII. 18 U.S.C. § 2710(b)(1). Inherent in any analysis of whether a party "knowingly discloses" a consumer's PII is the requirement to establish that the complaining consumer's information was actually disclosed. The VPPA defines PII as "information which identifies a person as having requested or obtained *specific* video materials or services from a video tape service provider." *Id*. § 2710(a)(3) (emphasis added).

Plaintiff has not alleged a single fact showing that any of *his* information was disclosed. While Plaintiff broadly pleads that IGN "discloses a user's 'user ID' to Piano in a singular network transmission with the user's e-mail address and video-viewing information[,]" (Compl. ¶ 45), these allegations are too conclusory to pass muster, particularly where Plaintiff offers no facts showing, *inter alia*, what videos he allegedly watched and that any transmissions of PII occurred. Underscoring this deficiency, Plaintiff's allegations as to the alleged disclosure of his own information are pled with implausible thinness. For example, Plaintiff merely claims that he: "watched numerous pre-recorded videos on the [IGN] Website ... [and] most recently viewed a video on the website in or around September 2023"; that IGN "disclosed" his "PII to Piano via the Piano API[,]" which purportedly included his "(i) e-mail address, (ii) Piano user ID, and (iii) the title and URL of the video Plaintiff [] watched, including the fact that Plaintiff [] actually viewed

[6] In a blatant effort to manufacture a claim, Plaintiff alleges he "has watched numerous pre-recorded videos on the [IGN] Website while signed into his account." Compl. ¶ 49. The mere fact that Plaintiff was "signed in" to his IGN account is of no consequence, unless he can allege that he was required to be signed in to view the videos, or signing in gave him greater access to videos.

the video." *See* Compl. ¶¶ 49, 53, 75. Because Plaintiff cannot identify what information was disclosed, he scrapes together facts about a "dynamic analysis of the [IGN] Website" purportedly conducted by his counsel which allegedly "establishes that [IGN] integrates at least one 'application programming interface' ("API") into the [IGN] Website." *See id*. ¶¶ 14, 15. These facts include alleged screenshots of the Piano's transmissions of PII information and allegations regarding the same. *Id*. ¶¶ 22, 25-32, 35-36, 44-45, 47. But no such facts are provided for Plaintiff.

Because Plaintiff has not pled any specific facts about IGN's purported disclosures—knowing or otherwise—of *his* PII, his VPPA claim must be dismissed.

### 3. IGN's Alleged Disclosures Were "[I]ncident to the [O]rdinary [C]ourse of Business"

Even assuming Plaintiff has sufficiently alleged a claim under the VPPA—and he has not—the purpose for which IGN's alleged disclosures were made are not actionable under the VPPA because such disclosures are "incident to the ordinary course of business." 18 U.S.C. Section 2710(b)(2)(E); *see also Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 626 (7th Cir. 2014) ("[T]he permissibility of disclosure under the VPPA turns on the underlying purpose for which [the defendant] provides the information to a third party.")

The VPPA defines "ordinary course of business" to include "order fulfillment" and "request processing." 18 U.S.C. § 2710(a)(2). Such terms encompass disclosures made for third-party marketing and advertising. *See Sterk v. Redbox Automated Retail, LLC*, No. 11-1729,. 2013 WL 4451223, at *5 (N.D. Ill. Aug. 16, 2013) (noting that "'ordinary course of business' . . . encompass[es] . . . marketing"), *aff'd*, 770 F.3d 618 (7th Cir. 2014); *see also Rodriguez v. Sony Computer Ent. Am., LLC*, 801 F.3d 1045, 1054 (9th Cir. 2015) ("[N]o business is an island and . . . video tape services providers, like many other businesses, 'may use third parties in their business operations . . . .'") (quoting *Sterk*, 770 F.3d at 624).

Plaintiff's claims regarding IGN's purported use of Piano qualify for this exception to the VPPA. For example, according to Plaintiff, Piano "empowers its customers like [IGN] to create customized digital experiences and build commercial relationships with [their] users." Compl.

¶ 37 (internal quotations omitted). Plaintiff alleges that Piano allows IGN to leverage "analytics processes to '[d]eliver personalized experiences' and '[c]control [users'] premium content access,' among other marketing, analytics, and advertising initiatives." *Id.* ¶ 38. Essentially, the crux of Plaintiff's allegations is that Piano API allows "[companies like IGN] to use [a] . . . computer service[], [or] similar compan[y] for marketing to [its] customers." *Sterk*, 770 F.3d at 624 (quoting S. Rep. No. 100–599 at 14). Here, this "computer service" or "similar company" is purportedly Piano. Accordingly, the VPPA's "ordinary course of business" safe harbor applies to the conduct alleged in Plaintiff's Complaint.

