**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JOSUE JOSEPH, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>IGN ENTERTAINMENT, INC.,<br><br>Defendant. | Case No. 1:25-cv-11579-MJJ<br><br>Hon. Myong J. Joun |

**<u>PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS</u>**

Dated: September 9, 2024

**REARDON SCANLON LLP**
James J. Reardon, Jr.
45 South Main Street, 3rd Floor
West Hartford, CT 06107
Telephone: (860) 955-9455
Facsimile: (860) 920-5242
E-Mail: james.reardon@reardonscanlon.com

**BURSOR & FISHER, P.A.**
Yitzchak Kopel*
Max S. Roberts (*Pro Hac Vice*)
Victoria X. Zhou*
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: ykopel@bursor.com
mroberts@bursor.com
vzhou@bursor.com

**Pro Hac Vice Forthcoming*

*Attorneys for Plaintiff*

# TABLE OF CONTENTS


INTRODUCTION ....................................................................................................1

ARGUMENT ........................................................................................................3

I. Plaintiff Is A "Subscriber" To Defendant's Website—The Medium Through Which Defendant Provided Video Content ..........................................................3

A. Plaintiff Is A "Subscriber" Under The First Circuit's Controlling Decision In *Yershov* ..........................................................3

B. Defendant's Arguments Are Unpersuasive Or Contradict *Yershov* ..........6

II. Defendant Knowingly Disclosed Plainitff's PII To Piano..........................9

III. Defendant's Disclosures To Piano For Marketing, Advertising, And Data Analytics Fall Outside The Ordinary Course Of Business ..............................11

IV. Pursuant To Well-Established Case Law, Defendant's VPPA Violation Caused Plaintiff An Injury-In-Fact Sufficient For Article III Standing ..........14

CONCLUSION....................................................................................................17

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Adams v. Am.'s Test Kitchen, LP*,
680 F. Supp. 3d 31 (D. Mass. 2023) .......... 15, 17

*Aldana v. GameStop, Inc.*,
2024 WL 708589 (S.D.N.Y. Feb. 21, 2024) .......... 5

*Alex v. NFL Enterprises LLC*,
2023 WL 6294260 (S.D.N.Y. Sept. 27, 2023) .......... 8

*Austin-Spearman v. AMC Network Entertainment LLC*,
98 F. Supp. 3d 662 (S.D.N.Y. 2015) .......... 9, 15

*Burdette v. FuboTV Inc.*,
2024 WL 2831466 (N.D. Ill. June 4, 2024) .......... 14

*Byars v. Goodyear Tire and Rubber Co.*,
654 F. Supp. 3d 1020 (C.D. Cal. Feb. 3, 2023) .......... 11

*Cain v. Redbox Automated Retail, LLC*,
981 F. Supp. 2d 674 (E.D. Mich. 2013) .......... 12

*Carter v. Scripps Networks, LLC*,
670 F. Supp. 3d 90 (S.D.N.Y. 2023) .......... 8

*Collins v. Toledo Blade*,
--- F. Supp. 3d ---, 2024 WL 1094613 (N.D. Ohio Mar. 13, 2024) .......... 5, 8

*Daniel v. Cantrell*,
375 F.3d 377 (6th Cir. 2004) .......... 11

*Edwards v. Learfield Communications, LLC*,
697 F. Supp. 3d 1297 (N.D. Fla. 2023) .......... 8

*Eichenberger v. ESPN, Inc.*,
876 F.3d 983 (9th Cir. 2017) .......... 15

*Ellis v. Cartoon Network, Inc.*,
803 F.3d 1251 (11th Cir. 2015) .......... 6

*Frawley v. Nexstar Media Group Inc.*,
2024 WL 3798073 (N.D. Tex. July 22, 2024) .......... 11

*Gardener v. MeTV*,
681 F. Supp. 3d 864 (N.D. Ill. 2023) .......... 9

*Golden v. NBCUniversal Media, LLC*,
688 F. Supp. 3d 150 (S.D.N.Y. 2023) ........ 8, 9

*Harris v. Public Broadcasting Serv.*,
662 F. Supp. 3d 1327 (N.D. Ga. 2023) ........ 5

*Homaidan v. Sallie Mae, Inc.*,
3 F.4th 595 (2d Cir. 2021) ........ 13

*In re Hulu Priv. Litig.*,
2012 WL 3282960 (N.D. Cal. Aug. 10, 2012) ........ 12

*In re Nickelodeon Consumer Privacy Litig.*,
827 F.3d 262 (3d Cir. 2016) ........ 15

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023) ........ 11, 16

*Jefferson v. Healthline Media, Inc.*,
674 F. Supp. 3d 760 (N.D. Cal. 2023) ........ 8, 9

*Kuzenski v. Uproxx LLC*,
2023 WL 8251590 (C.D. Cal. Nov. 27, 2023) ........ 9

*Lamb v. Forbes Media LLC*,
2023 WL 6318033 (S.D.N.Y. Sept. 28, 2023) ........ 9

*Lebakken v. WebMD, LLC*,
640 F. Supp. 3d 1335 (N.D. Ga. 2022) ........ 7

*Louth v. NFL Enterprises LLC*,
2022 WL 4130866 (D.R.I. Sept. 12, 2022) ........ 10, 12

