**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JOSUE JOSEPH, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>IGN ENTERTAINMENT, INC.<br><br>Defendant. | Case No. 1:24-cv-11579-MJJ<br><br>**LEAVE TO FILE GRANTED ON SEPTEMBER 12, 2024** |

**DEFENDANT IGN ENTERTAINMENT, INC.'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. LEGAL ARGUMENT ..... 2

A. Plaintiff Is Not a Consumer Under the VPPA ..... 2

B. Plaintiff Has Failed to Plausibly Allege that IGN Knowingly Disclosed Plaintiff's PII to Piano ..... 7

C. The Ordinary Course of Business Exception Applies Because Plaintiff Fails to Allege that IGN Actually Targets Advertising to Its Users. ..... 8

D. Plaintiff Does Not Have Article III Standing ..... 8

III. CONCLUSION ..... 9

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Aldana v. GameStop, Inc.*,
No. 22-CV-7063-LTS, 2024 WL 708589 (S.D.N.Y. Feb. 21, 2024), *motion to certify appeal denied*, No. 22-CV-7063-LTS-VF, 2024 WL 3104345 (S.D.N.Y. June 24, 2024)....................6

*Bowen v. Select Portfolio Servicing, Inc.*,
2024 WL 3552620 (D. Mass. July 26, 2024)....................9

*Brown v. Learfield Commc'ns, LLC*,
No. 1:23-CV-00374-DAE, 2024 WL 1477636 (W.D. Tex. Jan. 29, 2024)....................5

*Carter v. Scripps Networks, LLC*,
670 F. Supp. 3d 90 (S.D.N.Y. 2023)....................6

*Collins v. Toledo Blade*,
2024 WL 1094613 (N.D. Ohio Mar. 13, 2024)....................5

*Edwards v. Learfield Commc'ns, LLC*,
697 F. Supp. 3d 1297 (N.D. Fla. 2023)....................3

*Ellis v. Cartoon Network, Inc.*
803 F.3d 1251 (11th Cir. 2015)....................3

*Grae v. Corr. Corp. of Am.*,
57 F.4th 567 (6th Cir. 2023)....................9

*Harris v. Public Broadcasting Serv.*,
662 F. Supp. 3d 1327 (N.D. Ga. 2023)....................5

*Kuzenski v. Uproxx LLC*,
No. 2:23-CV-00945, 2023 WL 8251590 (C.D. Cal. Nov. 27, 2023)....................7

*Mendoza v. Caesars Ent., Inc.*,
No. 23-CV-03591, 2024 WL 2316544 (D.N.J. May 22, 2024)....................5

*Rancourt v. Meredith Corp.*,
No. 22-CV-10696, 2024 WL 381344 (D. Mass. Feb. 1, 2024)....................8

*Salazar v. Nat'l Basketball Ass'n*,
685 F. Supp 3d 232 (S.D.N.Y. 2023), *appeal docketed*, Case No. 23-1147 (2d Cir.)....................3, 4

*Saunders v. Hearst Television, Inc.*,
2024 WL 126186 (D. Mass. Jan. 11, 2024)....................4, 5

*Sputz v. Alltran Fin., LP*,
2021 WL 5772033 (S.D.N.Y. Dec. 5, 2021) ....................9

*TransUnion LLC v. Ramirez*,
141 S. Ct. 2190 (2021)....................2, 8, 9

*Yershov v. Gannett Satellite Information Network, Inc.*,
820 F.3d 482 (1st Cir. 2016).................... *passim*

**Federal Statutes**

18 U.S.C.
§ 2710 (Video Privacy and Protection Action).................... *passim*
§ 2710(a)(1) ....................1

## I. INTRODUCTION

Plaintiff Josue Joseph's opposition (the "Opposition") to defendant IGN Entertainment, Inc. ("IGN")'s motion to dismiss only reinforces the underlying problem with this lawsuit: it is a flawed attempt to extend the First Circuit's decision in *Yershov v. Gannett Satellite Information Network, Inc.*, 820 F.3d 482 (1st Cir. 2016) ("*Yershov*") far beyond its limited scope based on an expanded construction of the Video Privacy and Protection Action, 18 U.S.C. § 2710 (the "VPPA") not supported by the statute or the overwhelming weight of case law. Despite Plaintiff's attempt to save his claim, his Opposition, which fails to address the fundamental defects requiring dismissal, demonstrates why the Court should reject Plaintiff's invitation to expand existing law.

