**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JOSUE JOSEPH, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>IGN ENTERTAINMENT, INC.,<br><br>Defendant. | Case No. 1:24-cv-11579-MJJ |

**DEFENDANT IGN ENTERTAINMENT, INC.'S MEMORANDUM OF LAW IN SUPPORT OF RENEWED MOTION TO DISMISS PLAINTIFF JOSUE JOSEPH'S FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**


PRELIMINARY STATEMENT ..... 1

I. FACTUAL AND PROCEDURAL BACKGROUND ..... 3

A. Plaintiff's Initial Complaint and IGN's Motion to Dismiss ..... 3

B. The IGN Website and IGN's Purported Use of Piano ..... 3

C. Plaintiff's Free IGN Website Account ..... 6

II. LEGAL STANDARD ..... 6

III. ARGUMENT ..... 7

A. This Action Must Be Dismissed Because Plaintiff Has Not Plausibly Alleged a Violation of the VPPA ..... 7

1. Plaintiff Does Not—And Cannot—Allege He is a "Consumer" of IGN's Video Content ..... 8

2. IGN's Alleged Disclosures Were Incident to the Ordinary Course of Business ..... 13

3. Plaintiff Does Not Allege IGN Knowingly Discloses His PII to Piano ..... 15

B. The Action Must Be Dismissed for Lack of Subject Matter Jurisdiction Because Plaintiff Does Not Have Article III Standing ..... 18

IV. CONCLUSION ..... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................3, 7

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)....................7

*Belozerov v. Gannett Co*.,
646 F. Supp. 3d 310 (D. Mass. 2022)....................8

*Brown v. Learfield Comms., LLC*,
713 F. Supp. 3d 355 (W.D. Tex. Jan. 29, 2024)....................9, 12

*Carroll v. Chick-fil-A, Inc.*,
2024 WL 1091193 (N.D. Cal. Feb. 13, 2024)....................8, 9, 12

*Dancel v. Groupon, Inc.*,
49 F.3d 999 (7th Cir. 2019)....................15

*Doe I v. Google LLC*,
Case No. 23-cv-024310-VC, 2024 WL 3490744 (N.D. Cal. July 22, 2024)....................14, 17

*Edwards v. Learfield Commc'ns, LLC*,
697 F. Supp. 3d 1297 (N.D. Fla. 2023)....................9

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017)....................15

*Ellis v. The Cartoon Network, Inc.*,
803 F.3d 1251 (11th Cir. 2015)....................9, 12

*Freeman v. Town of Hudson*,
714 F.3d 29 (1st Cir. 2013)....................5

*Gardener v. MeTV*,
681 F. Supp. 3d 864 (N.D. Ill. 2023)....................8, 9, 11, 12

*Giragosian v. Ryan*,
547 F.3d 59 (1st Cir. 2008)....................5

*Hunthausen v. Spine Media LLC*,
No. 3:22-cv-1970-JES-DDL, 2023 WL 4307163 (S.D. Cal. June 21, 2023)....................9, 12

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016)....................................................................................15

*Kuzenski v. Uproxx LLC*,
No. 2:23-CV-00945, 2023 WL 8251590 (C.D. Cal. Nov. 27, 2023) ..............................5, 9, 12

*Martin v. Meredith Corp.*,
657 F. Supp. 3d 277 (S.D.N.Y. 2023).......................................................................16

*Perry v. Cable News Network, Inc.*,
854 F.3d 1336 (11th Cir. 2017) ...................................................................................9

*Pileggi v. Washington Newspaper Publishing Co., LLC*,
23-345 (BAH), 2024 WL 324121 (D.D.C. Jan. 29, 2024) ..............................................9, 12

*Rancourt v. Meredith Corp.*,
No. 22-CV-10696-ADB, 2024 WL 381344 (D. Mass. Feb. 1, 2024) ..............................10, 14

*Rodriguez v. Sony Computer Ent. Am., LLC*,
801 F.3d 1045 (9th Cir. 2015) ....................................................................................13

*Ruiz Rivera v. Pfizer Pharms., LLC*,
521 F.3d 76 (1st Cir. 2008)..........................................................................................7

*Salazar v. National Basketball Association*,
118 F.4th 533 (2d Cir. 2024) ...........................................................10, 12, 19, 20

*Saunders v. Hearst Television, Inc.*,
711 F. Supp. 3d 24 (D. Mass. 2024).............................................................................10

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)....................................................................................................18

*Sterk v. Redbox Automated Retail, LLC*,
770 F.3d 618 (7th Cir. 2014) ...................................................................................13, 14

*Sterk v. Redbox Automated Retail, LLC*,
No. 11-1729, 2013 WL 4451223 (N.D. Ill. Aug. 16, 2013), *aff'd*, 770 F.3d 618 (7th Cir. 2014) ..............................................................................................................14

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)...............................................................................................18, 19

*Watterson v. Page*,
987 F.2d 1 (1st Cir. 1993)...............................................................................................5

*Yershov v. Gannett Satellite Info.*,
820 F.3d 482 (1st Cir. 2016)......................................................................... *passim*

**Federal Statutes**

15 U.S.C. § 1692 (Fair Debt Collection Practices Act)........................................................19, 20

18 U.S.C. § 2710 (Video Privacy Protection Act of 1988 [“VPPA”]) ................................. *passim*

**Rules**

Fed. R. Civ. P. 8...........................................................................................................................16

Fed. R. Civ. P. 12...........................................................................................................1, 7, 8, 21

