**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JOSUE JOSEPH, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>IGN ENTERTAINMENT, INC.,<br><br>Defendant. | Case No. 1:24-cv-11579-MJJ |

**DEFENDANT IGN ENTERTAINMENT, INC.'S REPLY IN SUPPORT OF RENEWED MOTION TO DISMISS PLAINTIFF JOSUE JOSEPH'S FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................ 1

II. LEGAL ARGUMENT ........................................................ 1

A. Plaintiff Has Not Plausibly Alleged a Violation of the VPPA ........................................................ 1

1. Plaintiff Does Not Allege He is a "Consumer" of IGN's Video Content ........................................................ 1

2. IGN's Alleged Disclosures Were Incident to the Ordinary Course of Business ........................................................ 5

3. Plaintiff Does Not Allege IGN Knowingly Discloses His PII to Piano ........................................................ 7

B. Plaintiff Does Not Have Article III Standing ........................................................ 10

III. CONCLUSION ........................................................ 10

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Adams v. America's Test Kitchen, L.P.*,
680 F. Supp. 3d 31 (D. Mass 2023) ....................5, 10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................7

*Beagle v. Amazon.com, Inc.*,
2024 WL 4028290 (W.D. Wash. Sept. 3, 2024) ....................7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 554 (2007) ....................7

*Belozerov v. Gannett Co., Inc.*,
646 F. Supp. 3d 310 (D. Mass. 2022) ....................5

*Brown v. Learfield Commc'ns, LLC*,
713 F. Supp. 3d 355 (W.D. Tex. 2024) ....................2

*Collins v. Toledo Blade*,
720 F. Supp. 3d 543 (N.D. Ohio 2024) ....................3

*Dancel v. Groupon, Inc.*,
949 F.3d 999 (7th Cir. 2019) ....................7, 8

*Doe I v. Google LLC*,
2024 WL 3490744 (N.D. Cal. July 22, 2024) ....................6, 7

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) ....................8

*Garcia v. Build.com, Inc.*,
2024 WL 1349035 (S.D. Cal. Mar. 29, 2024) ....................7

*Ghanaat v. Numerade Labs, Inc.*,
689 F. Supp. 3d 714 (N.D. Cal. 2023) ....................3

*Greshzon v. Meta Platforms, Inc.*,
2023 WL 5420234 (N.D. Cal. Aug. 22, 2023) ....................8

*Harris v. Pub. Broad. Serv.*,
662 F. Supp. 3d 1327 (N.D. Ga. 2023) ....................3

*Hernandez v. Container Store, Inc.*,
2024 WL 72657 (C.D. Cal. Jan. 3, 2024) ....................................................................4

*Hunthausen v. Spine Media, LLC*,
678 F. Supp. 3d 1228 (S.D. Cal. 2023)....................................................................5

*Jackson v. Fandom, Inc.*,
2023 WL 4670285 (N.D. Cal. July 20, 2023)...........................................................3

*Jefferson v. Healthline Media, Inc.*,
674 F. Supp. 3d 760 (N.D. Cal. 2023) .................................................................4, 5

*Louth v. NFL Enters. LLC*,
2022 WL 4130866 (D.R.I. Sept. 12, 2022)...............................................................5

*M.K. v. Google LLC*,
2023 WL 4937287 (N.D. Cal. Aug. 1, 2023) ............................................................6

*Markels v. AARP*,
689 F. Supp. 3d 722 (N.D. Cal. 2023) .......................................................................4

*Martin v. Meredith Corp.*,
657 F. Supp. 3d 277 ..............................................................................................8, 9

*Matta v. Zillow Grp., Inc.*,
2024 WL 5161955 (S.D. Cal. Dec. 18, 2024)......................................................3, 5

*Nayab v. Cap. One Bank (USA), N.A.*,
942 F.3d 480 (9th Cir. 2019) ..................................................................................5, 6

*Rancourt v. Meredith Corp.*,
2024 WL 381344 (D. Mass. Feb. 1, 2024) ............................................................3, 5

*Robinson v. Disney Online*,
152 F. Supp. 3d 176 (S.D.N.Y. 2015)........................................................................8

