**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| JOSUE JOSEPH, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>IGN ENTERTAINMENT, INC.,<br><br>Defendant. | ) | Civil Action No. 24-11579-MJJ |

**MEMORANDUM AND ORDER ON DEFENDANT'S RENEWED MOTION TO DISMISS**

July 10, 2025

JOUN, D.J.

Plaintiff Josue Joseph ("Plaintiff" or "Mr. Joseph"), individually and on behalf of individuals similarly situated, filed suit against defendant IGN Entertainment ("IGN" or "Defendant") for violations of the Video Privacy Protection Act ("VPPA"), 18 U.S.C § 2710. Defendant IGN Entertainment, Inc. ("IGN") has filed a renewed Motion to Dismiss Mr. Joseph's First Amended Complaint ("FAC") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). [Doc. No. 30]. For the reasons set forth below, the Motion is DENIED.

## I. BACKGROUND

### A. IGN's Services

IGN is the owner and operator of a website titled ign.com (the "Website"), which provides reviews of and news about video games, television shows, comics, movies, and technology. [Doc. No. 27 at ¶ 2]. Many of Defendant's articles include pre-recorded videos. [*Id.*].

IGN reaches more than 288 million monthly users around the world, and is followed by more than 51 million social and YouTube followers. [*Id*. at ¶ 8]. Users can access the Website via their web browsers to view videos such as game previews, movie trailers, and television show clips that accompany articles posted on the Website. [*Id*. at ¶¶ 9–10].

Additionally, users have the option to create a Website account, which requires a user to provide their email address in exchange for the following: (i) entry into contests and offers; (ii) free game and music magazines; (iii) access to IGN.com message boards; (iv) text and voice IGN.com chat; (v) a personalized My.IGN start page; (vi) customized gaming newsletters; and (vii) a free IGN.com e-mail address. [*Id*. at ¶¶ 13, 17]. IGN also assigns a user ID to these account holders. [*Id*. at ¶ 13]. Providing an e-mail address to IGN is what allows IGN to ultimately disclose the e-mail address to a third party, Piano, for marketing, advertising, and data analytics. [*Id*. at ¶¶ 14, 16]. IGN also discloses a user's unique user ID, a unique string of letters, numbers and hyphens that helps IGN and Piano identify a specific user. [*Id.* at ¶ 35].

**B. <u>Piano</u>**

Piano is a revenue solutions company that offers content companies like IGN to discover their audience, build a better experience, and offers strategic services to know their audience. [*Id*. at ¶¶ 22, 25]. The company is able to "[help] brands launch campaigns and products faster, strengthen customer engagement and drive personalization at scale from a single platform." [*Id.* at ¶ 23]. After retaining a private research company to conduct a dynamic analysis of the Website, Mr. Joseph found that when a user watches a video, IGN discloses to Piano a user's email address in an encrypted format. [*Id.* at ¶¶ 18, 30–31]. This encrypted format can be decrypted using free online resources that any with Internet can access. [*Id.* at ¶ 32]. IGN also discloses a user's unique user ID, a unique string of letters, numbers and hyphens that helps IGN and Piano identify a specific user. [*Id.* at ¶ 35]. Finally, IGN discloses to Piano the full title of a

video that a user watches and the Universal Resource Locator ("URL") for that video. [*Id.* at ¶ 36]. Piano's services allow IGN to analyze Website user data and provide targeted advertisements. [*Id.* at ¶ 26]. Through Piano's analysis results, IGN can target different users with different marketing and advertising strategies. [*Id.* at ¶ 40]. This enables IGN to grow its user base and generate real-time value. [*Id.* at ¶¶ 40, 44].

### C. Mr. Joseph

In 2014, Mr. Joseph created a free IGN account on the Website, and, since that time, has watched numerous pre-recorded videos on the Website while signed into his account. [*Id.* at ¶ 63]. Though his account was free of charge, Mr. Joseph was required to provide IGN with his e-mail address as part of the sign-up process, for which he received numerous benefits. [*Id.* at ¶ 64]. Although Mr. Joseph never gave permission to the Website to disclose certain information to Piano, each time Mr. Joseph viewed a pre-recorded video on the Website, Defendant disclosed Mr. Joseph's (i) e-mail address, (ii) Piano user ID, and (iii) the title and URL of the video Plaintiff Joseph watched, including the fact that Mr. Joseph viewed the video. [*Id.* at ¶ 67]. Using this information, Piano was able to identify Mr. Joseph and attribute his video viewing records to an individualized profile of Mr. Joseph. [*Id.* at ¶ 68].