### B. The Action Must Be Dismissed for Lack of Subject Matter Jurisdiction Because Plaintiff Does Not Have Article III Standing

Finally, even if Plaintiff could assert a VPPA claim, Plaintiff's Complaint claims a purely statutory—not a concrete—harm based on a purported VPPA violation and cannot, as a matter of law, establish that he has Article III standing to assert a claim in federal court.

To establish Article III standing, a plaintiff must show "that he suffered an injury in fact that is concrete, particularized, and actual or imminent." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). In *TransUnion*, the Supreme Court "rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" 594 U.S. at 426 (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)). As the Supreme Court held, "[o]nly those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue [a] private defendant over that violation in federal court." *Id.* at 427; *see also Bowen v. Select Portfolio Servicing, Inc.*, No. 1:23-CV-11231, 2024 WL 3552620, at *5 (D. Mass. July 26, 2024) (dismissal for lack of Article III standing because plaintiffs "fail to allege anything beyond an informational injury."). This is because "an injury in law is *not* an injury in fact" and legislative bodies cannot legislate around Article III standing by "enact[ing] an injury into existence, using its lawmaking power to transform something that is not remotely harmful into something that is." *TransUnion*

*LLC*, 594 U.S. at 426 (citation omitted; emphasis added). As the Supreme Court succinctly put it: "No concrete harm, no standing." *Id.* at 442.

Plaintiff fails to plead any factual allegations demonstrating that he—or the putative class members for that matter—suffered any concrete harm. *See, e.g., Taylor v. UKG, Inc.*, 693 F. Supp. 3d 87, 100 (D. Mass. 2023) (dismissal where plaintiffs lacked Article III standing because allegations regarding "loss of privacy" due to disclosure of PII were "inadequate" to allege any injury in fact); *see also Premera Blue Cross v. Takeda Pharm. Co.*, No. CV 23-11254, 2023 WL 9474011, at *3–4 (D. Mass. Nov. 20, 2023) (dismissal where plaintiff lacked Article III standing, in part, because plaintiff failed to allege the identity of certain states where it purchased or was reimbursed for a purchase, and therefore, it could not be "reasonably inferred" that plaintiff had demonstrated standing for claims in those states).

Nowhere in Plaintiff's complaint does he allege that he suffered any injury—only, generally, that relief is "necessary to protect the interests of Plaintiff and the Class by requiring [IGN] to comply with VPPA's requirements for protecting a consumer's PII[.]" Compl. ¶ 80. But that is not enough. "Even if the statute allows Plaintiff[] to plead either actual or statutory damages, the Supreme Court has held that allegations of '[a]n asserted informational injury that causes no adverse effects cannot satisfy Article III [standing].'" *Aduayi v. PHH Mortg. Servs.*, No. 23-CV-10857, 2024 WL 1018441, at *8 (D. Mass. Mar. 8, 2024) (citing *TransUnion LLC*, 594 U.S. 413 at 441) (dismissal where plaintiffs lacked Article III standing because "fail[ed] to allege anything beyond an informational injury."). Plaintiff's allegations about his supposed injury, and those of the putative class members, constitute nothing more than "informational injur[ies]." *Bowen*, 2024 WL 3552620, at *5.

Accordingly, Plaintiff's action should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).

## IV. CONCLUSION

For all the foregoing reasons, IGN respectfully requests that this Court dismiss Plaintiff's Complaint with prejudice under Federal Rules of Civil Procedure 12(b)(1) and (b)(6).

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(d) the undersigned requests oral argument on this motion.

Dated: August 26, 2024

Respectfully submitted,

/s/ *Roy W. Bjorlin*
Roy W. Bjorlin (BBO #666319)
WILSON ELSER
260 Franklin Street, 14th Floor
Boston, MA 02110
Telephone: (617) 422-5300
roy.bjorlin@wilsonelser.com

/s/ *Sean M. Sullivan*
Sean M. Sullivan (SBN # 229104) (*Pro Hac Vice* Pending)
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California 90017-2566
Telephone: (213) 633-6800
seansullivan@dwt.com

*Attorneys for Defendant IGN Entertainment, Inc.*

## LOCAL RULE 7.1(A)(2) CERTIFICATION

I hereby certify that pursuant to Local Rule 7.1(a)(2), on August 21, 2024, I conferred with counsel for Plaintiff and have attempted in good faith to resolve or narrow the issues presented in this motion.

## CERTIFICATE OF SERVICE

I certify that, on August 26, 2024, this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

/s/ Roy *W. Bjorlin*
Roy W. Bjorlin