*Perry v. Cable News Network, Inc.*,
854 F.3d 1336 (11th Cir. 2017) ........ 15, 17

*Rancourt v. Meredith Corp.*,
2024 WL 381344 (D. Mass. Feb. 1, 2024) ........ 10, 12

*Rodriguez v. Sony Computer Ent. Am., LLC*,
801 F.3d 1045 (9th Cir. 2015) ........ 14

*Salazar v. National Basketball Association*,
685 F. Supp. 3d 232 (S.D.N.Y. 2023) ........ 8

*Saunders v. Hearst Television, Inc.*,
2024 WL 126186 (D. Mass. Jan. 11, 2024) ........ 5, 10, 12

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .......... 16

*Sterk v. Redbox Automated Retail, LLC*,
2013 WL 4451223 (N.D. Ill. Aug. 16, 2013) .......... 13

*Sterk v. Redbox Automated Retail, LLC*,
770 F.3d 618 (7th Cir. 2014) .......... 15

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 16, 17

*United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*,
489 U.S. 749 (1989) .......... 15, 17

*Yates v. U.S.*,
574 U.S. 528 (2015) .......... 13

*Yershov v. Gannett Satellite Info. Network, Inc.*,
204 F. Supp. 3d 353 (D. Mass. 2016) .......... 15, 16, 17

*Yershov v. Gannett Satellite Information Network, Inc.*,
820 F.3d 482 (1st Cir. 2016) .......... Passim

**STATUTES**

18 U.S.C. § 2710 .......... 1, 3, 11, 12

**OTHER AUTHORITIES**

S. Rep. No. 100–599 .......... 1, 7, 11, 14

Plaintiff Josue Joseph ("Plaintiff") respectfully submits this Opposition to Defendant IGN Entertainment, Inc.'s ("Defendant") Motion to Dismiss (ECF No. 17) (the "Motion" or "MTD").

**INTRODUCTION**

> [A]s we continue to move ahead, we must protect time honored values that are so central to this society, particularly our right to privacy. The advent of the computer means not only that we can be more efficient than ever before, but that we have the ability to be more intrusive than ever before. Every day Americans are forced to provide to businesses and others personal information without having any control over where that information goes. Those records are a window into our loves, likes, and dislikes.

S. Rep. No. 100–599 at 6-7 (1988) (remarks by Senator Paul Simon). Much has changed since 1988, but Senator Simon's words continue to ring true. At its most basic level, Plaintiff's complaint asks whether we continue to "protect time honored values that are central to this society, particularly our right to privacy."

When first enacted, the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"), was the latest in "a long line of statutes passed by the Congress to extend privacy protection to records that contain information about individuals." S. Rep. No. 100–599 at 2. By passing the VPPA, Congress sought to "preserve personal privacy with respect to the rental, purchase or delivery of video tapes or similar audio visual materials." *Id.* at 1. To that end, Congress "created a civil remedy against a 'video tape service provider' for 'knowingly disclosing, to any person, personally identifiable information concerning any consumer of such provider.'" *Yershov v. Gannett Satellite Information Network, Inc.*, 820 F.3d 482, 485 (1st Cir. 2016) (quoting 18 U.S.C. § 2710(b)(1)). Defendant is one such "video tape service provider."

Defendant operates IGN.com (the "Website"), which focuses, among other things, on providing pre-recorded video content "such as game previews, movie trailers, and television show clips." Compl ¶¶ 8, 11-13. Users can create an account on the Website (Compl. ¶ 49), which

provides users with "the ability to use a lot of services that you may not have even know existed on IGN," including but not limited to: (i) "[e]ntry into contests and offers"; (ii) "[f]ree game and music magazines"; (iii) "[a]ccess to IGN.com message boards"; (iv) "[t]ext and voice IGN.com chat"; (v) a "[p]ersonalized My.IGN start page"; (vi) "[c]ustomized gaming newsletters"; and (vii) a "[f]ree IGN.com e-mail address."[1]

But creating an account also exposes users to an intrusive privacy harm. As a pre-condition of creating an account, users are "required to provide Defendant with [their] e-mail address as part of the sign-up process." Compl. ¶ 50. And when users do this, Defendant associates their e-mail address with the pre-recorded videos they view on the Website, and disclose users' personally identifiable information ("PII") and video-viewing information to an unrelated third party, Piano.io ("Piano"):

| THIRD PARTY | VIDEO INFO | PERSONAL INFO | OTHER INFO |
|---|---|---|---|
| Piano.io | Video Name, URL | Email | User ID |