*First*, and most critically, this case fails because Plaintiff is not a "subscriber" under the VPPA. The VPPA was enacted to protect the privacy of a video "subscriber's" rental, purchase, and delivery of video tapes or similar audio visual materials. *See generally* 18 U.S.C. § 2710(a)(1). Courts across the country have made clear: an individual who views video content qualifies as a "subscriber" under the VPPA if the individual's access to the video is *conditioned* on an exchange of information with the video content provider. Plaintiff's incorrect interpretation of *Yershov* suggests the First Circuit strayed from that precedent—it has not. In *Yershov*, the First Circuit held that a plaintiff was a "subscriber" under the VPPA because to access and view video content on a mobile application, the plaintiff was *required* to provide an e-mail address to download the mobile app. But that is not the case here. Plaintiff failed to allege—and cannot allege—the same conditions exist. Plaintiff was *not required* to provide an e-mail address, personally identifiably information ("PII"), let alone any other form of consideration, to access and view video content on www.ign.com (the "IGN Website") because it was freely available to any website user. Plaintiff's attempts in his Opposition to argue around this pleading defect fail.

*Second*, beyond the above incurable defect, Plaintiff fails to address the omission of allegations in his Complaint regarding purported knowing disclosures of *his* PII. Instead, Plaintiff points to a general dynamic website analysis of the IGN Website, which purportedly shows that when *any* user

watches a video while signed into an IGN account, IGN discloses that user's PII. But the Opposition fails to address how a dynamic analysis that was prepared in early 2024, can show that Plaintiff's information was disclosed in September 2023, the last time he alleges he watched a video on the IGN Website. Nor does the Opposition explain how the dynamic analysis, which is premised on a user being logged into an IGN Website account while viewing video content, applies to Plaintiff, who fails to allege whether he was logged in to his account the last time he viewed a video on IGN's Website.

*Third*, while arguing that the VPPA "ordinary course of business" exemption does not apply because IGN purportedly disclosed Plaintiff's PII to Piano for marketing and advertising purposes, Plaintiff fails to adequately allege that IGN actually used Piano for any such purposes. In fact, Plaintiff ignores that his Complaint is rife with allegations that IGN's purported disclosures of PII were used for purposes other than marketing and advertising, including, for example, leveraging analytics used to optimize and improve users' experiences on the IGN Website.

*Finally*, Plaintiff never directly engages with IGN's argument that he has failed to plausibly allege that he suffered an injury satisfying the Supreme Court's test for Article III standing articulated in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), resting instead on mostly pre-*TransUnion* case law to argue for standing.

This Court should reject Plaintiff's attempt to skirt the VPPA's pleading requirements and expand the holding in *Yershov* and given Plaintiff's fatal pleading defects, this Court should dismiss Plaintiff's Complaint with prejudice.

## II. LEGAL ARGUMENT

### A. Plaintiff Is Not a Consumer Under the VPPA

Plaintiff's argument that he has plausibly alleged he is a "consumer" rests on a fundamental misreading of the First Circuit's decision in *Yershov*. Contrary to Plaintiff's contention, the First Circuit did *not* hold that merely downloading a mobile application is sufficient to confer status as a "subscriber"

under the VPPA. *See, e.g.*, Opp. at 3. And Plaintiff's attempt to create an elements test that glosses over key facts and improperly tries to extend *Yershov*'s holding should be rejected.