Defendant IGN Entertainment, Inc. ("IGN") hereby submits this memorandum of law in support of its Renewed Motion to Dismiss ("Motion") with prejudice the first amended complaint ("FAC") filed by Josue Joseph ("Plaintiff") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## PRELIMINARY STATEMENT

Even after being provided with a second chance, Plaintiff still fails to properly plead his claim against IGN. Plaintiff's renewed attempt to, on behalf of a putative nationwide class, extend the reach of the Video Privacy Protection Act of 1988 ("VPPA"), 18 U.S.C. § 2710, far beyond the intended scope of the statute should be rejected. As IGN previously highlighted, there has been a lawyer-driven effort to misapply the VPPA to extract statutory damages for routine internet browsing by targeting any company that features audiovisual content on its website. This action is yet another attempt—but like many others, Plaintiff fails to allege the facts necessary to state a claim under the VPPA or even the basic facts necessary for Article III standing.

Plaintiff claims he is entitled to statutory and punitive damages because IGN allegedly collected and shared his personally identifiably information ("PII") with a third party, piano.io ("Piano"), after he watched unspecified, publicly available video content on IGN's website. But fatal to Plaintiff's claim, Plaintiff also alleges that all of IGN's video content is accessible for *free* on its website, and, tellingly, does not (because he cannot) allege that IGN required him to create an account to view that content or that doing so provided him with exclusive access to any video content. Even after having the opportunity to amend the complaint, Plaintiff's theory of VPPA liability is wholly untenable and suffers from several defects.

*First*, Plaintiff is not a "consumer" as defined under the VPPA because he has not, and cannot, allege that he "subscribed" to IGN's audiovisual content, and numerous cases have held

that the casual consumption of publicly available video content on the internet does not make a person a "consumer" under the VPPA. Plaintiff alleges that he voluntarily created a free IGN account, but he does not allege that free account gave him access to the videos he watched or any other audiovisual content that was not already publicly available. Plaintiff's decision to create an account for *other* purposes does not and cannot transform his otherwise inactionable web browsing into a VPPA claim.

*Second*, even if Plaintiff's web browsing otherwise qualified for the VPPA's protections—which it does not—any of IGN's alleged disclosures were "incident to the ordinary course of business," and therefore not actionable under the VPPA. 18 U.S.C. § 2710(b)(2)(E). The VPPA permits disclosure of PII to third parties when those disclosures are made as part of the "ordinary course of business," which includes, *inter alia*, "order fulfillment" and "request processing." 18 U.S.C. § 2710(a)(2). Plaintiff alleges that IGN transmitted his PII to Piano to generate analytics reports that IGN then used to create customized and personalized experiences for IGN's users, like Plaintiff—the very types of disclosures authorized by the VPPA.

*Third*, Plaintiff has not adequately pled that IGN disclosed his PII as defined under the VPPA because: (1) Plaintiff fails to allege any data IGN allegedly collected that identifies him as a video-viewer; (2) Plaintiff fails to allege data IGN allegedly collected that identifies the "specific video material" viewed; and (3) even if IGN did collect either of these disparate pieces of data, Plaintiff fails to allege sufficient facts showing that IGN linked his identity to his video-viewing behavior.

*Finally*, Plaintiff has pled only a statutory harm based on the purported violation of the VPPA and does not have Article III standing to bring his suit in federal court.

Permitting Plaintiff's allegations to pass judicial muster will only further embolden casual

online browsers (and their lawyers)—who are not "consumers" under the VPPA—to seek to impose liability on any company offering publicly available video content on its website. Such a dramatic expansion of the VPPA's scope would disrupt common online data practices and invite more meritless (but costly) litigation against countless websites. This Court should dismiss the complaint with prejudice.

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

### A. Plaintiff's Initial Complaint and IGN's Motion to Dismiss

Plaintiff filed his original complaint on June 18, 2024. Dkt. No. 1. IGN moved to dismiss the complaint on August 26, 2024, and that motion was fully briefed. Dkt. Nos. 15-17, 20 and 21. On November 19, 2024, the Court denied IGN's motion to dismiss without prejudice, granted Plaintiff leave to file an amended complaint, and set a briefing schedule for IGN to file a renewed motion to dismiss. Dkt. No. 26. Plaintiff filed his FAC on November 22, 2024. Dkt. No. 27. The FAC largely repeats the same allegations as the complaint, except in two respects: (1) Plaintiff cites a 2001 article about IGN accounts to allege he created an IGN account in exchange for benefits unrelated to audio-visual content; and (2) Plaintiff cites to Piano webpages and other third-party sources to allege general capabilities of Piano.

### B. The IGN Website and IGN's Purported Use of Piano

IGN is a leading internet media company that owns and operates www.ign.com (the "IGN Website"). FAC ¶ 2. The IGN Website features free news and reviews about television, movies, video games, comics, and technology, including video content, that users can access "via their web browsers." *Id.* ¶¶ 2, 8, 9. As Plaintiff acknowledges, IGN "provide[s] content to its extensive

[1] The Factual Background reflects the facts as pled in the FAC for the purposes of this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). IGN reserves the right to dispute and/or contest the facts if the case proceeds beyond the pleadings stage.

viewership for free." FAC ¶ 15. According to Plaintiff, IGN "prominently informs users that it provides pre-recorded video content" that can be accessed "through a 'Video' option on [the IGN] Website main menu":




*Id.* ¶ 11. As the FAC alleges, "[u]pon clicking the 'Video' category on [the IGN] Website, users can view an assortment of pre-recorded videos, including original shows, trailers, and gameplay videos (for video games)":




FAC ¶ 12. As Plaintiff acknowledges, *any visitor* to the IGN Website "can access the [IGN] Website to view videos such as game previews, movie trailers, and television show clips" for free. *Id.* ¶¶ 9, 10, 11, 13. Plaintiff does not allege that IGN Website visitors need a subscription to view videos on the IGN Website or that IGN Website visitors need to provide any information, including any PII, in order to access the videos—and in fact, they do not (as a simple visit to IGN's Website

confirms).[2] Indeed, Plaintiff admits as much when he alleges that the URL for a video takes "anyone" who enters that URL into an internet search browser directly to the webpage containing the video. *See id.* ¶ 38 (featuring the below image depicting a purportedly disclosed IGN URL entered into a web browser).