*Rodriguez v. Sony Comput. Ent. Am., LLC*,
801 F.3d 1045 (9th Cir. 2015) ..............................................................................6, 10

*Salazar v. Nat'l Basketball Ass'n*,
118 F.4th 533 (2024)...........................................................................................2, 5, 10

*Saunders v. Hearst Television, Inc.*,
711 F. Supp. 3d 24 (D. Mass. 2024) ...................................................................3, 5, 8

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)....................................................................................................10

*Sterk v. Redbox Automated Retail, LLC*,
770 F.3d 618 (7th Cir. 2014) ....................6, 10

*Tawam v. Feld Ent., Inc.*,
684 F. Supp. 3d 1056 (S.D. Cal. 2023)....................4

*United States v. Hastie*,
854 F.3d 1298 (11th Cir. 2017) ....................8

*Yershov v. Gannett Satellite Info. Network, Inc.*,
820 F.3d 482 (1st Cir. 2016).................... *passim*

**Federal Statutes**

18 U.S.C. § 2710 (Video Privacy Protection Act of 1988).................... *passim*

## I. INTRODUCTION

Plaintiffs' Opposition, Doc. No. 34 ("Opp."), confirms that Plaintiff's VPPA claim is another attempt to extract damages from websites that offer video content and use third party service providers to operate their website, as demonstrated by the at least 35 VPPA lawsuits (including 8 in this district) opposing counsel have pursued. In the present case, Plaintiff's claim hinges on a selective reading of webpages from a third-party (Piano) that are untethered to IGN's use of Piano's services and inadequate allegations regarding a study conducted by Plaintiff's counsel months after Plaintiff's last alleged interaction with IGN's website. Despite Plaintiff's attempt to dress up these unsupported allegations in the Opp., Plaintiff fails to state a claim because: (1) Plaintiff is not a "subscriber" as he was neither required to create an account to access IGN's freely available video content, nor did IGN offer any enhanced video-watching benefits in exchange; (2) Plaintiff has not alleged any facts supporting that IGN's alleged disclosures were unauthorized by the VPPA; (3) Plaintiff has not alleged that the purported data disclosed meets the VPPA's definition of PII; and (4) Plaintiff has not suffered a concrete injury.

## II. LEGAL ARGUMENT

### A. Plaintiff Has Not Plausibly Alleged a Violation of the VPPA

#### 1. Plaintiff Does Not Allege He is a "Consumer" of IGN's Video Content

Plaintiff's Opp. fails to articulate either: (1) a *mutual exchange* of commitment between himself and IGN that establishes a "subscriber" relationship; or (2) a nexus between any alleged relationship and IGN's provision of audio-visual content.

***First***, Plaintiff argues the "creation of an account formed 'an agreement to receive or be given access to electronic texts or services,'" Opp. 3 (quoting *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 487 (1st Cir. 2016)), except Plaintiff never alleges that IGN "agree[d]" to provide content in exchange for PII nor required Plaintiff to create an account to

access video content. The line following Plaintiff's quote in *Yershov* makes clear the "subscriber" relationship requires the *mutual exchange* of consideration:

> This is just what we have here: Gannett ***offered*** and Yershov ***accepted*** Gannett's proprietary mobile application as a tool for directly receiving ***access*** to Gannett's electronic text and videos ***without going through other distribution channels***, much like how a newspaper subscriber in 1988 could, if he wished, retrieve a copy of the paper in a box at the end of his driveway without having to go look for it at a store.

820 F.3d at 487 (emphasis added). In *Yershov*, PII was given in exchange for the "proprietary" mobile app that gave "direct[] … access" to video content, *i.e.*, an easier distribution channel like a newspaper subscriber to a delivery route. *See id.* at 487, 489. And in *Salazar v. Nat'l Basketball Ass'n*, the plaintiff "***[i]n return*** for receiving periodic NBA-related updates [through a newsletter], … ***exchanged***, at a minimum, [his PII]." 118 F.4th 533, 554 (2024) (emphasis added). That Plaintiff here may have "intended more than a one-shot visit" to IGN's website is not enough. *See* Opp. 3. Plaintiff fails to allege the other side of the equation: that his account was "a condition to accessing the [IGN's] videos, or that it enhanced or in any way affected [his] viewing experience." *Brown v. Learfield Commc'ns, LLC*, 713 F. Supp. 3d 355, 366 (W.D. Tex. 2024).