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Under Rule 12(b)(1), a plaintiff bears the burden of establishing standing. To satisfy Article III standing, a plaintiff must allege an injury in fact that is concrete, particularized, and actual or imminent; that the injury is fairly traceable to the challenged action;

and that it is likely to be redressed by a favorable decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

## III. DISCUSSION

### A. Standing

IGN argues that Mr. Joseph has not suffered an injury in fact for purposes of standing. Here, Mr. Joseph alleges that his personal identifying information ("PII") was disclosed to a third party without consent in violation of the VPPA, which is sufficient to establish injury. *See Yershov v. Gannet Satellite Info. Network, Inc.,* 204 F.Supp.3d 353, 361 (D. Mass. 2016) (agreeing with courts that found that "consumers alleging that a video tape service provider knowingly disclosed their [personally identifiable information] to a third party without their consent have satisfied the concreteness requirement for Article III standing," as "Congress, by enacting the VPPA elevated an otherwise non-actionable invasion of privacy into a concrete, legally cognizable injury."); *Adams v. Am's Test Kitchen, LP*, 680 F. Supp. 3d 31, 40 (D. Mass 2023) appeal dismissed sub nom. *Adams v. Am.'s Test Kitchen, Inc.,* No. 23-cv-1592, 2024 WL 3515257 (1st Cir. July 17, 2024) (cleaned up) (finding that a consumer alleging a violation of the VPPA presents sufficient injury in fact to confer standing).[1] Because the injury alleged here is both concrete and particularized, and because the FAC plausibly traces the harm to IGN's conduct, Plaintiff has standing to proceed.

---

[1] Out of district courts also similarly find. *See Austin Spearman v. v. AMC Network Entertainment LLC,* 98 F.Supp.3d 662, 666 (2015) (holding that the "VPPA establishes a privacy right sufficient to confer standing through its deprivation."); *Eichenberger v. ESPN, Inc.,* 876 F.3d 979, 983 (2017) (finding standing where "every 18 U.S.C. § 2710(b)(1) violation 'present[s] the precise harm and infringe[s] the same privacy interests Congress sought to protect' by enacting the VPPA").

### B. Whether Plaintiff Is A "Consumer" Under The VPPA

"To allege a violation of the VPPA, a plaintiff must plead sufficient facts suggesting that a 'video tape service provider knowingly disclosed, to any person, personally identifiable information concerning any consumer of such provider.'" *Adams*, 680 F. Supp. 3d at 43. The VPPA defines a "consumer" as "any renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1). "The First Circuit has adopted a 'broader common definition of the term' subscriber in the VPPA under which an individual need not pay a fee to be a subscriber." *Saunders v. Hearst Television, Inc.*, 711 F. Supp. 3d 24, 30 (D. Mass. 2024) (citing *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 487–488 (1st Cir. 2016)). "Instead, a person is a 'subscriber' of an app if she provides some consideration to use the app." *Id*. (citing *Yershov*, 820 F.3d at 489).

Here, Mr. Joseph alleges he created a free IGN account using his email address and that the account allowed him to view exclusive IGN content. More specifically, Mr. Joseph alleges that, in exchange for providing an email address, he had the ability to enter contests and offers. He could access free games and music magazines, IGN.com message boards, text and voice IGN.com chat, a personalized My.IGN start page, customized gaming newsletters, and received a free IGN.com e-mail address. Where he has provided his email address in exchange for certain benefits from a video service provider, Mr. Joseph plausibly alleges that he is a consumer under the VPPA. Plaintiff's allegations are similar to those in *Yershov* which held that the exchange of personal information for video access sufficed to establish subscriber status. 820 F.3d at 489. Although IGN argues that Mr. Joseph's free use and lack of payment distinguish this case from those involving paid services, *Yershov*'s reasoning did not suggest such a rigid requirement. *Id*. at 487–489.

IGN also points to contrary rulings, including the Sixth Circuit's decision in *Salazar v. Paramount Glob.*, 133 F.4th 642 (6th Cir. 2025), where the court held that a newsletter subscriber did not qualify as a "consumer" under the VPPA. But *Salazar*, 133 F.4th at 651–652, is not binding on this Court and conflicts with the First Circuit's reasoning in *Yershov*, 820 F.3d at 487–489. Accordingly, I decline to adopt the narrower interpretation advanced by IGN.