Compl. ¶¶ 22-35. These disclosures are not innocuous either. Defendant relies on advertising revenue to support its Website (*id.* ¶ 10), and Defendant's disclosures to Piano are entirely for the purpose of bolstering its marketing and advertising efforts. *Id.* ¶¶ 36-43. In other words, when Website users like Plaintiff create an account, Defendant profits off of users' PII and video-viewing information by disclosing the same to Piano for use in marketing and advertising. *Id.* ¶¶ 36-54. All of this is done without the consent of the user, and indeed, even in cases where users *specifically ask not to be tracked*. *Id.* ¶¶ 46, 51-52. Plaintiff alleges he was a victim of Defendant's

[1] Become an IGN Member Today, https://www.ign.com/articles/2001/03/09/become-an-ign-member-today-2. As Defendant admits, "the Court can take notice of IGN Website's content." MTD at 4 n.2. To the extent required, however, Plaintiff can of course include these allegations in an amended complaint.

wrongful conduct (*id.* ¶¶ 48-54), and thus, brings this action on behalf of himself and proposed Class Members for a violation of the VPPA.

Defendant does not dispute that it is making the aforementioned disclosures to Piano, nor does Defendant dispute the aforementioned information constitutes "personally identifiable information" (nor could it). 18 U.S.C. § 2710(a)(3). Instead, Defendant simply asks the Court for a *carte blanche* to continue disclosing and profiting off of its subscribers' personal information, like Plaintiff's. The Court should reject Defendant's invitation and deny Defendant's Motion in its entirety.

## ARGUMENT

### I. PLAINTIFF IS A "SUBSCRIBER" TO DEFENDANT'S WEBSITE—THE MEDIUM THROUGH WHICH DEFENDANT PROVIDED VIDEO CONTENT

Defendant argues Plaintiff is not a "consumer" or "subscriber" for the purposes of the VPPA because "Plaintiff has not, and cannot allege, that creating an account on the IGN Website creates any real benefit in exchange." MTD at 9 (cleaned up). Defendant is wrong.[2]

#### A. Plaintiff Is A "Subscriber" Under The First Circuit's Controlling Decision In *Yershov*

The First Circuit's decision in *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482 (1st Cir. 2016) ("*Yershov I*") controls this Court's analysis. In that case, the First Circuit held that "downloading a mobile device application" was sufficient to classify the plaintiff as a "subscriber." *Id.* at 489. *First*, the First Circuit noted "Yershov's decision to download the App seems a fair enough indication that he intended more than a one-shot visit." *Id.* at 487. In particular, the First Circuit referenced a definition of "subscriber" that meant "an agreement to

[2] The VPPA defines "consumer" as "any renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1).

receive or be given access to electronic texts or services." *Id.* (cleaned up). *Second*, the First Circuit "decline[d] to interpret the statute as incorporating monetary payment as a necessary element." *Id.* at 488. *Finally*, the First Circuit noted:

> To use the App, Yershov did indeed have to provide Gannett with personal information, such as his Android ID and his mobile device's GPS location at the time he viewed a video, each linked to his viewing selections. While he paid no money, access was not free of a commitment to provide consideration in the form of that information, which was of value to Gannett. And by installing the App on his phone, thereby establishing seamless access to an electronic version of *USA Today*, Yershov established a relationship with Gannett that is materially different from what would have been the case had *USA Today* simply remained one of millions of sites on the web that Yershov might have accessed through a web browser.

*Id.* at 489. Plaintiff's allegations fit squarely within *Yershov*. *First*, Plaintiff alleges he created an IGN Website account, which he used to watch "numerous pre-recorded videos on the Website." Compl. ¶ 49. The creation of this account suggests Plaintiff "intended more than a one-shot visit" to the Website," and that he "established a[n] [ongoing] relationship with" Defendant. *Yershov I*, 820 F.3d at 487-88. Moreover, the Website is the platform through which Defendant provides video content, meaning Plaintiff subscribed to the very medium through which Defendant provides its video services. Compl. ¶¶ 8, 11-12.

*Second*, Plaintiff's creation of an account formed "an agreement to receive or be given access to electronic texts or services." *Yershov I*, 820 F.3d at 487. Creating an IGN website account provides users with "the ability to use a lot of services that you may not have even know existed on IGN," including but not limited to: (i) "[e]ntry into contests and offers"; (ii) "[f]ree game and music magazines"; (iii) "[a]ccess to IGN.com message boards"; (iv) "[t]ext and voice IGN.com chat"; (v) a "[p]ersonalized My.IGN start page"; (vi) "[c]ustomized gaming

newsletters"; and (vii) a "[f]ree IGN.com e-mail address."[3] Notably, courts have considered video game-related content to fall within the scope of the VPPA. *See Aldana v. GameStop, Inc.*, 2024 WL 708589, at *6 (S.D.N.Y. Feb. 21, 2024).

*Finally*, Plaintiff's IGN account "was not free of a commitment to provide consideration in the form of [his] information, which was of value to [Defendant]." *Yershov I*, 820 F.3d at 489. That is to say, to create a Website account, Plaintiff had to provide Defendant with his personal information—his e-mail address and a user ID associated with Plaintiff—which Defendant "linked to his [video] viewing selections." *Id.*; *see also* Compl. ¶¶ 22, 25, 31, 45, 49, 53-54. This information was clearly of value to Defendant, as Defendant disclosed this information to Piano for marketing, advertising, and data analytics—activities that naturally generate revenue for Defendant. Compl. ¶¶ 10, 36-43.