The facts in *Yershov* are fundamentally different than those present here. In *Yershov*, the plaintiff downloaded a free mobile application in order to access video content from *USA Today*. But critically, in order "[t]o ***use the App***, [plaintiff] ***did indeed have to provide [defendant] with personal information***, such as his Android ID and his mobile device's GPS location at the time he viewed a video, each linked to his viewing selection." 820 F. 3d at 489 (emphasis added). While the First Circuit acknowledged the question was "close[]," the Court concluded that "the transaction described in the complaint," plausibly alleged plaintiff was a "consumer" under the VPPA. *Id.* at 487-90.

Tellingly, the First Circuit distinguished the facts in *Yershov* with the Eleventh's Circuit's analysis in *Ellis v. Cartoon Network, Inc.* 803 F.3d 1251 (11th Cir. 2015), which held that plaintiff was not a subscriber under the VPPA. The First Circuit noted that "the user of the application in [*Ellis*] ***did not have to*** 'provide any information to Cartoon Network.'" *Yershov*, 820 F. 3d at 488 (quoting *Ellis*, 803. F. 3d at 1254 (emphasis added). The First Circuit then reasoned that it "would describe the allegations (and their reasonable inferences) in [*Yershov*] quite differently. To use the App, [plaintiff] did indeed ***have to*** provide [defendant] with personal information . . ." *Id.* at 489. The key determination is and has been that there is a requirement to provide certain personal information in exchange for access to, or a means to access (*i.e.*, a mobile application), audio visual and/or visual content.

Plaintiff's attempt to extend *Yershov* has been repeatedly rejected by courts in multiple jurisdictions. In addition to the Eleventh Circuit's decision in *Ellis*, other courts have reached similar holdings: a user is not a subscriber unless access to video content is *conditioned* on some sort of consideration and/or provision of PII. *See, e.g., Edwards v. Learfield Commc'ns, LLC,* 697 F. Supp. 3d 1297, 1306 (N.D. Fla. 2023) ("Plaintiffs' signing up for email updates here did not make them 'subscribers.' Signing up requires no 'durable' commitment or real exchange at all..."); *see also Salazar v. Nat'l Basketball Ass'n,* 685 F. Supp 3d 232, 245 (S.D.N.Y. 2023), *appeal docketed*, Case No. 23-

1147 (2d Cir.) ("Plaintiff has alleged that he was a 'subscriber[ ] to newsletters, not [a] subscriber[ ] to audio visual materials.'").

Plaintiff's creation of an account on the IGN Website in exchange for his e-mail address does not constitute the type of exchange contemplated under *Yershov*. Certainly, the First Circuit acknowledged in *Yershov* that "one can be a 'subscriber' without making a monetary payment." 820. F. 3d at 488. But the First Circuit did not determine that an exchange of information for access to video content was no longer required. The First Circuit made clear in *Yershov* that because the plaintiff was required to provide personal information (*i.e.*, his e-mail Android ID, and mobile device's GPS location) in order to access the app that provided the plaintiff with video content, "access was ***not free*** of a commitment to ***provide consideration***," and that by installing the mobile application to access content, he "established a relationship with [defendant] that is materially different from what would have been the case had *USA Today* simply remained one of millions of sites on the web that Yershov might have accessed through a web browser." *Id.* at 489 (emphasis added).

Here, Plaintiff tries to tether status as a "subscriber" under the VPPA to the fact that he *later* created an account on the IGN Website that required that he share his e-mail address with IGN and watched a video while logged into his account in or around September 2023. *Id.* ¶¶ 49, 50. But Plaintiff does not and cannot allege that he was required to provide personal information to IGN in order to access and view video content on the IGN Website. In fact, he repeatedly concedes as much in the Complaint. *See, e.g.,* Compl. ¶¶ 9, 10, 11, 13, 34 (admitting *any visitor* to the IGN Website can access the video content for free); *see also id*. ¶ 34 (alleging that the URL for a video on IGN's Website can be entered into an Internet search browser and bring any user directly to the webpage containing the video). To survive a pleadings challenge—even under the First Circuit's *Yershov* precedent—Plaintiff needs to allege that to access and view video and audio visual materials on the IGN Website, IGN required Plaintiff to offer some form of information in exchange. But Plaintiff did not and cannot so allege.