Plaintiff alleges that IGN integrates an application programming interface ("API") onto the IGN Website, namely the Piano API, as either part of a Piano Software Development Kit ("SDK") or as a standalone API. *Id.* ¶ 19.[3] According to Plaintiff, Piano "empowers its customers like [IGN] to create customized digital experiences and build commercial relationships with [their] users – fueling [their customers'] subscription, conversion, analytics, entitlement[,] and personalization goals." *Id.* ¶ 41 (quotations omitted). Plaintiff further alleges a variety of general

[2] On a motion to dismiss, courts may consider extrinsic documents if those documents are "central to plaintiffs' claim" or are "sufficiently referred to in the complaint." *Freeman v. Town of Hudson*, 714 F.3d 29, 36 (1st Cir. 2013) (quoting *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993)); *see also Giragosian v. Ryan*, 547 F.3d 59, 65 (1st Cir. 2008). Here, the FAC relies entirely on the content of the IGN Website and Plaintiff specifically identifies the link to the IGN Website (FAC ¶ 2), identifies screenshots from the IGN Website (*id.* ¶¶ 11, 12, 38), and repeatedly refers to the IGN Website through the FAC (*see, e.g.*, *id.* ¶¶ 2, 9–10, 17, 60–63, 65–68). Thus, the Court can take notice of the IGN Website's content "for the limited purpose of acknowledging its existence and that its content is publicly available." *Kuzenski v. Uproxx LLC*, No. 2:23-CV-00945, 2023 WL 8251590, at *1 n.1 (C.D. Cal. Nov. 27, 2023).

[3] Plaintiff does not allege when IGN supposedly integrated Piano on the IGN Website. Plaintiff alleges only that he created a free account on the IGN Website in 2014, watched numerous videos, and "most recently viewed a video on the [IGN] Website in or around September 2023." FAC ¶ 63.

features of Piano. *Id.* ¶¶ 42–57.

Plaintiff makes the conclusory allegation that IGN uses "each and every one of the aforementioned features of Piano" but does not allege any facts to support this claim. *Id.* ¶ 57.

### C. Plaintiff's Free IGN Website Account

Plaintiff alleges that, in 2014, he "created a free IGN account on the [IGN] Website," and that "[s]ince that time, Plaintiff [] has watched numerous pre-recorded videos on the [IGN] Website while signed into his account." FAC ¶ 63. Plaintiff admits that "his account was free of charge" and claims that he "provide[d] [IGN] with his e-mail address as part of the sign-up process." *Id.* ¶ 64. Plaintiff alleges that he "most recently viewed a video on the [IGN] Website in or around September 2023." *Id.* ¶ 63. Plaintiff does not allege that creating an account on the IGN Website was a precondition to accessing videos on the IGN Website, or that he was required to provide any information to IGN in order to view or access videos on the IGN Website. Plaintiff does not allege that he paid or was required to pay any money to view videos publicly available on the IGN Website.

Plaintiff claims that "each time" he "viewed a pre-recorded video on the [IGN] Website, [IGN] disclosed [his] PII to Piano." FAC ¶ 67. Plaintiff alleges that IGN shared his: "(i) e-mail address, (ii) user ID, and (iii) the title and URL of the video Plaintiff [] watched, including the fact that Plaintiff [] actually viewed the video." *Id.* Plaintiff further claims that "Piano compiled" his "PII and activity on the [IGN] Website (including video-viewing information), which [IGN] used and continues to use for marketing, advertising, and analytics purposes." *Id.* ¶ 68. Plaintiff does not identify a single video that he requested or viewed on the IGN Website during the relevant period or at any time.

## II. LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6),

Plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff's "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). This requires Plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). A dismissal is warranted where the non-conclusory facts alleged do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharms., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (citation, internal quotation marks, and alterations omitted).

## III. ARGUMENT

### A. This Action Must Be Dismissed Because Plaintiff Has Not Plausibly Alleged a Violation of the VPPA

Plaintiff's FAC must be dismissed because he has not plausibly alleged a claim under the VPPA. The VPPA prohibits knowing disclosure of PII concerning any "consumer," defined as a "*renter*, *purchaser*, or *subscriber* of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1) (emphasis added). The VPPA defines PII as "information which identifies a person as having requested or obtained *specific* video materials or services from a video tape service provider." *Id.* § 2710(a)(3) (emphasis added). A video tape service provider is permitted to disclose PII "to any person if the disclosure is incident to the ordinary course of business of the video tape service provider." 18 U.S.C. § 2710(b)(2)(E).