It is immaterial that Plaintiff created an account "to the very medium through which [IGN] provides its video services," *see* Opp. 3, 7, because, any other casual website visitor had access to the same content through the same medium, *see* FAC ¶¶ 9–10. To put it in terms of the First Circuit's 1988 analogy, Plaintiff did not create an account to receive IGN's audiovisual content "at the end of his driveway" (or through an app (*Yershov*) or his inbox (*Salazar*)), he went to the store (*i.e.*, IGN's website) like every other non-subscriber. *See Yershov*, 820 F.3d at 487. Plaintiff argues the app in *Yershov* provided the same content that could be accessed on *USA Today*'s website, Opp. 7, but misses the point of the "seamless access" the First Circuit emphasized the app provided, which "established a relationship with [defendant] that is materially different from what

would have been the case had *USA Today* simply remained one of the ***millions of sites on the web*** that Yershov might have accessed ***through a web browser***." *Id.* at 489 (emphasis added).

Plaintiff's cited cases support IGN's position because they either involved the exchange of PII for access via an easier distribution channel, or did not address whether plaintiffs accessed the same content through the same medium without exchanging PII. *See, e.g.*, *Matta v. Zillow Grp., Inc.*, 2024 WL 5161955, at *4 (S.D. Cal. Dec. 18, 2024) (acknowledging "'not everything that can conceivably be labeled a 'subscription' automatically triggers the protections of the VPPA,'" but exchange of PII for "install[ing] [d]efendant's mobile application" sufficient); *Rancourt v. Meredith Corp.*, 2024 WL 381344, at *13 (D. Mass. Feb. 1, 2024) (noting *Yershov* "considered the revenue model of the *USA Today* Mobile App in which users' data was payment required to use the app" and holding an app was sufficient); *Saunders v. Hearst Television, Inc.*, 711 F. Supp. 3d 24, 30 (D. Mass. 2024) (mobile app);[1] *Harris v. Pub. Broad. Serv.*, 662 F. Supp. 3d 1327, 1333 (N.D. Ga. 2023) (plaintiff had access to video content "*after* becoming a digital subscriber"); *Collins v. Toledo Blade*, 720 F. Supp. 3d 543, 551, 552 (N.D. Ohio 2024) (plaintiffs provided PII "and, *in exchange*, [d]efendants allowed access to *more* of [defendant's] online newspaper content" that was otherwise blocked by a paywall); *Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714, 721–22 (N.D. Cal. 2023) (does not address whether users accessed same content without an account); *Jackson v. Fandom, Inc.*, 2023 WL 4670285, at *4 (N.D. Cal. July 20, 2023) (same).

***Second*****,** Plaintiff ignores IGN's case law holding that the VPPA requires a nexus between a subscription and the provision of video content. *See* Motion to Dismiss, Doc No. 33 ("MTD") 9,

[1] Plaintiff's counsel parades their multitude of copy-and-paste VPPA lawsuits (35 to be exact) as somehow providing more credibility. *See* Opp. at 5 n. 4. But Plaintiff misunderstands IGN's point—PII was exchanged in *Yershov*, *Saunders*, and *Rancourt* for the enhanced access to content that the mobile app provided. Offering up PII is not enough; enhanced access to video content must be provided in exchange for that PII.

12 (citing cases); *see also Jefferson v. Healthline Media*, *Inc.*, 674 F. Supp. 3d 760, 764 (N.D. Cal. 2023); *Tawam v. Feld Ent., Inc.*, 684 F. Supp. 3d 1056, 1062 (S.D. Cal. 2023); *Markels v. AARP*, 689 F. Supp. 3d 722, 728 (N.D. Cal. 2023); *Hernandez v. Container Store, Inc.*, 2024 WL 72657, at *3 (C.D. Cal. Jan. 3, 2024). Plaintiff points to unspecified "exclusive, account-related benefits," Opp. 3, but does not tie those "benefits" to his ability to watch video content on IGN's website, which primarily provides "reviews … and news" through "articles," *see* FAC ¶¶ 2–3.