### C. <u>Disclosure Of Personally Identifiable Information</u>

The VPPA prohibits a video service provider from knowingly disclosing to a third party "personally identifiable information concerning any consumer." 18 U.S.C. § 2710(b)(1). The statute defines PII as, "information which identifies a person as having requested or obtained specific video materials or services from a video service provider." *Id*. at § 2710(a)(3). The First Circuit has held "the language [of the VPPA] reasonably conveys the point that PII is not limited to information that explicitly names a person." *Yershov*, 820 F.3d at 486. Information is PII if it creates "firm and readily foreseeable" ties to an individual user. *Id*. But there is a point at which this linkage may become too attenuated to trigger liability. *Id.* Therefore, to determine whether Plaintiff's information is PII, the crucial question becomes the following: can Mr. Joseph be readily identified and linked to the content he consumed based on the information IGN disclosed to Piano? *Id*.

Here, Mr. Joseph alleges that IGN disclosed to Piano, a third party, his email address, his user ID, and the titles and URLs of videos viewed, transmitted the information in a single data payload to Piano, and that Piano could use the information to associate video-viewing activity with individual users. He also alleges IGN configured the tracking tools and selected the data to be shared. In other words, Plaintiff plausibly alleges that IGN is aware that Piano has the capabilities to identify individual customers. These allegations, taken as true, support a plausible

inference that IGN knowingly disclosed PII. *See id*. (knowing requirement met "when [the defendant] makes such a disclosure to [the third party], [defendant] knows that [the third party] has the 'game program' . . . allowing it to link the GPS address and device identifier information to a certain person by name, address, phone number, and more."); *Louth v. NFL Enters. LLC*, 21-cv-00405, 2022 WL 4130866 at *3 (D.R.I. Sept. 12, 2022) (cleaned up) ("The plaintiff sufficiently alleges that AAID is PII because it is unique both to a specific device and user and allows Google to identify and track specific users across multiple electronic devices, applications, and services that a consumer may use.); *In re Nickelodeon Consumer Privacy Litigation* 827 F.3d 262, 289 (3d Cir. 2016) (stating that "even a numeric identifier might qualify as personally identifiable information, at least in certain circumstances"); *Lamb v. Forbes Media LLC*, 2023 WL 6318033, at *10 (S.D.N.Y. Sept. 28, 2023) ("Courts have uniformly held Facebook IDs to constitute PII under the VPPA, particularly where—as here—the plaintiff alleges that her Facebook ID was disclosed alongside the viewed video's URL and name.").

### D. Ordinary Course Of Business Exception

IGN argues its use of Piano falls within the ordinary course of business exception because Piano helps IGN assess website performance. "A video tape service provider may disclose personally identifiable information concerning any consumer" if it is "incident to the ordinary course of business." 18 U.S.C. §2710(b)(2)(E). The ordinary course of business exception is limited to "debt collection activities, order fulfillment, request processing, and the transfer of ownership." 18 U.S.C. §2710(b)(a)(2).

Courts have found that the ordinary course of business exception does not apply where disclosures are made to third-party analytics or advertising companies. In *Louth*, the court found that disclosing users' PII to a third party in order to "measure analytics and increase advertising

revenue" did not fall into the protected exception to the VPPA. 2022 WL 4130866, at *4. Furthermore, in *Saunders,* the court held that when Hearst Television "share[d] data about its apps' users . . . through these APIs to improve its marketing and analytics . . . improving the quality of [its] behavioral and demographic data," these disclosures did not fall within the ordinary course of business exception to the VPPA. 711 F.Supp.3d at 28–29, 32.

The facts alleged by Mr. Joseph suggest that Piano provides marketing, monetization, and behavioral tracking functions, which are beyond the narrow scope of the statutory exception. More specifically, "Defendant transmits a user's e-mail address, user ID, video name, and video URL to Piano so that Piano can analyze user behavior. Through Piano's analysis result, Defendant can target different users with different marketing and advertising strategies, and thereby increasing its user base." [Doc. No. 27 at ¶ 40]. I follow the above line of cases which hold that disclosures to third parties to measure analytics and increase advertising revenue do not fall within the ordinary course of business exception.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Renewed Motion to Dismiss, [Doc. No. 30], is DENIED.

SO ORDERED.

/s/ Myong J. Joun
United States District Judge