Thus, under the First Circuit's binding decision in *Yershov*, Plaintiff is a "consumer" or "subscriber" for the purposes of the VPPA. *See also Saunders v. Hearst Television, Inc.*, --- F. Supp. 3d ---, 2024 WL 126186, at *3 (D. Mass. Jan. 11, 2024) (plaintiff was a subscriber where "any time a user views a video on one of Hearst's apps, the full name of the video and/or the video ID is provided to Braze and Google with the user's AAID or user ID"); *Harris v. Public Broadcasting Serv.*, 662 F. Supp. 3d 1327, 1331 (N.D. Ga. 2023) (plaintiff was a subscriber where "she registered for a PBS account and provided Defendant her personal information, including her name, address, email, IP address and cookies"); *Collins v. Toledo Blade*, --- F. Supp. 3d ---, 2024 WL 1094613, at *7 (N.D. Ohio Mar. 13, 2024) (finding plaintiffs were "subscribers" where they "gave Defendants their contact information in exchange for the very material that is, writ large,

---

[3] BECOME AN IGN MEMBER TODAY, https://www.ign.com/articles/2001/03/09/become-an-ign-member-today-2.

Defendants' main business: news and journalism"); *contra Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1257 (11th Cir. 2015) (finding plaintiff was not a "subscriber" where he "did not sign up for or establish an account with Cartoon Network, did not provide any personal information to Cartoon Network, … did not become a registered user of Cartoon Network or the CN app, did not receive a Cartoon Network ID, did not establish a Cartoon Network profile, … and did not make any commitment or establish any relationship that would allow him to have access to exclusive or restricted content").[4]

### B. Defendant's Arguments Are Unpersuasive Or Contradict *Yershov*

Defendant raises a bevvy of arguments as to why Plaintiff cannot be a "consumer" or "subscriber" under the VPPA. *Not once*, however, does Defendant cite a First Circuit case in support of its argument. Thus, to the extent Defendant's authorities are in conflict with *Yershov I*, they must be disregarded. In any event, Defendant's arguments and authorities are distinguishable or otherwise unpersuasive.

As an initial matter, Defendant makes the argument that "[c]ourts have held that for a plaintiff to qualify as a 'subscriber' under the VPPA a connection must exist between a subscription and the defendant's provision of video content." MTD at 8. But *Yershov I* never imposed such a limitation, and indeed, the opposite conclusion can be inferred from the opinion. That is, *USA Today* does not exclusively provide videos—it provides written articles—such that downloading the app does not mean a consumer is exclusively subscribing to video content. Yet,

---

[4] Defendant contends *Yershov I* is distinguishable because "Plaintiff here was not obligated to create an account in consideration for access to IGN's video content." MTD at 11. But the defendant in *Yershov I* also did not require downloading an app to watch video content; the plaintiff could have just as easily watched videos on the *USA Today* website. *See Yershov I*, 820 F.3d at 489. The key was that, by downloading the app, the plaintiff created an ongoing relationship with the defendant and provided his personal information as consideration. *Id*. The same is true here where Plaintiff created a Website account.

*Yershov I* held the plaintiff was a "subscriber" all the same. Moreover, neither the text nor the legislative history of the VPPA contains any such limitation. *See Yershov I*, 820 F.3d at 488 ("Congress left untouched the definition of "consumer" in the statute, which we believe supports an inference that Congress understood its originally-provided definition to provide at least as much protection in the digital age as it provided in 1988."); *Lebakken v. WebMD, LLC*, 640 F. Supp. 3d 1335, 1340 (N.D. Ga. 2022) ("To constitute a 'consumer' under the VPPA, the plaintiff must subscribe to 'goods or services from a video tape service provider,' not a video service as WebMD attempts to frame the issue.").

Indeed, the portion of legislative history Defendant cites references the definition of "personally identifiable information," not the definition of "consumer." S. Rep. No. 100–599 at 12 ("The definition of personally identifiable information includes the term 'video' to make clear that simply because a business is engaged in the sale or rental of video materials or services does not mean that all of its products or services are within the scope of the bill."). As the legislative history qualifies (in the portion omitted by Defendant), the definition of "personally identifiable information" already prevents the statute from expanding to any non-video transaction, so such a limitation was not required in the definition of "consumer." *Id.* ("[A] department store that sells video tapes would be required to extend privacy protection to only those transactions involving the purchase of video tapes and not other products.").