None of the cases cited by Plaintiff support the expanded interpretation of *Yershov* he advocates for and are easily distinguishable or unpersuasive. *See* Opp. at 5-6. In *Saunders v. Hearst Television, Inc.*, 2024 WL 126186, *3 (D. Mass. Jan. 11, 2024), for example, the court followed *Yershov*'s lead in

finding that provision of an "email address to the ... app and ... enable[ing] geolocation services and push notifications" were "adequate consideration to use Hearst's apps to obtain subscriber status under the VPPA." But, unlike the case here, in *Saunders* the videos at issue were viewed and the alleged personal data was transferred only when the videos were seen on the app, access to which required the provision of the alleged information the court deemed sufficient to constitute consideration. 2024 WL 126186 at *3. *See also Brown v. Learfield Commc'ns, LLC*, No. 1:23-CV-00374-DAE, 2024 WL 1477636, at *8 (W.D. Tex. Jan. 29, 2024) (distinguishing *Saunders* in same fashion, noting the videos at issue in *Brown* were "accessible whether or not Plaintiffs subscribed to the newsletter at all.").

Similarly, in *Collins v. Toledo Blade*, 2024 WL 1094613, *6 (N.D. Ohio Mar. 13, 2024), the court found that the plaintiff sufficiently alleged he qualified as a subscriber under the VPPA because he alleged his subscription granted access to video material. In particular, the plaintiff provided names and e-mail addresses to defendant and "***in exchange***, Defendants allowed access to ***more*** of Defendants' online newspaper content;" notably access to embedded video content that is otherwise behind a paywall after a certain number of views. 2024 WL 1094613, at *6 and n.7. Here, Plaintiff has not and cannot allege that the information he provided to IGN enabled access to any video content not already available to him.

Finally, the court in *Harris v. Public Broadcasting Serv.*, 662 F. Supp. 3d 1327, 1331-32 (N.D. Ga. 2023), did find that the plaintiff had sufficiently alleged she was a subscriber under the VPPA because "[she] provided personal information to Defendant, established an account with Defendant's webpage and received periodic services from Defendant." (internal quotations omitted). However, the court did not consider whether there was any additional requirement beyond this minimum criteria that a subscription grant access to audio visual material to qualify subscribers as consumers under the VPPA. *See Mendoza v. Caesars Ent., Inc.*, No. 23-CV-03591, 2024 WL 2316544, at *6 (D.N.J. May 22, 2024) (stating same). Further, to the extent that *Harris* is deemed to conflict with this criteria, it is in the minority. *See id.*

Plaintiff tries to correct the aforementioned deficiencies in his Complaint by citing to a 2001 online article (last updated in 2012) that purportedly describes certain ancillary benefits available to

those that create an account on the IGN Website (*i.e*., entry into contests, free game and music magazines, access to message boards, text and voice chat, a personalized start page, customized gaming newsletters, and a free email address). *See* Opp. at 2 and 4.[1]Plaintiff then, misleadingly citing to a background quote from *Yershov* as to the dictionary definition of "subscribe", seemingly suggests that Plaintiff's creation of an account solely to access such ancillary benefits is sufficient to make him a subscriber under the VPPA. But once again Plaintiff does not, because he cannot, connect the access membership may or may not grant to these ancillary benefits to what is the core necessary element under the VPPA, namely access to video or audio visual content. *See, e.g., Carter v. Scripps Networks, LLC*, 670 F. Supp. 3d 90, 99–100 (S.D.N.Y. 2023) (stating that "a customer's non-video transactions play no part in a defendant's liability under the VPPA"). Contests, message boards, and non-video game-related content (*i.e*., newsletters) is not the type of content protected under the VPPA. The VPPA offers protection for videos and audio visual materials. Nothing more.