To state a claim under the VPPA, a plaintiff must allege that (1) a defendant is a "video tape service provider," (2) the defendant disclosed "personally identifiable information concerning any consumer" to another person, (3) the disclosure was made knowingly, and (4) the disclosure

was not authorized by another part of the statute. *See generally* 18 U.S.C. § 2710(b)(2)(E); *see also Belozerov v. Gannett Co.*, 646 F. Supp. 3d 310, 313 (D. Mass. 2022). Here, Plaintiff fails to plead that: (1) he is a "consumer"; (2) IGN disclosed his PII; and (3) any purported disclosures were not incident to the ordinary course of business. For all of these reasons, Plaintiff's action should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

### 1. Plaintiff Does Not—And Cannot—Allege He is a "Consumer" of IGN's Video Content

The VPPA applies only to a "consumer" of video services, defined as a "renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1). To qualify as a consumer under the VPPA, a person must rent, purchase, or subscribe "to audio visual materials." *Gardener v. MeTV*, 681 F. Supp. 3d 864, 869 (N.D. Ill. 2023) (citations omitted).

The VPPA does not define "subscriber,"[4] but courts have routinely held that casual consumption of web content is not enough. Courts therefore dismiss claims where a plaintiff alleges only that he "viewed publicly available, free videos on a website." *Carroll v. Chick-fil-A, Inc.*, No. 23-CV-00314, 2024 WL 1091193, at *2 (N.D. Cal. Feb. 13, 2024). To qualify as a subscriber under the VPPA, someone must instead provide something of value, *i.e.*, money or personal information, in exchange for the benefit of access to audio visual content. *See Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 489 (1st Cir. 2016) (plaintiff was a subscriber because he provided personal information in return for "seamless access" to defendant's video content). Such an exchange establishes "a relationship" between the consumer and videotape service provider "that is materially different" than the casual consumption of video content from web browsing. *See id.* In other words, the subscriber must "manifest[] his

---

[4] Plaintiff does not allege he rented or purchased anything from IGN, and accordingly he would not be a "renter" or "purchaser" under the VPPA.

relationship with and commitment to [the provider] in [a] meaningful way." *Perry v. Cable News Network, Inc.*, 854 F.3d 1336, 1343 (11th Cir. 2017) ("Perry's choice to watch CNN live on the CNN app (after logging in) rather than on his television does not somehow convert him into a subscriber of CNN.").

Even where a user signs up for a website, Courts agree that simply "subscribing" to a website for any purpose, without further allegations that the subscription was exclusively connected to access to video content, does not come within the VPPA's ambit. *See, e.g.*; *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1256–57 (11th Cir. 2015) (plaintiff not a subscriber because he "did not make any commitment or establish any relationship that would allow him to have access to exclusive or restricted content"); *accord Gardener*, 681 F. Supp. 3d at 869 (supporting proposition); *Hunthausen v. Spine Media LLC*, No. 3:22-cv-1970, 2023 WL 4307163, at *3 (S.D. Cal. June 21, 2023) (same); *Kuzenski v. Uproxx LLC*, No. 2:23-CV-00945, 2023 WL 8251590, at *5 (C.D. Cal. Nov. 27, 2023) (same); *Carroll*, 2024 WL 1091193, at *2 (same); *Pileggi v. Wash. Newspaper Publ'g Co.*, No. 23-345, 2024 WL 324121, at *10 (D.D.C. Jan. 29, 2024) (same); *Brown v. Learfield Commc'ns., LLC*, 713 F. Supp. 3d 355, 365 (W.D. Tex. Jan. 29, 2024) (same).

Plaintiff's allegation that he signed up for a free IGN account in 2014 does not make him a "subscriber" under the VPPA, for at least two reasons: (1) Plaintiff has not and cannot allege any commitment to IGN; and (2) Plaintiff fails to allege any nexus between his IGN account and the alleged video-viewing, nor does the fact that Plaintiff alleges he had to have an account transform otherwise inactionable web browsing into a VPPA claim. *See Edwards v. Learfield Commc'ns, LLC*, 697 F. Supp. 3d 1297, 1306 (N.D. Fla. 2023) (dismissing VPPA claim where plaintiff did not allege that signing up granted "any real benefit in exchange," or "[g]rant[ed] access to any exclusive or restricted content, much less any exclusive video content").

***No commitment or relationship.*** Plaintiff still has not alleged, and cannot allege, that he made some commitment to IGN *in exchange for* access to its video content. Plaintiff admits that "[u]sers have the *option* to create a Website account" (*see* FAC ¶ 13 (emphasis added)), but never alleges (because he cannot) that an account is necessary to access videos on the IGN Website. Indeed, as Plaintiff still alleges, *any* "[u]ser[] can access the [IGN] Website to view videos such as game previews, movie trailers, and television show clips," and can do so for free. *Id.* ¶ 10. Plaintiff's alleged "commitment" to IGN, in volunteering his "personal identifiable information" (*see id.* at ¶¶ 13, 17, 64), is nothing more than sham consideration that fails to establish a relationship between Plaintiff and IGN. Plaintiff had the same access to IGN video content—with or without an account. Plaintiff, therefore, has not adequately pled any real commitment to IGN.