Plaintiff next tries to invent a nexus by speculating IGN provides free video content only by generating "advertising revenue" from account holders' PII. *See* Opp. 7. The FAC does not support the assumption that IGN "disclosed [PII] to Piano for marketing, advertising, and data analytics." *See id.* at 3. Plaintiff cannot impute to IGN Piano's statement about offering "the 'right incentives'" to create an account as part of larger scheme to use PII for revenue. *See id.* at 4. Piano and IGN are not the same entity, and Piano does not speak on IGN's behalf. Plaintiff then concocts that IGN "adopt[ed] an ad-supported model." *See id.* at 8. This was not alleged in the FAC, and IGN does not operate like "streaming service[s] (like Netflix)," *see id.*, which provide *only* video content and *only* though an account. Where is the "incentive" in creating an account, and thereby providing PII to fund IGN's purported "ad-supported model," if a user can access the same content without an account? The fact IGN offers the same video (and other) content through the same medium without an account undermines the entire PII-for-Free-Video-Content theory.

Plaintiff then resorts to arguing no nexus is required. Plaintiff asserts this conclusion "can be inferred from" *Yershov* because the app in that case offered both articles and video content, Opp. 5–6, but Plaintiff's argument is wrong. *Yershov* cabined its holding to "the transaction described in the complaint," *i.e.*, the connection between the exchange of PII for video content through a specialized medium. 820 F.3d at 489. Indeed, courts interpreting the term "consumer"

recognize that the corresponding phrase "of goods or services from a video tape service provider," 18 U.S.C. § 2710(a)(1), should not be read "literally or in isolation," but in accord with "the statute's full text." *Hunthausen v. Spine Media, LLC*, 678 F. Supp. 3d 1228, 1232 (S.D. Cal. 2023). The definition of "video tape service provider" "cabin[s]" the definition of "consumer" "with its focus on the rental, sale, or delivery of audio-visual materials." *Id.* at 1233; *see also Jefferson*, 674 F. Supp. 3d at 764 ("The VPPA limits its scope to subscribers of '"goods or services'" from the video tape service provider[, and thus,] a VPPA subscriber is not just someone who provides [PII] for some undisclosed purpose or benefit."). Thus, the Second Circuit's holding in *Salazar*[2] that "consumer" is not limited to "audio-visual materials," *see* Opp. 6, is out of step with the First Circuit and the consensus among lower courts, *see e.g.*, MTD 9, 12 (citing cases), which routinely require a nexus between a consumer's "subscription" and "audio-visual materials." Plaintiff's failure to allege such a nexus warrants dismissal of his claim.

### 2. IGN's Alleged Disclosures Were Incident to the Ordinary Course of Business

Plaintiff first argues he is "not required to plead around" the VPPA's ordinary course of business exception. Opp. 8. But Plaintiff cannot avoid his obligation to *plausibly* plead IGN made an alleged disclosure that was unauthorized by the VPPA. Plaintiff relies on *Nayab v. Cap. One*

[2] Plaintiff disingenuously argues IGN cites "decisions uniformly predat[ing] *Salazar*" and "zero courts have rejected [*Salazar*'s] holding," Opp.6, but that is because *Salazar* was issued three months ago, all but one of the five courts addressing it are within the Second Circuit, and the one non-Second Circuit decision cited *Salazar* for the general proposition "someone doesn't have to spend money to be a VPPA 'subscriber.'" *See Mata*, 2024 WL 5161955, at *3 (quoting *Salazar*, 118 F.4th at 551). Similarly, IGN "cites no in-circuit cases," *see* Opp. 6, because of the five First Circuit post-*Yershov* VPPA cases, three did not address the "consumer" element and the other two followed *Yershov*'s limited holding that a user is a subscriber when they provided PII for enhanced access to video content through an app. *See Rancourt*, 2024 WL 381344, at *13 (discussing use of mobile app); *Saunders*, 711 F. Supp. 3d at 30 (same); *Belozerov v. Gannett Co., Inc.*, 646 F. Supp. 3d 310 (D. Mass. 2022) (not addressing consumer element); *Adams v. America's Test Kitchen, L.P.*, 680 F. Supp. 3d 31 (D. Mass 2023) (same); *Louth v. NFL Enters. LLC*, 2022 WL 4130866, at *1 (D.R.I. Sept. 12, 2022) (same).