Even assuming Defendant's limitation is correct (it is not), it is hard to see how Plaintiff would not qualify as a "consumer." In *Yershov I*, the app in question was *USA Today*, which as any ordinary person knows, provides written news content in addition to video content. *See Yershov I*, 820 F.3d at 484 ("In addition to offering *USA Today* in printed form, Gannett digitally offers this content through a proprietary mobile software application called the 'USA Today

Mobile App' … The App allows users to access news and entertainment media content, including videos, on their mobile devices."). Yet, the plaintiff there was a subscriber where he created an ongoing relationship with the very medium through which Defendant provided video content, and even though the plaintiff could just as easily have accessed the same video content on the *USA Today* website without such a commitment. *Id.* at 489. The same is true here. Plaintiff created a Website account, meaning his account creation was directly related to the very medium through which Defendant provides video content. Compl. ¶¶ 8, 11-12, 49. And whether or not Plaintiff could have accessed this video content without creating an account, he nonetheless established an ongoing relationship with Defendant that included consideration in the form of his personal information. *Id.* ¶ 50.

The allegations here—where Plaintiff subscribed to the very medium through which Defendant provides video content—are distinguishable from Defendant's cited authorities, which mostly involve subscribing to a newsletter or e-mail list that was not necessarily related to the provision of video content on the website. *See*, *e.g.*, *Carter v. Scripps Networks, LLC*, 670 F. Supp. 3d 90, 99 (S.D.N.Y. 2023)[5]; *Golden v. NBCUniversal Media, LLC*, 688 F. Supp. 3d 150, 165 (S.D.N.Y. 2023); *Alex v. NFL Enterprises LLC*, 2023 WL 6294260, at *4 (S.D.N.Y. Sept. 27, 2023); *Salazar v. National Basketball Association*, 685 F. Supp. 3d 232, 245 (S.D.N.Y. 2023); *Edwards v. Learfield Communications, LLC*, 697 F. Supp. 3d 1297, 1306 (N.D. Fla. 2023); *Jefferson v. Healthline Media, Inc.*, 674 F. Supp. 3d 760, 764 (N.D. Cal. 2023). Indeed, a number of Defendant's authorities involve instances where, unlike here, the plaintiff did not create a website account. *See*, *e.g.*, *Golden*, 688 F. Supp. 3d at 164 ("[T]he FAC does not allege that

[5] *See also Collins*, 2024 WL 1094613, at *7 (distinguishing *Carter* because the plaintiffs' "subscription" to a newsletter was ancillary to hgtv.com's full website" and the plaintiff "never alleged that they signed up for an account directly with hgtv.com").

Golden … created an account with NBCU, received an NBCU ID, or established an NBCU profile."); *Jefferson*, 674 F. Supp. 3d at 762 (no allegations the plaintiff created a website account); *Austin-Spearman v. AMC Network Entertainment LLC*, 98 F. Supp. 3d 662, 669 (S.D.N.Y. 2015) (plaintiff did not "'sign up,' register for an account, establish a user ID or profile, download an app or program, or take any action to associate herself with AMC" and "[h]er visits to AMC's website to view various videos … evince no desire to forge ties with, and need not have in any way tied her to").[6]

Thus, the Court can—and, to the extent they conflict with *Yershov I*, *must*—disregard Defendant's arguments and authorities and hold Plaintiff is a "subscriber" under the VPPA.

## II. DEFENDANT KNOWINGLY DISCLOSED PLAINITFF'S PII TO PIANO

Defendant contends Plaintiff has not alleged a "knowing" disclosure of his information because "Plaintiff has not alleged a single fact showing that any of *his* information was disclosed." MTD at 12 (emphasis in original). This is less of an attack on the "knowing" element of a VPPA claim and more of an attack on Plaintiff's standing. In either case, Defendant is mistaken.

*First*, the dynamic analysis establishes that when *any user* watches a video on the Website while signed into an account, Defendant discloses that user's e-mail address and the title and URL of the video watched by the user. *See*, *e.g.*, Compl. ¶¶ 22, 24, 32, 35. Defendant does not dispute the findings of the dynamic analysis, and courts in this Circuit have sustained VPPA claims where a pre-suit analysis illustrated the disclosure of class members' information. *See*, *e.g.*, *Saunders*,

---

[6] At worst, Defendant cites three cases where the creation of a website account was insufficient to render the plaintiff a "subscriber." *Lamb v. Forbes Media LLC*, 2023 WL 6318033, at *13 (S.D.N.Y. Sept. 28, 2023); *Kuzenski v. Uproxx LLC*, 2023 WL 8251590, at *4 (C.D. Cal. Nov. 27, 2023); *Gardener v. MeTV*, 681 F. Supp. 3d 864, 866, 869 (N.D. Ill. 2023). Each of these cases appear to be in conflict with *Yershov I*'s recognition that creating an ongoing relationship and providing consideration in the form of PII is sufficient to render someone a "subscriber." *Yershov I*, 820 F.3d at 489.

2024 WL 126186, at *1 (sustaining VPPA claim where "[p]rior to filing this case, plaintiffs' counsel retained a private research company to analyze what, if any, personal data is transmitted by Hearst's apps when a user watches a video"); *Rancourt v. Meredith Corp.*, 2024 WL 381344, at *2 (D. Mass. Feb. 1, 2024) (same where "[t]hrough an analysis conducted by 'a private research company,' at the behest of Mr. Rancourt's counsel, Mr. Rancourt discovered that Meredith …disclosed to Twilio information about Mr. Rancourt"); *Louth v. NFL Enterprises LLC*, 2022 WL 4130866, at *1 (D.R.I. Sept. 12, 2022) (same where "[t]he plaintiff's counsel retained a private research company to conduct a dynamic analysis of the NFL App … [that] revealed that NFL Enterprises transmits information sufficient to identify class members and the videos they watch to an unrelated third party") (cleaned up).