Plaintiff's citation to *Aldana v. GameStop, Inc.,* No. 22-CV-7063-LTS, 2024 WL 708589, at *6 (S.D.N.Y. Feb. 21, 2024), *motion to certify appeal denied*, No. 22-CV-7063-LTS-VF, 2024 WL 3104345 (S.D.N.Y. June 24, 2024) in support of the general proposition that courts have considered "game-related content" to fall within the scope of the VPPA is misleading at best. In *GameStop*, the court was analyzing whether GameStop was a "video tape service provider" under the VPPA. Because the video games at issue that were sold by GameStop were not "prerecorded video cassette tapes" the court was forced to look at the text and legislative history of the VPPA to determine the types of "audio visual materials" that were "similar" to "prerecorded video cassette tapes" such that they could fall under the VPPA. In doing so, the court agreed with GameStop that video games generally were not covered by the VPPA. However, the court found that the "cut scenes" within the games were "video content" under the VPPA because they are prerecorded videos that a user could view in the context of playing an interactive game. *Id.* None of the purported ancillary benefits allegedly received by users that create accounts on IGN listed by Plaintiff consist of any audio visual materials or videos. Indeed,

[1] Notably Plaintiff does not allege that he actually received any of these benefits by virtue of signing up for an account on the IGN Website.

the materials are classic non-audio visual materials that do not fall under the VPPA. Courts have repeatedly concluded that signing up for e-mail updates and/or newsletters to access content untethered to ***video content*** does not make a user a "subscriber" under the VPPA. *See, e.g., Kuzenski v. Uproxx LLC*, No. 2:23-CV-00945, 2023 WL 8251590, at *5 (C.D. Cal. Nov. 27, 2023) (Plaintiff failed to "allege that becoming a subscriber is connected in any way to Defendant's video content.").

Ultimately, Plaintiff's Complaint fails to allege that he is a subscriber under the VPPA, and his case should be dismissed with prejudice for this reason alone.

### B. Plaintiff Has Failed to Plausibly Allege that IGN Knowingly Disclosed Plaintiff's PII to Piano

Contrary to Plaintiff's claims, Plaintiff did not, in fact, allege that he requested specific video materials or services conditioned on the exchange of his PII. *See generally* Opp. at 10. Plaintiff has not alleged a *single fact* showing that any of his information was disclosed to a third party. With broad strokes, Plaintiff alleges that IGN "discloses a user's 'user ID' to Piano in a singular network transmission with the user's e-mail address and video-viewing information[.]" Compl. ¶ 45. Such allegations are too conclusory to pass judicial muster, particularly where Plaintiff offers no facts showing, *inter alia*, what videos he allegedly watched and that any transmissions of PII occurred.

Instead of addressing these omissions, Plaintiff in his Opposition argues the "dynamic website analysis" purportedly conducted by private researchers at the direction of his counsel of the IGN Website in early 2024 suffices to show knowing disclosures of Plaintiff's information to a third party. *See generally* Opp. at 10. But Plaintiff admits the last time he viewed a video on the IGN Website was in or around September 2023, *see* Compl. ¶ 49, and Plaintiff does not allege how long the disclosures allegedly found by the "dynamic website analysis" were taking place. Further, the "dynamic website analysis" that purportedly shows the disclosure of information to Piano is premised on the fact that such disclosures take place when a user is logged into the IGN Website while viewing video content. Plaintiff does not allege whether he was logged in, in September 2023 when he last viewed a video, and as established above, he would not need to be logged in to view videos on the IGN Website because *no*

*one* needs to be logged in or create an account to view videos on the IGN Website. Plaintiff must provide some plausible allegations sufficient to establish that his information was knowingly shared by IGN to withstand scrutiny.

Plaintiff has failed to plead any specific facts about IGN's purported knowingly disclosures of his PII and his case must be dismissed with prejudice.

### C. The Ordinary Course of Business Exception Applies Because Plaintiff Fails to Allege that IGN Actually Targets Advertising to Its Users.