The lack of real exchange for value between Plaintiff and IGN distinguishes this case from *Yershov* and its progeny. In *Yershov*, unlike here, the plaintiff *had to provide* "consideration in the form of [his] information" to use a mobile application, which in turn, provided "seamless access to an electronic version of *USA Today*." 820 F.3d at 489; *see also Saunders v. Hearst Tel., Inc.*, 711 F. Supp. 3d 24, 30 (D. Mass. 2024) ("[p]laintiffs provided adequate consideration to use Hearst's apps to obtain subscriber status under the VPPA"). Likewise, the Second Circuit, in *Salazar v. National Basketball Association*, cited *Yershov* for the proposition that one who provides "personal information *in exchange* for access to the online newsletter" qualifies as a subscriber. 118 F.4th 533, 552 (2d Cir. 2024) (emphasis added). In *Yershov*, the exchange of personal information for enhanced access "established a relationship with [the defendant] that is materially different from what would have been the case had *USA Today* simply remained one of millions of sites on the web that Yershov might have accessed through *a web browser*." 820 F.3d at 489 (emphasis added); *see also Rancourt v. Meredith Corp.*, No. 22-CV-10696-, 2024 WL

381344, at *13 (D. Mass. Feb. 1, 2024) (Plaintiff's "[d]ecision to download the App, *as opposed to using an internet browser* to access Allrecipes content, evidences an intent to have an ongoing relationship or association with the App" (emphasis added)). The *Yershov* court was careful to cabin its decision to "the transaction described in the complaint" before it—"whereby [plaintiff] us[ing] the mobile device application that [defendant] provided to him … in return for access to … video content" qualified as "subscribing" under the VPPA. 820 F.3d at 489.

Here, Plaintiff does not allege he was obligated to create an account in consideration for access to IGN's video content; rather, he alleges that IGN's website was merely "one of millions of sites on the web that [Plaintiff] might have accessed through a web browser." *Id.* That Plaintiff decided to set up an account with the IGN Website in 2014 does not mean he was required to, or that it established a relationship with IGN that was different from any other casual website visitor. *See Perry*, 854 F.3d at 1343 (plaintiff did not establish relationship with app provider where he could access same content on his television); *Gardener*, 681 F. Supp. 3d at 869 (dismissing VPPA claim because plaintiff was "[f]ree to watch or not watch [MeTV's] videos without any type of obligation, no different than any of the other 9.9 million monthly visitors to the site" (alteration in original)).

***No nexus to audio-visual content.*** Even if Plaintiff's account established some relationship with IGN, Plaintiff alleges nothing connecting that relationship to his access to video content. Plaintiff adds allegations in the FAC (based on an article from 2001 (FAC ¶ 17 n.9[5]) that he "received numerous benefits" by signing up for an account, but fails to explain how "entry into contests," "free game and music magazines," "IGN.com messages boards," "IGN.com chat," a "[p]ersonalized My.IGN state page," "newsletters," or an "IGN.com e-mail address" equates to

[5] The full webpage is attached to the Declaration of Sean Sullivan ("Sullivan Decl."). Sullivan Decl., Ex. A. The Court may judicially notice this document because it is cited and referenced in the FAC. *See supra* footnote 2.

greater access to video content. FAC ¶¶ 17, 64 (alterations omitted). While Plaintiff may have created an IGN account for some of these benefits, the benefits were neither connected to the provision of audio-visual content nor did they "allow [plaintiff] to have access to exclusive or restrictive content." *Ellis*, 803 F.3d at 1257.

Plaintiff will likely point to the recent out-of-circuit decision in *Salazar* for the proposition that Plaintiff need not subscribe to audio-visual content specifically. *See* 118 F.4th at 548–49. However, neither the First Circuit, nor any other circuit, has interpreted the VPPA so broadly as the Second Circuit did to cover subscription to *any* "good or services" untethered to the provision of audio-visual content. This Court should instead hold as many other district courts have: absent allegations that Plaintiff subscribed specifically to audio-visual content—the very subject matter of the VPPA—his VPPA claim fails. *See, e.g.*, *Gardener*, 681 F. Supp. 3d at 869 (rejecting allegations that opening "an account separate and apart from viewing video content on MeTV's website is sufficient to render [plaintiffs] 'subscribers' under the [VPPA]"); *Hunthausen*, 2023 WL 4307163, at *3 ("In the [VPPA]'s full context, a reasonable reader would understand the definition of 'consumer' to apply to a renter, purchaser, or subscriber of audio-visual goods or services, and not goods or services writ large."); *Kuzenski*, 2023 WL 8251590, at *5 (Plaintiff failed to "allege that becoming a subscriber is connected in any way to Defendant's video content"); *Carroll*, 2024 WL 1091193, at *2 (plaintiffs "do not allege any nexus between the app and the videos, nor do they allege that they exchanged anything with Chick-fil-A (e.g.[,] information or money) in relation to the video content"); *Pileggi*, 2024 WL 324121, at *10 ("nowhere does [plaintiff] allege that this subscription had any connection to the audio-visual content she accessed"); *Brown*, 713 F. Supp. 3d at 364 ("VPPA only applies to consumers (including subscribers) of audio video services").

Because Plaintiff is not a "consumer" under the VPPA, he has not stated—and cannot state—a viable cause of action. Plaintiff's VPPA claim should be dismissed for that reason alone.

### 2. IGN's Alleged Disclosures Were Incident to the Ordinary Course of Business

Even assuming Plaintiff has sufficiently alleged a disclosure covered under the VPPA—and he has not—any such disclosure is not actionable because, as alleged, it would have been made "incident to the ordinary course of business." 18 U.S.C. § 2710(b)(2)(E); *see also Sterk v. Redbox Auto. Retail, LLC* (*Sterk II*), 770 F.3d 618, 626 (7th Cir. 2014) ("[T]he permissibility of disclosure under the VPPA turns on the underlying purpose for which [the defendant] provides the information to a third party.")