*Bank (USA), N.A.*, but even there, the Ninth Circuit analyzed whether the plaintiff "plead[] facts sufficient to give rise to a reasonable inference that Capital One obtained her credit report for an unauthorized purpose" under the Fair Credit Reporting Act. *See* 942 F.3d 480, 496 (9th Cir. 2019). Likewise, *M.K. v. Google LLC*, which Plaintiff also cites, Opp. 8, relies on the Ninth Circuit's decision in *Rodriguez v. Sony Comput. Ent. Am., LLC*, 801 F.3d 1045 (9th Cir. 2015). *See* 2023 WL 4937287, at *6 (N.D. Cal. Aug. 1, 2023). *Rodriguez* affirmed the dismissal of a VPPA claim "pursuant to the Act's exemption for disclosures made 'incident to the ordinary course of business'" because the plaintiff failed to plausibly allege anything more than "intra-corporate disclosures." 801 F.3d at 1054 (quoting 18 U.S.C. § 2710(b)(2)(E)).

Here, Plaintiff similarly fails to allege facts suggesting that IGN's alleged disclosures were *not* "intra-corporate disclosures" "intended to support [IGN]'s services." *See id.* (citing *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 627 (7th Cir. 2014)). Plaintiff does not identify the specific Piano feature IGN integrates on its website and for what purpose. All he alleges is that IGN integrates *"at least one* application programing interface ('API')" which may or may not be "part of a Piano Software Development Kit ('SDK') *or* as a standalone API." FAC ¶ 19 (emphasis added). Plaintiff goes on to allege "example[s]" of *other* Piano tools, but fails to allege whether the API allegedly identified on IGN's website is *in fact* used as part of any of these features, never mind whether IGN uses those features for advertising and marketing, as opposed to website functionality (*i.e.* "ordinary course of business") purposes. FAC ¶¶ 44–57.

Plaintiff's second argument that IGN "implicitly admits Piano 'provides [] marketing services'" misses the mark. *See* Doc No. 34 at 9. Plaintiff's allegations about *Piano's* capabilities, FAC ¶¶ 40–57, do not plausibly allege whether *IGN* avails itself of Piano's products for marketing or advertising. *See Doe I v. Google LLC*, 2024 WL 3490744, at *3 (N.D. Cal. July 22, 2024)

(generic software product descriptions did not plausibly allege website used software for targeted advertising). Plaintiff's attempt to distinguish *Doe I* is unavailing because here, as in *Doe I*:

> [T]he complaint adequately alleges that [websites like IGN] *could* configure and use [Piano's] products in a way that would cause [user's identity and viewing information] to be transmitted to [Piano]. But instead of offering factual allegations about how [IGN is] *actually* using [Piano's] products, [Plaintiff] allege[s] hypothetical examples—based on the generic product descriptions—of how various product features could be used in ways that could result in privacy violations.

*Id*. Also as in *Doe I*, Plaintiff does not allege he "ever saw advertisements … after interacting with [IGN's] website" nor that he "ever saw any targeted advertisements related to [IGN's content] at all." *Id*. "The plausibility standard is not akin to a 'probability standard,'" and here, Plaintiff only "pleads facts that are 'merely consistent with' a defendant's liability" and "stops short of a line between possibility and plausibility of 'entitlement to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 557 (2007)). Courts have dismissed VPPA and similar claims, where, as here, plaintiffs alleged only the *possibility* that data was disclosed for unauthorized purposes. *Beagle v. Amazon.com, Inc.*, 2024 WL 4028290, at *3 (W.D. Wash. Sept. 3, 2024) (dismissing a VPPA claim where plaintiff relied on statements that Amazon "**may** provide information about your viewing behavior to third parties"); *see also Garcia v. Build.com, Inc.*, 2024 WL 1349035, at *4 (S.D. Cal. Mar. 29, 2024) (dismissing claim based on interception of data where claim relied on allegations about Meta's technologies' ability to generate "ad campaigns" but failed to allege website "itself ha[d] such an integration with Meta").