*Second*, based on the results of the dynamic analysis, Plaintiff alleges Defendant disclosed *his* PII to Piano. Just like the testers in the dynamic analysis, "Plaintiff Joseph created a free IGN account on the Website" and "watched numerous pre-recorded videos on the Website while signed into his account and while in Massachusetts." Compl. ¶ 49. And, per the dynamic analysis, Plaintiff alleges that when he "viewed a pre-recorded video on the Website … Defendant disclosed [to Piano] Plaintiff Joseph's: (i) e-mail address, (ii) Piano user ID, and (iii) the title and URL of the video Plaintiff Joseph watched, including the fact that Plaintiff Joseph actually viewed the video." *Id.* ¶ 53. Plaintiff certainly will provide the e-mail address associated with his Website account in discovery (notwithstanding Defendant already has it), but Plaintiff is not required to place his personally identifiable information on a public docket in a privacy class action. The same is true for the specific videos Plaintiff viewed: Defendant's records will show the videos Plaintiff viewed, but he is not required to allege the specific names of videos he watched a year ago on a public docket in a privacy case. *See, e.g.*, *Frawley v. Nexstar Media Group Inc.*, 2024 WL

3798073, at *6 (N.D. Tex. July 22, 2024) ("Frawley is not required to allege the specific videos he watched to state a claim under the VPPA."); *Byars v. Goodyear Tire and Rubber Co.*, 654 F. Supp. 3d 1020, 1027 (C.D. Cal. Feb. 3, 2023) ("[T]here is no requirement that Byars specifically allege the exact contents of her communications with Goodyear."); *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 956 (N.D. Cal. 2023) ("[T]o the extent Disney suggests Plaintiffs must plead the exact communications they had with the ESPN.com website, other courts have rejected that position.").

Thus, Plaintiff has alleged Defendant knowingly violated the VPPA because (i) the dynamic analysis shows any account users' PII is disclosed by Defendant to Piano, and (ii) Plaintiff watched pre-recorded videos while signed into his IGN account, meaning his PII was disclosed.

## III. DEFENDANT'S DISCLOSURES TO PIANO FOR MARKETING, ADVERTISING, AND DATA ANALYTICS FALL OUTSIDE THE ORDINARY COURSE OF BUSINESS

Defendant argues that any alleged disclosures it made "qualify for" the ordinary course of business "exception to the VPPA." MTD at 13. This is wrong.

The VPPA contains an exception for disclosures "incident to the ordinary course of business." 18 U.S.C. § 2710(b)(2)(E). The statute defines "ordinary course of business" as meaning "only debt collection activities, order fulfillment, request processing, and the transfer of ownership." 18 U.S.C. § 2710(a)(2). The terms "order fulfillment" and "request processing," in turn, are "defined in the legislative history as the use, by [video tape service providers], of 'mailing houses, warehouses, computer services, and similar companies for marketing to their customers.'" *Daniel v. Cantrell*, 375 F.3d 377, 382 (6th Cir. 2004) (quoting S. Rep. No. 100–599 at 14).

But this is not what Defendant did here. As alleged in the Complaint, Defendant disclosed personally identifiable information to third parties "to obtain [] analyzing, marketing, and advertising services." Compl. ¶ 47; *see also id.* ¶¶ 17-21, 36-43 (describing the purposes for which

Defendant disclosed PII to Piano). As numerous courts have found, these activities fall outside the ordinary course of business. *See*, *e.g.*, *Saunders*, 2024 WL 126186, at *4 ("The alleged uses of the information here – marketing, advertising, and analytics – do not fall within the exception's narrow list of permissible uses.") (cleaned up); *Rancourt*, 2024 WL 381344, at *17 (holding that disclosures of "App user data as part of its targeted advertising campaign which is intended to drive revenue … [and] better target ads does not constitute an intra-corporate disclosure or a disclosure in support of management operations."); *Louth*, 2022 WL 4130866, at *4 (finding disclosures "to measure analytics and increase advertising revenue … do not fall into the narrow categories statutorily defined as the "ordinary course of business."); *In re Hulu Priv. Litig.*, 2012 WL 3282960, at *7 (N.D. Cal. Aug. 10, 2012) ("Market research and web analytics are not in the ordinary course of Hulu's business of delivering video content to consumers."); *Cain v. Redbox Automated Retail, LLC*, 981 F. Supp. 2d 674, 685 (E.D. Mich. 2013) (finding the disclosure of personally identifiable information "for the purpose of … promotions[] and analytics … do[es] not appear to fall within the narrow categories of 'debt collection activities, order fulfillment, request processing, and transfer of ownership'").