Plaintiff argues that the "ordinary course of business" exception under the VPPA does not apply because IGN purportedly discloses Plaintiff's PII to Piano for marketing and advertising purposes, Opp. at 11-14, but the allegations in the Complaint fail to allege that IGN actually uses Piano for anything other than analysis of data, a use that clearly falls within the exception.

Plaintiff goes to great lengths to allege throughout the Complaint the various services that Piano offers. Compl. ¶¶ 17-21, 36-43. Most of the services Piano is alleged to provide include the type of analysis services that fall directly under the "ordinary course of business" exception to the VPPA. *See e.g., Rancourt v. Meredith Corp.*, No. 22-CV-10696, 2024 WL 381344, *17 (D. Mass. Feb. 1, 2024) ("if the disclosure of PII is in furtherance of business management and operations that are intra-corporate or inner facing, designed to ensure the smooth operation of the business . . . it falls under the [VPPA] exception."). And while Plaintiff further alleges that parties, like IGN, *can* target advertising, or that Piano's services allow for a party to provide targeted advertisements, Plaintiff nowhere alleges that IGN actually does avail itself of these services, except in conclusory fashion. *See* Compl. ¶ 47.

Accordingly, the "ordinary course of business" exception applies to IGN's use of Piano, requiring dismissal of Plaintiff's VPPA claim with prejudice.

### D. Plaintiff Does Not Have Article III Standing

Plaintiff never directly engages with IGN's argument that he has failed to plausibly allege that he suffered an injury satisfying the Supreme Court's test for Article III standing articulated in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021). In *TransUnion*, the Supreme Court held intangible harms may

confer standing only where they have a "'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts[.]" *Id*. at 2200, 2204. Plaintiff, however, never explicitly analogizes his case to any tort recognized at common law and instead relies only on cases predating *Transunion*, which therefore do not control here. Opp at 17; *Grae v. Corr. Corp. of Am.*, 57 F.4th 567, 571 (6th Cir. 2023) (noting that the Court "cannot apply [cases that predate *Transunion*] in a way that conflicts with *TransUnion*."). Plaintiffs do not, for instance, argue that the alleged disclosures reflect "'sexual relations,' 'family quarrels,'" or "'unpleasant or disgraceful illnesses.'" *See Sputz v. Alltran Fin., LP*, 2021 WL 5772033, at *5 (S.D.N.Y. Dec. 5, 2021); *see also Bowen v. Select Portfolio Servicing, Inc.*, 2024 WL 3552620, at *5 (D. Mass. July 26, 2024). Plaintiffs' allegations are limited to a bare statutory violation, which is insufficient for Article III standing. Indeed, Plaintiff alleges that IGN shared his: "(i) e-mail address, (ii) Piano user ID, and (iii) the title and URL of the video Plaintiff [] watched, including the fact that Plaintiff [] actually viewed the video." Compl. ¶ 53. This is exactly the sort of bare procedural harm contemplated by *Spokeo* and *Transunion*, which constitutes nothing more than "informational injur[ies]." *Bowen*, 2024 WL 3552620, at *5.

## III. CONCLUSION

For all of these reasons, and those stated in IGN's motion, Plaintiff's Complaint should be dismissed in full and with prejudice.

Respectfully submitted,

/s/ *Roy W. Bjorlin*
Roy W. Bjorlin (BBO #666319)
WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP
260 Franklin Street, 14th Floor
Boston, MA 02110
Telephone: (617) 422-5300
roy.bjorlin@wilsonelser.com

/s/ *Sean M. Sullivan*
Sean M. Sullivan (SBN # 229104) (*Pro Hac Vice*)
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California 90017-2566
Telephone: (213) 633-6800
seansullivan@dwt.com

Dated: September 19, 2024

*Attorneys for Defendant IGN Entertainment, Inc.*

**CERTIFICATE OF SERVICE**

I certify that, on September 19, 2024, this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

/s/ *Roy W. Bjorlin*
Roy W. Bjorlin