The VPPA defines "ordinary course of business" to include "order fulfillment" and "request processing." 18 U.S.C. § 2710(a)(2). Such terms encompass disclosures made for third-party marketing and advertising. *See Sterk v. Redbox Auto. Retail, LLC* (*Sterk I*), No. 11-C1729, 2013 WL 4451223, at *5 (N.D. Ill. Aug. 16, 2013) (noting that "'ordinary course of business' . . . encompass[es] . . . marketing"), *aff'd*, 770 F.3d 618 (7th Cir. 2014); *see also Rodriguez v. Sony Comp. Enter. Am., LLC*, 801 F.3d 1045, 1054 (9th Cir. 2015) ("[N]o business is an island and . . . video tape services providers, like many other businesses, 'may use third parties in their business operations . . . .'") (quoting *Sterk II*, 770 F.3d at 624).

Plaintiff's allegations regarding IGN's purported use of Piano qualify for this exception to the VPPA. According to Plaintiff, Piano "empowers its customers like [IGN] to create customized digital experiences and build commercial relationships with [their] users." FAC ¶ 41 (internal quotations omitted). Plaintiff alleges in the FAC that Piano provides "companies like [IGN] solutions to discover [their] audience and build a better experience, as well as strategic services to know [their] audience" and offers "tool[s] [to] deliver[] the numbers [IGN] needs to improve its

marketing, analytics, and advertising capabilities." *Id.* ¶¶ 25, 44 (internal quotation marks and alterations omitted). Essentially, the crux of Plaintiff's allegations is that Piano allows "[companies like IGN] to use [a] . . . computer service[], [or] similar compan[y] for marketing to [its] customers," which falls under VPPA's "ordinary course of business" safe harbor. *Sterk II*, 770 F.3d at 624 (quoting S. Rep. No. 100–599 at 14).

Plaintiff now quotes in the FAC partial statements from various irrelevant Piano and other third-party webpages[6] to suggest that IGN discloses data to Piano for purposes that fall outside of the "ordinary course of business" exception. *See* FAC ¶¶ 41–55. Plaintiff's vague and conclusory allegations that Piano provides certain services to "companies like Defendant" (*see id.* ¶¶ 47–50, 55–56) and that IGN "uses each and every one of the aforementioned features of Piano" (*id.* ¶ 57) are not supported by specific facts showing that IGN actually integrates the Piano features alleged. *See Doe I v. Google LLC*, Case No. 23-cv-024310, 2024 WL 3490744, at *2 (N.D. Cal. July 22, 2024) (dismissing complaint alleging unlawful disclosure of private health information where plaintiffs alleged insufficient facts explaining how software was integrated on the websites at issue). In any event, Plaintiff's description of Piano's webpages (and the webpages themselves)[7] (*see* FAC ¶¶ 41–52; *see also* Sullivan Decl. Exs. B–I[8]) only confirm that Piano provides ordinary marketing services that fall directly under the "ordinary course of business" exception to the VPPA. *See, e.g.*, *Rancourt*, 2024 WL 381344, at *17 ("If the disclosure of PII is in furtherance of

---

[6] Plaintiff cites to a third-party Amazon webpage and a YouTube video from a third party, Mediavine, to describe how Piano's features work. *See* FAC ¶¶ 53–54 nn.42–44.

[7] There are several flaws with Plaintiff's citations in the FAC: (1) Plaintiff cites https://piano.io/de in paragraph 41, but the link provided in the citation does not open a corresponding webpage; (2) Plaintiff cites https://piano.io/media/Piano_Press-release.pdf in paragraph 42, but the link provided opens to Piano's homepage, not the alleged article cited; (3) Plaintiff cites to https://piano.io/product/dmp/ in paragraph 45, but the citation links to https://www.piano.io/product/audience, and the quote in paragraph 45 appears nowhere on the linked webpage; (4) Plaintiff cites in paragraph 46, https://piano.io/media/Piano_Press_release.pdf, but the link provided does not open a corresponding webpage; and (5) some of Plaintiff's alleged "quotations" of Piano's website completely lack a corresponding citation, *see* FAC ¶ 52 (stating Piano "DMP automatically exports segments to various platforms").

[8] The Court may judicially notice these documents because the FAC cites and references them. *See* fn 2, *supra*.

business management and operations that are intra-corporate or inner facing, designed to ensure the smooth operation of business … it falls under the [VPPA] exception.”). Thus, even Plaintiff's latest iteration of the complaint shows the VPPA's safe harbor applies here.

### 3. Plaintiff Does Not Allege IGN Knowingly Discloses His PII to Piano

The VPPA imposes liability only on a video tape service provider “who knowingly discloses, to any person[,]” a consumer's PII. 18 U.S.C. § 2710(b)(1). That requires a plaintiff to allege that his own PII was actually disclosed. The VPPA defines PII as “information which identifies a person as having requested or obtained *specific* video materials or services from a video tape service provider.” *Id*. § 2710(a)(3) (emphasis added). Here, Plaintiff fails to allege: (1) IGN disclosed information that identifies him as the video-viewer; (2) IGN disclosed data that shows the “specific video materials” requested or obtained; and (3) even if IGN collected and disclosed these two pieces of information, whether IGN linked the two, as the VPPA requires.