### 3. Plaintiff Does Not Allege IGN Knowingly Discloses His PII to Piano

*First*, Plaintiff argues that because e-mail addresses "often" identify an individual that is sufficient to constitute PII. Opp. 13 (citing *Dancel v. Groupon, Inc.*, 949 F.3d 999 (7th Cir. 2019)). But as *Dancel* explained, emails "often [identify a person] only because of their content;" by containing "the account holder's name, affiliated organization, or other identifying information."

949 F. 3d at 1008. Plaintiff does not allege his email identifies him by name or some other moniker that is "reasonably and foreseeably likely to reveal" him as "the person who obtained the video." *See Yerhsov*, 820 F.3d at 486. Plaintiff further does not address IGN's case law holding static digital identifiers, such as "unique … ID[s]", FAC ¶ 35, are not PII. *See* MTD 15–16. Neither Plaintiff's unspecified email nor the "unique … ID" plausibly allege such data identifies him.

Plaintiff does not cite any VPPA cases holding that an email address *by itself* categorically constitutes PII. *See* Opp. 13–14. Plaintiff's reliance on IGN's privacy policy, *see* Opp. 13, and statements by purported "industry leaders" and "trade groups," *see id.* (citing FAC ¶ 29), does not change that fact. In *Eichenberger v. ESPN, Inc.*, the Ninth Circuit "d[id] not opine on the merits of" whether an email address is PII under the VPPA. 876 F.3d 979, 986 (9th Cir. 2017). *Saunders* primarily found the disclosure of GPS coordinates identified a specific person, and that user IDs and "email addresses," *taken together*, also "strengthen[ed]" the plaintiff's claims. 711 F. Supp. 3d at 31. Both *United States v. Hastie*, 854 F.3d 1298, 1303 (11th Cir. 2017) and *Greshzon v. Meta Platforms, Inc.*, 2023 WL 5420234, at *6 (N.D. Cal. Aug. 22, 2023) involved the definition of PII under the Driver's Privacy Protection Act, which *Dancel* differentiated from the Illinois Right of Publicity Act ("IRPA") because PII under IRPA—like the VPPA—must identify a specific individual. *Compare Dancel*, 949 F.3d at 1009 *with Robinson v. Disney Online*, 152 F. Supp. 3d 176, 179 (S.D.N.Y. 2015) ( "a video tape service provider must, at the very least, identify a *particular* person—not just any anonymous individual").

*Second*, Plaintiff fails to point to any alleged data identifying *him* as having "requested or obtained *specific* video materials." *See* Opp. 14–15 (emphasis added). Plaintiff argues that video titles are disclosed when the FAC points only to the *title of the webpage*, which the allegedly disclosed URLs also contain, *see* FAC ¶ 38. Plaintiff's attempt to distinguish *Martin v. Meredith*

*Corp.*, is futile because the complaint there, as here, made "a handful of generalized allegations saying that People.com shares videos of titles … [but] the specific allegations reveal that People.com shares only webpage titles." 657 F. Supp. 3d 277, 285 (S.D.N.Y. Feb. 17, 2023). As *Martin* acknowledged, "a court need not accept as true general allegations … that … contradict[] more specific allegations." *Id.* Further, IGN did not argue Plaintiff must allege that a "user actually watched the video," *see* Opp. 14, but that webpage titles alone fail to identify that a video was "requested or obtained". *Martin*, 657 F. Supp. 3d at 285. IGN then pointed out that the so-called "video.other" marking, which Plaintiff presumes shows that IGN discloses the fact a video is watched, FAC ¶ 39, is not supported by *fact*, *see* MTD 16. Plaintiff contends this is "rank speculation" on IGN's part, but fails to explain how he derived what "video.other" means, or provide plausible factual allegations that it equates to a "video was actually watched," FAC ¶ 39.