Indeed, the VPPA *explicitly regulates* disclosures made for "marketing goods and services directly to the consumer," if the disclosure only includes "the subject matter of such materials"—which here, it does not. 18 U.S.C. § 2710(b)(2)(D)(ii). And while the legislative history refers to "mailing houses," "warehouses," and "similar companies," this makes sense because such companies are passive repositories of information. It is true that with the continuous development of technology, the definition of 'computer services' today could be very broad. But the Court should not interpret "computer services" here so broadly "that it is inconsistent with its accompanying words, thus giving unintended breadth to Acts of Congress." *Yates v. U.S.*, 574

U.S. 528, 543 (2015). Accordingly, applying the *noscitur a sociis* canon of interpretation to give a word "more precise content by the neighboring words with which it is associated," it follows that "computer services,"—as used here in a single list with "mailing houses," "warehouses," and "similar companies,"—was also intended to fall into the category of passive information storage services, such as warehouses and mailing houses (*e.g.*, cloud storage companies). *Homaidan v. Sallie Mae, Inc.*, 3 F.4th 595, 604 (2d Cir. 2021). The defining characteristic of these listed entities therefore is that they may act as passive information storage sites and automated distributors to receive customer records and learn where to send marketing materials. But they may not become involved with analyzing those records or targeting groups within those materials, which is what Plaintiff alleges Piano does here.

Defendant's cited authorities fail to support its argument. Defendant cites *Sterk v. Redbox Automated Retail, LLC*, 2013 WL 4451223, at *5 (N.D. Ill. Aug. 16, 2013), *aff'd*, 770 F.3d 618, 624 (7th Cir. 2014), for the alleged proposition that "disclosures made for third party marketing and advertising" fall within the ordinary course of business exception. MTD at 13. Notwithstanding this ignores what courts in *this Circuit* have found (*see*, *e.g.*, *Saunders*, *Rancourt*, *Louth*), Defendant incorrectly relays the facts of that case. Instead, the only disclosures made to a third party were for "customer support services" or "to respond to customer service requests." *Sterk*, 2013 WL 4451223, at *4. In fact, as more recent courts in the Seventh Circuit have recognized, *Sterk* holds that "advertising does not fall within VPPA's 'ordinary course of business' exception," and that "'order fulfillment' and 'request processing' cannot reasonably be synonymous with marketing activities." *Burdette v. FuboTV Inc.*, 2024 WL 2831466, at *5 (N.D. Ill. June 4, 2024). *Rodriguez v. Sony Computer Ent. Am., LLC*, 801 F.3d 1045, 1054 (9th Cir. 2015), is also distinguishable because that case involved "intra-corporate disclosures" between

two Sony entities, not the disclosure of information to an unrelated third party as alleged here. Compl. ¶¶ 36-43.

Therefore, Defendant's disclosures to Piano for marketing, advertising, and data analytics do not fall under the ordinary course of business exception.

## IV. PURSUANT TO WELL-ESTABLISHED CASE LAW, DEFENDANT'S VPPA VIOLATION CAUSED PLAINTIFF AN INJURY-IN-FACT SUFFICIENT FOR ARTICLE III STANDING

Defendant contends Plaintiff lacks Article III standing to pursue his VPPA claim because "harm based on a purported VPPA violation … cannot, as a matter of law, establish that he has Article III standing to assert a claim in federal court." MTD at 14. Defendant's arguments are rebutted by at least a decade of caselaw pointing in the other direction.

As the legislative history of the VPPA explains:

> It is nobody's business what Oliver North or Robert Bork or Griffin Bell or Pat Leahy watch on television or read or think about when they are home. In an area of interactive television cables, the growth of computer checking and check-out counters, of security systems and telephones, all lodged together in computers, it would be relatively easy at some point to give a profile of a person and tell what they buy in a store, what kind of food they like, what sort of television programs they watch, who are some of the people they telephone. I think that is wrong. I think that really is Big Brother, and I think it is something that we have to guard against.

S. Rep. No. 100–599 at 5-6; *see also id.* at 6-7 ("Every day Americans are forced to provide to businesses and others personal information without having any control over where that information goes. These records are a window into our loves, likes, and dislikes."). In other words, the VPPA protects "the individual's control of information concerning his or her person," which has been recognized by "both the common law and the literal understanding of privacy." *United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763 (1989).