*First*, Plaintiff does not point to any allegedly disclosed information that “identifies” him as the video-viewer. Plaintiff assumes that his unspecified email address (FAC ¶¶ 63, 67) constitutes PII, but “email addresses [do not] categorically identify an individual” and “they often [do identify an individual] only because of their content, not their inherent nature as email addresses.” *Dancel v. Groupon, Inc.*, 949 F.3d 999, 1008 (7th Cir. 2019). Plaintiff's allegations that IGN discloses “user ID” or “uid” fare no better. FAC ¶¶ 35, 67. Several courts have held that static digital identifiers, *i.e.*, “a unique string of letters, numbers, and hyphens” (*id.* ¶ 35), are not PII under the VPPA because, at most, such data identifies a computer or web browser, rather than a particular person. *See In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 282–83 (3d Cir. 2016) (IP addresses, “browser fingerprint,” and “unique device identifier” not PII under VPPA); *see also Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 986 (9th Cir. 2017) (television device serial

number not PII because "that information *cannot* identify an individual"). Plaintiff fails to allege IGN disclosed to Piano information that identifies him as the video-viewer.

*Second*, even if Plaintiff's purported email and Piano user ID could identify him, Plaintiff fails to allege that such data identifies him "as having requested or obtained *specific* video materials." Plaintiff's allegations that "the title and URL of the video Plaintiff [] watched, including the fact that Plaintiff [] actually viewed the video" are too conclusory to pass Rule 8 muster. *See* FAC ¶¶ 63, 67. Plaintiff points to a URL that allegedly discloses "the full title of a video that a user watches," but the URL contains only the title of the webpage that displays both a video and an article. *See id.* ¶¶ 36, 38 (depicting a screen capture cutting off the portion of the webpage also containing an article); *see also* Sullivan Decl., Ex. G[9]. A URL containing webpage titles does not identify "specific video materials" because the URL "leaves off essential information for a VPPA claim," such as, "whether the website visitor requested or obtained any videos at all, or instead merely read an article on the webpage." *Martin v. Meredith Corp.*, 657 F. Supp. 3d 277, 284–85 (S.D.N.Y. 2023). Plaintiff points to a "field called 'content_type'" from his counsel's so-called "dynamic analysis" that is "filled [] as 'video.other,'" purportedly showingthat IGN discloses "that a user actually watched the video as opposed to simply reading an article." FAC ¶ 39. However, plaintiff does not allege any facts to support the allegation that the "video.other" marking actually identifies whether a video is watched, as opposed to simply indicating that a video that can be played appears on the webpage. Thus, Plaintiff fails to adequately allege that IGN disclosed information that identifies him as "having requested or obtained *specific* video materials."

*Third*, Plaintiff does not allege that IGN has linked any information that identifies him as

[9] The Court may judicially notice this document because it is cited and referenced in the FAC. *See* footnote 2, *supra*.

an individual to his viewing behavior. Plaintiff provides a screenshot of de-encrypted text purportedly showing that IGN "discloses users' e-mail addresses in an encrypted format" (FAC ¶¶ 31–32), but Plaintiff fails to: (1) identify the source of the encrypted text; and (2) show that the so-called encrypted email address was collected and disclosed along with the specific video material viewed. No facts connect the dots between the alleged collection of the email (*id.* ¶¶ 30–35) and the alleged video-viewing (*id.* ¶¶ 36–40). While Plaintiff relies on various Piano webpages to explain how Piano *may* connect these disparate pieces of data (FAC ¶¶ 41-55), *Piano's potential capabilities* say nothing about *IGN's knowing disclosure* of PII that connects Plaintiff's identity to his video-viewing. Even if IGN collected email addresses and video-viewing behavior (a point it does not concede), "the linkage of information to identity [is] too uncertain, [] too dependent on too much yet-to-be done, or unforeseeable detective work." *Yershov*, 820 F.3d at 486.

*Doe I* highlights the defects in such shot-gun pleading. There, the complaint made "repeated reference to an 'investigation' performed by plaintiffs' counsel and their experts," "[b]ut the plaintiffs provide[d] no details about their investigation, nor d[id] they explain how they have determined that their private health information has been intercepted by Google." 2024 WL 3490744, at *2. The plaintiffs failed to allege sufficient facts about how health care providers configured Google Analytics on their websites, and thus, failed to plausibly allege the websites actually sent protected health care data to Google. *Id.* Soo too, here, Plaintiff's vague descriptions of his counsel's "dynamic analysis" fails to adequately allege: (1) the source of the encrypted data behind the "investigation"; (2) how IGN actually configured Piano's technology on its website; (3) whether IGN collected data that disclosed Plaintiff's video-viewing behavior (as opposed to the fact a webpage contains a video); and (4) whether IGN linked the purported email address collected to video-viewing behavior and then *knowingly* disclosed that combined data to Piano.

Because Plaintiff's failure to adequately allege that IGN knowingly disclosed his PII that identified not only him as a person, but also his video-viewing, his VPPA claim must be dismissed.

**B. The Action Must Be Dismissed for Lack of Subject Matter Jurisdiction Because Plaintiff Does Not Have Article III Standing**

Even if Plaintiff could assert a VPPA claim, Plaintiff's FAC claims a purely statutory—not a concrete—harm and cannot, as a matter of law, establish Article III standing.

Article III standing requires that a plaintiff "suffered an injury in fact that is concrete, particularized, and actual or imminent." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). In *TransUnion*, the Supreme Court "rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" 594 U.S. at 426 (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)). This is because "[a]n injury in law is *not* an injury in fact[]" and Congress cannot circumvent Article III by "enact[ing] an injury into existence, using its lawmaking power to transform something that is not remotely harmful into something that is." *Id.* at 426–27 (citation omitted; emphasis added). Succinctly put: "No concrete harm, no standing." *Id.* at 442.