*Third*, Plaintiff's conclusory allegation that data is "disclosed … in a 'singular network transmission,'" Opp. 16 (quoting FAC ¶ 59), is not supported by facts warranting the inference that *his* email address is linked to his alleged viewing behavior. Plaintiff's summary of the "contours of the dynamic analysis," Opp. 17, fails to address that the analysis *does not* show that the "encrypted email address was collected and disclosed *along with* the specific video material viewed," *see* MTD 17 (emphasis added). Plaintiff also contends that the source of the "encrypted data" is IGN's website, Opp. 17 n. 9, but the FAC does not identify what data the analysis used to produce the "encrypted data." In any event, Plaintiff fails to explain how an analysis conducted months *after* his last interaction with IGN's website shows IGN disclosed his email and viewing information simultaneously to Piano *at the time of his interaction*. *See* FAC ¶ 18 (study conducted in early 2024); *id.* at ¶ 49 (Plaintiff's last interaction was "in or around September 2023").[3]

[3] Whether "courts in this Circuit have sustained VPPA claims based on a pre-suit analysis conducted by undersigned counsel," Opp. 16, is irrelevant because it is unclear whether those

**B. Plaintiff Does Not Have Article III Standing**

Plaintiff fails to point to anything other than a statutory injury, which is insufficient to confer standing. Relying on *Salazar*, Plaintiff hinges standing on the fact that IGN disclosed information to Piano alone, *see* Opp. 19, but *Salazar*[4] did not hold that was sufficient. *Salazar* found the disclosure there analogous to the "public disclosure of private facts" because "Salazar [*did not*] allege that his personal viewing information was disclosed to an intermediary so that it could be bounced back to him," but that Meta used that data for "its own commercial purposes, not the NBA's or the user's purposes." 118 F.4th at 543. Plaintiff meanwhile points to only one conclusory allegation that Piano divulges IGN users' data to other third parties, *see* Opp. 19.

Plaintiff argues the VPPA does not permit disclosures for IGN's own benefit, and to interpret the VPPA that way would "vitiate the statute's protections." Opp. 19–20. But the ordinary course of business exception *does* permit disclosure to support a website's services to its customers. *See Rodriguez*, 801 F.3d at 1054 (quoting *Sterk*, 770 F.3d at 624). In any event, the "statute's protections" are only relevant to the Article III analysis to the extent that Plaintiff can allege "the particular procedural violations alleged … entail a degree of risk sufficient to meet the concreteness requirement" of standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 342–343 (2016). Plaintiff has failed to do that by failing to allege IGN knowingly made disclosures that were then used for the benefit of third parties. Plaintiff therefore has failed to allege a concrete injury.

**III. CONCLUSION**

IGN respectfully requests that this Court dismiss Plaintiff's FAC with prejudice.

parties disputed the sufficiency of the allegations underlying those analyses.

[4] Disregarding the cases that Plaintiff cites predating *TransUnion*, Plaintiff points to only one other post-*TransUnion* case: *Adams v. America's Test Kitchen, LP*. While *Adams* found standing under a VPPA claim, its analysis was flawed and should not be followed. *Adams* stated the exact statutory harm covered by the VPPA—the disclosure of PII to a third party—was not a "simple 'statutory violation'" without more analysis. 680 F. Supp.3d at 40–41.

Dated: January 31, 2025

Respectfully submitted,

/s/ Roy W. Bjorlin
Roy W. Bjorlin (BBO #666319)
WILSON ELSER
260 Franklin Street, 14th Floor
Boston, MA 02110
Telephone: (617) 422-5300
roy.bjorlin@wilsonelser.com

/s/ Sean M. Sullivan
Sean M. Sullivan (SBN # 229104)
Katelyn A. Feliciano (SBN # 350385)
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California 90017-2566
Telephone: (213) 633-6800
seansullivan@dwt.com

Attorneys for Defendant IGN Entertainment, Inc.

**CERTIFICATE OF SERVICE**

I certify that, on January 31, 2025, this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

/s/ Sean M. Sullivan
Sean M. Sullivan