To that end, courts in this Circuit and others have routinely held a violation of the VPPA constitutes an invasion of privacy sufficient for Article III standing. *See*, *e.g.*, *Yershov v. Gannett Satellite Info. Network, Inc.*, 204 F. Supp. 3d 353, 362 (D. Mass. 2016) ("*Yershov II*") ("[T]he VPPA plainly provides plaintiffs like Yershov, who allege wrongful disclosure of their PII, with standing and a right to relief.") (cleaned up); *Adams v. Am.'s Test Kitchen, LP*, 680 F. Supp. 3d 31, 40-41 (D. Mass. 2023) (alleged violations of VPPA were sufficient for Article III standing); *Eichenberger v. ESPN, Inc.*, 876 F.3d 983-84 (9th Cir. 2017) ("[T]he VPPA identifies a substantive right to privacy that suffers any time a video service provider discloses otherwise private information … We therefore join the [] other circuits that … have found Article III standing in similar cases arising under the VPPA."); *Sterk*, 770 F.3d at 623 ("By alleging that Redbox disclosed their personal information in violation of the VPPA, Sterk and Chung have met their burden of demonstrating that they suffered an injury in fact that success in this suit would redress."); *Perry v. Cable News Network, Inc.*, 854 F.3d 1336, 1341 (11th Cir. 2017) ("[W]e hold that a plaintiff such as Perry has satisfied the concreteness requirement of Article III standing, where the plaintiff alleges a violation of the VPPA for a wrongful disclosure."); *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 274 (3d Cir. 2016) ("Congress has long provided plaintiffs with the right to seek redress for unauthorized disclosures of information that, in Congress's judgment, ought to remain private."); *Austin-Spearman*, 98 F. Supp. 3d at 666 ("The VPPA plainly provides those … who allege wrongful disclosure even without additional injury a right to relief. By affording redress to … and providing that 'consumers' become 'aggrieved' purely as a result of disclosures made in violation of the statute, the VPPA makes clear that such disclosures alone work an injury deserving of judicial relief."). Defendant does not cite a single case involving the VPPA coming out a different way, much less any case involving the VPPA at all.

Here, Plaintiff's Complaint states clearly that Defendant, a "video tape service provider," "knowingly disclosed [his] PII to a third party without [his] consent." *Yershov II*, 204 F. Supp. 3d at 361; *see* Compl. ¶¶ 48-54, 44-47 ("Defendant never gave Plaintiff Joseph the opportunity to prevent the Website from disclosing his PII to third parties. Nevertheless, each time Plaintiff Joseph viewed a pre-recorded video on the Website, Defendant disclosed Plaintiff Joseph's PII to Piano via the Piano API."); *see also id.* ¶¶ 23-31 (stating and demonstrating through screenshots of disclosed PII that Defendant transmits users' email addresses and user ID to Piano); *id.* ¶¶ 32-35 (stating and demonstrating through screenshots of disclosures of user PII that "Defendant discloses to Piano through the Piano API the full title of a video that a user watches and the … URL for that video. … Defendant [also] discloses to Piano that a user actually watched the video as opposed to simply reading an article."). These allegations suffice for a violation of the VPPA and thus constitute an invasion of privacy sufficient for Article III standing.

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), does not upend this analysis. As an initial matter, "[n]othing about *TransUnion* guts the above holding[s] … particularly because" each decision "postdates [*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016)], the precedent on which *TransUnion* largely relied." *James*, 701 F. Supp. 3d at 949. And *TransUnion*, like *Spokeo* and the aforementioned authorities before it, recognized "[v]arious intangible harms can also be concrete. Chief among them are injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *TransUnion*, 594 U.S. at 425. Further, *TransUnion* recognized "Congress may elevate to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law." *Id.* (cleaned up). The only thing *TransUnion* reiterated was that the violation of a statute must have "a close historical or common-law analogue" to suffice for Article III standing. *Id.* at 424.

As noted above, the VPPA protects against a historical and common-law aspect of the right to privacy: "the individual's control of information concerning his or her person." *Reporters Comm. for Freedom of the Press*, 489 U.S. at 763; *see also Yershov II*, 204 F. Supp. 3d at 362 ("[A]n individual's right to privacy, both as to certain personal information and private locations, has long been regarded as providing a basis for a lawsuit in English or American courts.") (cleaned up); *Perry*, 854 F.3d at 1340-41 ("[T]he VPPA's creation of a cause of action for this type of an invasion of privacy has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts.") (cleaned up). Thus, even under *TransUnion*'s test, Plaintiff has suffered a harm sufficient for Article III standing. *Adams*, 680 F. Supp. 3d at 41 (plaintiff's "focus is clearly on past harm and users whose personally identifiable information was, in fact, sent to a third party; it is not a mere risk of future harm or simple statutory violation, as argued by Defendants") (cleaned up).

## CONCLUSION

For the foregoing reasons, Defendant's Motion should be denied in full. To the extent that any portion of Defendant's Motion is granted, Plaintiff respectfully requests leave to amend.

Dated: September 9, 2024

Respectfully submitted,

By: /s/ Max S. Roberts
Max S. Roberts

**BURSOR & FISHER, P.A.**
Yitzchak Kopel*
Max S. Roberts (*Pro Hac Vice*)
Victoria X. Zhou*
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: ykopel@bursor.com
mroberts@bursor.com
vzhou@bursor.com

**REARDON SCANLON LLP**
James J. Reardon, Jr.
45 South Main Street, 3rd Floor
West Hartford, CT 06107
Telephone: (860) 955-9455
Facsimile: (860) 920-5242
E-Mail: james.reardon@reardonscanlon.com

**Pro Hac Vice Forthcoming*

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 9, 2024, I electronically filed the foregoing document with the Court's CM/ECF system, which will provide e-mail notice to all counsel of record.

By: */s/ Max S. Roberts*
Max S. Roberts