Plaintiff fails to plead any factual allegations demonstrating that he suffered any concrete harm. Nowhere in Plaintiff's FAC does he allege that he suffered any injury—only, generally, that relief is "necessary to protect the interests of Plaintiff and the Class by requiring [IGN] to comply with VPPA's requirements for protecting a consumer's PII." FAC ¶ 94. But Article III does not allow private plaintiffs to commandeer the Executive Branch's power to enforce "compl[iance]" with statutory requirements absent a concrete injury.

The specific allegations in the FAC about how Piano utilizes the data allegedly provided to it by IGN are far removed from those recently found sufficient to allege a concrete injury by the

Second Circuit in *Salazar*. Citing to *TransUnion*, *Salazar* noted that, "[b]oth tangible and intangible harms can satisfy the concreteness requirement." 118 F.4th at 541 (internal citations omitted). It then noted that "[t]raditional tangible harms" like physical and monetary harms "readily qualify as concrete" and "[s]o do [v]arious intangible harms closely related to a traditionally recognized harm," specifically analogizing to the public disclosure of private facts common law claim. *Id.* (internal citations omitted). The *Salazar* Court concluded the plaintiff there had pled that he suffered an injury closely related to the public disclosure of private facts analog. *Id.* In doing so, the Court distinguished a line of cases relied upon by the NBA in support of its motion to dismiss that looked to liability for disclosures to mail vendors under the Fair Debt Collection Practices Act. *Id.* But a critical distinction made by the *Salazar* Court is not present in this case. In *Salazar*, the Court focused on the fact that the entity to which disclosures were made, Meta, used the disclosed data in a way very different from that of the mail vendors in the cases cited. Specifically, the plaintiff in *Salazar* specifically alleged that Meta used the data disclosed to it for its own commercial purposes, not the NBA's or the plaintiff's purposes—namely to serve targeted ads Meta selected. *Id.*

No such allegations exist in the FAC. Indeed, virtually all Piano's alleged uses of Plaintiff's information are for IGN's use. *See* FAC ¶¶ 45 ("by using Piano's suite of technological tools, including VX, <u>Defendant</u> is able to have '[e]verything [it] know[s] about a user immediately available for segmentation and targeting.'") (emphasis added); 48 ("allows <u>Defendant</u> to 'provide more tailored, personalized experiences based on the user interests and preferences' (*i.e.*, to conduct targeted marketing and advertising based on user information)") (emphasis added); 49 (discussing Piano ESP, automating process for <u>Defendant</u> to deliver "personalized and incredibly relevant recommendations, email campaigns, and newsletters…."); 50-51 (discussing use of Piano

DMP to combine data sources from Defendant's users for Defendant to use for marketing). These allegations paint Piano as more of a classic "'ministerial intermediary'" such as a mail vendor to which permissible "'limited disclosures to a single legitimate business'" are made. *See Salazar*, 118 F.4th at 543. The only allegations arguably implicating disclosure by Piano to any third party outside of Piano are contained in paragraphs 52–54, which discuss the *ability* for Piano share segmented information with certain third party platforms for advertising purposes.[10] But Plaintiff nowhere alleges, except in conclusory fashion, that IGN actually elects to utilize such functions, or that Piano utilizes this function for all data it ingests. In fact, the allegations in the FAC suggest that, to the contrary, these functions are elective at the option of the company using the platform only, e.g., "[t]he information Piano collects *can be* 'sync[ed] with [Defendant's] preferred ad server …'"; "[t]hat information can *be* shared…". FAC ¶ 52 (emphasis added). In other words, Plaintiff does not plausibly allege that IGN disclosed Plaintiff's data to any entity other than Piano, or that Piano did anything with that data, except to use it to provide IGN with tools to allow IGN to market and advertise to Plaintiff. Under these allegations, these types of disclosures are far from any analogous public disclosure of private facts cases.

Accordingly, Plaintiff's action should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).

## IV. CONCLUSION

For all the foregoing reasons, IGN respectfully requests that this Court dismiss Plaintiff's FAC with prejudice.

---

[10] Notably, Plaintiff includes a quote at the end of paragraph 52 of its FAC, purportedly discussing how Piano DMP "automatically exports segments to various platforms…" but does not include a citation for the quote, nor do the sources found in the other citations found in that paragraph or in the paragraphs surrounding paragraph 52 include that language. *See* Sullivan Decl., Ex. I. Further, Plaintiff quotes an Amazon webpage and a YouTube video from another third party to support these allegations. *See* FAC ¶¶ 53–54.

Dated: January 3, 2025

Respectfully submitted,

/s/ *Roy W. Bjorlin*
Roy W. Bjorlin (BBO #666319)
WILSON ELSER
260 Franklin Street, 14th Floor
Boston, MA 02110
Telephone: (617) 422-5300
roy.bjorlin@wilsonelser.com

/s/ *Sean M. Sullivan*
Sean M. Sullivan (SBN # 229104)
Katelyn A. Feliciano (SBN # 350385)
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California 90017-2566
Telephone: (213) 633-6800
seansullivan@dwt.com

*Attorneys for Defendant IGN Entertainment, Inc.*

## LOCAL RULE 7.1(A)(2) CERTIFICATION

I hereby certify that pursuant to Local Rule 7.1(a)(2), on January 2, 2025, I conferred with counsel for Plaintiff and have attempted in good faith to resolve or narrow the issues presented in this motion.

## CERTIFICATE OF SERVICE

I certify that, on January 3, 2025, this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

/s/ Roy *W. Bjorlin*
Roy W. Bjorlin