**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JOSUE JOSEPH, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>IGN ENTERTAINMENT, INC.,<br><br>Defendant. | Civil Action No. 1:24-cv-11579-MJJ<br><br>Hon. Myoung J. Joun |

**IGN'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendant IGN Entertainment, Inc. ("IGN"), by and through its attorneys, Perkins Coie LLP, hereby answers Plaintiff's First Amended Complaint ("Complaint," or "FAC") as follows, in paragraphs numbered to correspond to the paragraph numbers in said Complaint. All facts not specifically admitted are denied. For ease of reference, IGN uses the section headings in the Complaint but specifically denies any and all allegations and inferences of wrongdoing that may be contained in those section headings. The prefatory statement consists of legal conclusions or other descriptions of this litigation to which no response is required. To the extent that a response is required, IGN denies the allegations in the prefatory statement.

## NATURE OF THE ACTION

1. This is a class action suit brought against Defendant IGN Entertainment ("IGN" or "Defendant") for violations of the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710.

**ANSWER:** Paragraph 1 contains legal conclusions to which no response is required. To the extent a further response is required, IGN denies the allegations in Paragraph 1.

2. Defendant owns and operates a website entitled ign.com (the "Website" or "ign.com"), which provides reviews of and news about video games, television shows, comics, movies, and technology.[1] Many of Defendant's articles include pre-recorded videos.[2]

**ANSWER:** IGN admits that it owns and operates a website available at ign.com. IGN admits that the content available on ign.com includes reviews of and news about video games, television shows, comics, movies, and technology. IGN admits that the content available on ign.com includes pre-recorded videos. Except as expressly admitted, IGN denies the allegations in Paragraph 2.

3. Unbeknownst to Plaintiff and members of the Class, Defendant discloses the titles and URLs of the videos that Plaintiff and Class Members view on Defendant's platform, along with consumers' email addresses and user IDs, to piano.io ("Piano"), an unrelated third party.

**ANSWER:** IGN admits that ign.com integrates code provided by Piano.io. IGN admits that this code may, in some instances, transmit information including URLs, User IDs, and/or user e-mail addresses to Piano, but denies that such transmission includes the titles of videos or any information reflecting whether a visitor to the website viewed any video. IGN lacks information sufficient to admit or deny whether Plaintiff and members of the putative Class accessed the website, viewed videos on the website, or had knowledge of the transmission of any information to Piano, such that these allegations are denied. Fed. R. Civ. P. 8(b)(5). Except as expressly admitted, IGN denies the allegations in Paragraph 3.

4. Plaintiff bring this action for damages and other legal and equitable remedies resulting from Defendant's violations of the VPPA.

---

[1] IGN, ign.com.

[2] *Id.*

**ANSWER:** Paragraph 4 contains legal conclusions to which no response is required. To the extent a further response is required, IGN denies the allegations in Paragraph 4.

## FACTUAL BACKGROUND

### I. HISTORY AND OVERVIEW OF THE VPPA

5. The impetus for the VPPA begins with President Ronald Reagan's nomination of Judge Robert Bork to the United States Supreme Court. During the confirmation process, a movie rental store disclosed the nominee's rental history to the Washington City Paper which then published that history. Congress responded by passing the VPPA, with an eye toward the digital future. As Senator Patrick Leahy, who introduced the Act, explained:

> It is nobody's business what Oliver North or Robert Bork or Griffin Bell or Pat Leahy watch on television or read or think about when they are home. In an area of interactive television cables, the growth of computer checking and check-out counters, of security systems and telephones, all lodged together in computers, it would be relatively easy at some point to give a profile of a person and tell what they buy in a store, what kind of food they like, what sort of television programs they watch, who are some of the people they telephone. I think that is wrong.

S. Rep. 100-599, at 5-6 (cleaned up).

**ANSWER:** The text of the document cited in Paragraph 5 speaks for itself, and IGN denies all allegations and characterizations in Paragraph 5 to the extent they are inconsistent with the text of the document. The remaining allegations in Paragraph 5 contain legal conclusions to which no response is required. To the extent a further response is required, IGN denies the allegations in Paragraph 5.

6. In 2012, Congress amended the VPPA, and in so doing, reiterated the Act's applicability to "so-called 'on-demand' cable services and Internet streaming services [that] allow consumers to watch movies or TV shows on televisions, laptop computers, and cell phones." S. Rep. 112-258, at 2.

**ANSWER:** The text of the document cited in Paragraph 6 speaks for itself, and IGN denies all allegations and characterizations in Paragraph 6 to the extent they are inconsistent with the text of the document. The remaining allegations in Paragraph 6 contain legal conclusions to which no response is required. To the extent a further response is required, IGN denies the allegations in Paragraph 6.

7. The VPPA prohibits "[a] video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider." 18 U.S.C. § 2710(b)(1). The VPPA defines personally identifiable information as "information which identifies a person as having requested or obtained specific video materials or services from a video service provider." 18 U.S.C. § 2710(a)(3). A video tape service provider is "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4).

**ANSWER:** Paragraph 7 contains legal conclusions to which no response is required. To the extent a further response is required, IGN denies the allegations in Paragraph 7.

## II. DEFENDANT IS A VIDEO TAPE SERVICE PROVIDER AND WEBSITE ACCOUNT HOLDERS ARE CONSUMERS

8. Defendant develops, owns, and operates IGN.com. As Defendant describes itself:

> IGN Entertainment is one of the leading Internet media companies focused on video games and entertainment. IGN reaches more than 288 million monthly users around the world, and is followed by more than 51MM social and YouTube followers. With an extremely engaged audience, watching over 566MM minutes of content monthly. IGN also publishes daily content on 34 platforms including TikTok, Twitter, Facebook, Instagram and Snapchat Discover. Established in 1996, IGN is headquartered in Los Angeles, with offices in San Francisco, New York, Chicago, Sydney, and London.[3]

[3] SIX FLAGS FIESTA TEXAS PARTNERS WITH IGN ENTERTAINMENT TO LAUNCH ESIX GAMING, THE WORLD'S FIRST-EVER THEME PARK BASED GAMING EXPERIENCE (May 17, 2023),

**ANSWER:** IGN admits that it develops, owns, and operates IGN.com. The text of the document cited in Paragraph 8 and Footnote 3 speaks for itself, and IGN denies all allegations and characterizations in Paragraph 8 and Footnote 3 to the extent that they are inconsistent with the text of the document. Except as expressly admitted, IGN denies the allegations in Paragraph 8.

9. Users can access the Website via their web browsers, including the web browser Chrome. Defendant now "reaches 490 million monthly users around the world."[4]

**ANSWER:** IGN admits that users can access ign.com via web browsers, including Chrome. The text of the document cited in Paragraph 9 and Footnote 4 speaks for itself, and IGN denies all allegations and characterizations in Paragraph 9 and Footnote 4 to the extent that they are inconsistent with the text of the document. Except as expressly admitted, IGN denies the allegations in Paragraph 9.

10. Users can access the Website to view videos such as game previews, movie trailers, and television show clips that accompany articles posted on the Website.[5]

**ANSWER:** IGN admits that visitors to ign.com may view videos including game previews, movie trailers, and television show clips that accompany certain articles available on ign.com. The text of the document cited in Footnote 5 speaks for itself, and IGN denies all allegations and characterizations in Paragraph 10 and Footnote 5 to the extent that they are inconsistent with the text of the document. Except as expressly admitted, IGN denies the allegations in Paragraph 10.

---

https://corp.ign.com/press#.

[4] LINKEDIN: IGN ENTERTAINMENT, https://www.linkedin.com/company/ign-entertainment/.

[5] *Id.*

11. Defendant also prominently informs users that it provides pre-recorded video content, including through a "Video" option on its Website's main menu:




**ANSWER:** Paragraph 11 contains legal conclusions and characterizations to which no response is required, and the screenshot associated with this paragraph speaks for itself. IGN denies all allegations and characterizations in Paragraph 11 to the extent they are inconsistent with the text of the document. Except as expressly admitted, IGN denies the allegations in Paragraph 11.

12. Upon clicking the "Video" category on Defendant's Website, users can view an assortment of pre-recorded videos, including original shows, trailers, and gameplay videos (for video games):




**ANSWER:** IGN admits that visitors to its website may view certain pre-recorded videos, including original shows, trailers, and gameplay videos. The screenshot associated with Paragraph 12 speaks for itself, and IGN denies all allegations and characterizations in Paragraph 12 and associated screenshot to the extent they are inconsistent with the text of the document. Except as expressly admitted, IGN denies the allegations in Paragraph 12.

13. Users have the option to create a Website account. Creating an account is not free of commitment, however. Instead, users are required to provide their personally identifiable information (their e-mail address) to Defendant in exchange for these benefits. Once users create an account, and as alleged in more detail below, Defendant also assigns a user ID to these account holders so as to track them.

**ANSWER:** IGN admits that users can choose to create an account on ign.com by providing an e-mail address, and that users who do so may be assigned a user ID. Except as expressly admitted, IGN denies the allegations in Paragraph 13.

14. Further, providing an e-mail address to Defendant is what allows Defendant to ultimately disclose the e-mail address to Piano for marketing, advertising, and data analytics—

activities that naturally generate revenue for Defendant. In other words, Defendant would not be able to make money off of Plaintiff's PII had the PII not been provided to Defendant in the first place, and Defendant only receives the PII by virtue of Plaintiff creating a Website account.

**ANSWER:** IGN admits that in some instances, where a user chooses to create an account by providing an e-mail address and then accesses ign.com while logged into that account, IGN may transmit the user's e-mail address to Piano. IGN admits that it uses Piano for marketing, advertising, and data analytics. Except as expressly admitted, IGN denies the allegations in Paragraph 14.

15. The disclosure of PII provided by Website account holders for advertising purposes is of crucial importance to Defendant. That is because Defendant is able to provide content to its extensive viewership for free, in part, because of the revenue it derives from advertisements.[6] Notably, Defendant provides detailed guidelines on the appropriate format and specifications for advertisements to be placed on its Website.[7]

**ANSWER:** IGN admits that it derives revenue from advertisements. The text of the document cited in Paragraph 15 and Footnotes 6 and 7 speaks for itself, and IGN denies all allegations and characterizations in Paragraph 15 and Footnotes 6 and 7 to the extent that they are inconsistent with the text of the document. Except as expressly admitted, IGN denies the allegations in Paragraph 15.

16. As Piano, the third party to whom Defendant discloses PII to, recognizes:

> [c]apturing [user] data requires the right incentives and value exchange—after all, users need a reason to share an email address, register or volunteer demographic and interest data. That requires

[6] *See, e.g.*, IGN, AD SPECS & GUIDELINES, https://specs.ign.com/. Defendant provides this as a link on its Website, demonstrating how important advertisements are to Defendant's business structure.

[7] *See id.*; *see also* IGN, ADVERTISING POLICIES, https://specs.ign.com/advertising-policies.

> more than just putting up a registration wall … [because] most publishers can't afford the negative impact on audience and pageviews from a hard registration requirement like that. Creating incentives beyond just access can increase the number of users who register without reducing audience.[8]

**ANSWER:** The text of the document cited in Paragraph 16 and Footnote 8 speaks for itself, and IGN denies all allegations and characterizations in Paragraph 16 and Footnote 8 to the extent that they are inconsistent with the text of the document. Except as expressly admitted, IGN denies the allegations in Paragraph 16.

17. In other words, because Defendant relies so heavily on PII for advertising revenue, it needs to provide incentives beyond simply accessing content to prompt users to fork over their PII. So, when a user creates a Website account (and thereby provides their e-mail address to Defendant), Defendant provides users with "the ability to use a lot of services that you may not have even know existed on IGN," including but not limited to: (i) "[e]ntry into contests and offers"; (ii) "[f]ree game and music magazines"; (iii) "[a]ccess to IGN.com message boards"; (iv) "[t]ext and voice IGN.com chat"; (v) a "[p]ersonalized My.IGN start page"; (vi) "[c]ustomized gaming newsletters"; and (vii) a "[f]ree IGN.com e-mail address."[9]

**ANSWER:** The text of the document cited in Paragraph 17 and Footnote 9 speaks for itself, and IGN denies all allegations and characterizations in Paragraph 17 and Footnote 9 to the extent that they are inconsistent with the text of the document. Except as expressly admitted, IGN denies the allegations in Paragraph 17.

---

[8] INTRODUCING PIANO ZERO: HOW PIANO MEETS PUBLISHER NEEDS IN THE COOKIELESS ERA, https://resources.piano.io/resources/introducing-piano-zero-how-piano-meets-publisher-needs-in-the-cookieless-era/.

[9] BECOME AN IGN MEMBER TODAY, https://www.ign.com/articles/2001/03/09/become-an-ign-member-today-2.

## III. DEFENDANT KNOWINGLY DISCLOSES ITS USERS' PERSONALLY IDENTIFIABLE INFORMATION WITH A THIRD PARTY

### A. Testing Reveals That Defendant Illegally Shares Users' PII With Piano

18. In early 2024, Plaintiff's counsel retained a private research company to conduct a dynamic analysis of the Website. A "dynamic analysis" records the transmissions that occur from a user's device. The researchers analyzed the disclosures made from the Website to third parties when watching a video.

**ANSWER:** IGN has insufficient knowledge or information to admit or deny the allegations in Paragraph 18, such that they are denied. Fed. R. Civ. P. 8(b)(5).

19. The analysis establishes that Defendant integrates at least one "application programming interface" ("API") into the Website: the Piano API, either as part of a Piano Software Development Kit ("SDK") or as a standalone API.

**ANSWER:** IGN has insufficient knowledge or information to admit or deny the allegations in Paragraph 19, such that they are denied. Fed. R. Civ. P. 8(b)(5).

20. An API "acts an intermediary layer that processes data transfer between systems, letting companies open their application data and functionality to external third-party developers [and] business partners."[10] An API can "work[] as a standalone solution or included within an SDK … [A]n SDK often contains at least one API."[11]

**ANSWER:** The text of the document cited in Paragraph 20 and Footnotes 10 and 11 speaks for itself, and IGN denies all allegations and characterizations in Paragraph 20 and

---

[10] IBM, *What is an API?*, available https://www.ibm.com/topics/api.

[11] SDK VS. API: WHAT'S THE DIFFERENCE?, IBM (July 13, 2011), https://www.ibm.com/blog/sdk- vs-api/ ("SDK" stands for software development kit and "is a set of software-building tools for a specific program," while "API" stands for application programming interface).

Footnotes 10 and 11 to the extent that they are inconsistent with the text of the document. Except as expressly admitted, IGN denies the allegations in Paragraph 20.

21. An SDK is a "set of tools for developers that offers building blocks for the creation of an application instead of developers starting from scratch … For example, Google Analytics provides an SDK that gives insight into user behavior, engagement, and cross-network attribution."[12]

**ANSWER:** The text of the document cited in Paragraph 21 and Footnote 12 speaks for itself, and IGN denies all allegations and characterizations in Paragraph 21 and Footnote 12 to the extent that they are inconsistent with the text of the document. Except as expressly admitted, IGN denies the allegations in Paragraph 21.

22. Piano is a "revenue solutions" company that provides products and services including metered paywalls, analytics, personalization, and monetization.

**ANSWER:** IGN has insufficient knowledge or information to admit or deny the allegations in Paragraph 22, such that they are denied. Fed. R. Civ. P. 8(b)(5).

23. "Piano's Digital Experience Platform empowers organizations to understand and influence customer behavior. By unifying customer data, analyzing behavior metrics and creating personalized customer journeys, Piano helps brands launch campaigns and products faster, strengthen customer engagement and drive personalization at scale from a single platform."[13]

---

[12] API VS. SDK: THE DIFFERENCE EXPLAINED (WITH EXAMPLES), https://getstream.io/glossary/api-vs-sdk/.

[13] https://www.linkedin.com/company/piano-io/about/




**ANSWER:** The text of the document cited in Paragraph 23 and Footnote 13 as well as the screenshot associated with this paragraph speaks for themselves, and IGN denies all allegations and characterizations in Paragraph 23 and Footnote 13 as well as the associated screenshot to the extent that they are inconsistent with the text of the document. Except as expressly admitted, IGN denies the allegations in Paragraph 23.

24. In 2015, Piano merged with TinyPass.[14] The merge "reflect[ed] a global move by media businesses" demonstrating "the need for comprehensive monetization, intelligence and analytics tools."[15]

**ANSWER:** The text of the document cited in Paragraph 24 and Footnotes 14 and 15 speaks for itself, and IGN denies all allegations and characterizations in Paragraph 24 and Footnotes 14 and 15 to the extent that they are inconsistent with the text of the document. IGN has insufficient knowledge or information to admit or deny the remaining allegations in Paragraph 24, such that they are denied. Fed. R. Civ. P. 8(b)(5). Except as expressly admitted, IGN denies the allegations in Paragraph 24.

---

[14] Piano Media and Tinypass Merge, Press Release (Aug. 11, 2015), https://piano.io/media/Piano_Press_release.pdf.

[15] *Id.*

25. Piano offers content companies like Defendants solutions to "[d]iscover your audience[, and b]uild a better experience," as well as "[s]trategic [s]ervices" to "[k]now your audience."[16]




**ANSWER:** The text of the document cited in Paragraph 25 and Footnote 16 as well as the screenshot associated with this paragraph speaks for themselves, and IGN denies all allegations and characterizations in Paragraph 25 and Footnote 16 as well as the associated screenshot to the extent that they are inconsistent with the text of the document. Except as expressly admitted, IGN denies the allegations in Paragraph 25.

26. These services, in turn, allow Piano's customers such as Defendant to analyze Website user data and provide targeted advertisements.

**ANSWER:** IGN has insufficient knowledge or information to admit or deny the allegations in Paragraph 22, such that they are denied. Fed. R. Civ. P. 8(b)(5).

27. The dynamic analysis found that when a user creates an account on the Website and watches a pre-recorded video on the Website, Defendant discloses the following information to Piano:

[16] PIANO, https://piano.io/.

| THIRD PARTY | VIDEO INFO | PERSONAL INFO | OTHER INFO |
|---|---|---|---|
| **Piano.io** | Video Name, URL | Email | User ID |

**ANSWER:** IGN admits that ign.com integrates code provided by Piano. IGN admits that this code may, in some instances, transmit information including URLs, User IDs, and/or user e-mail addresses to Piano, but denies that such transmission includes the titles of videos or any information reflecting whether a visitor to the website viewed any video. IGN denies that when a user creates an account and watches a pre-recorded video on ign.com, IGN necessarily transmits all of the information as shown in the screenshot in Paragraph 27. IGN has insufficient knowledge or information to admit or deny the allegations in Paragraph 27 regarding what the "dynamic analysis" purported to find, such that these allegations are denied. Fed. R. Civ. P. 8(b)(5). The screenshot associated with Paragraph 27 speaks for itself, and IGN denies all allegations and characterizations in Paragraph 27 to the extent they are inconsistent with the text of the document. Except as expressly admitted, IGN denies the allegations in Paragraph 27.

28. The aforementioned disclosures to Piano are believed to have occurred throughout the entire class period.

**ANSWER:** Paragraph 28 contains legal conclusions to which no response is required. To the extent a further response is required, IGN denies the allegations in Paragraph 28.

**B. Defendant Discloses Users' E-mail Addresses And User IDs To Piano**

29. An e-mail address is a unique string of characters that designates an electronic mailbox. As industry leaders,[17] trade groups,[18] and courts[19] agree, an ordinary person can use an email address to uniquely identify another individual. Indeed, there exists multiple services that enable anyone with internet access and a credit card to look up who owns a particular email address.

**ANSWER:** IGN has insufficient knowledge or information to admit or deny the allegations in Paragraph 29 regarding the definition of an e-mail address; what an e-mail address can be used for; what agreement, if any, exists among "industry leaders," "trade groups," and "courts"; and whether "there exists multiple services that enable anyone with internet access and a credit card to look up who owns a particular email address," such that these allegations are denied. Fed. R. Civ. P. 8(b)(5). The text of the document cited in Paragraph 29 and Footnotes 16, 17, and 18 speaks for themselves, and IGN denies all allegations and characterizations in Paragraph 29 and Footnotes 16, 17, and 18 to the extent that they are inconsistent with the text of the document. The remainder of Paragraph 29 contains legal conclusions to which no response is required. To the extent a further response is required, IGN denies the allegations in Paragraph 29.

[17] Allison Schiff, *Can Email Be The Next Big Online Identifier?*, AD EXCHANGER (Aug. 25, 2020), https://www.adexchanger.com/data-exchanges/can-email-be-the-next-big-online-identifier/ (quoting Tom Kershaw, CTO of Magnite, who said "[a]n email address is universally considered to be PII, so as such it can never be a valid identifier for online advertising").

[18] Network Advertising Initiative, NAI CODE OF CONDUCT 19 (2020), https://thenai.org/wp-content/uploads/2021/07/nai_code2020.pdf (identifying email as PII).

[19] *See United States v. Hastie*, 854 F.3d 1298, 1303 (11th Cir. 2017) ("Email addresses fall within the ordinary meaning of information that identifies an individual. They can prove or establish the identity of an individual.").

30. The dynamic analysis found that when a user watches a video, Defendant discloses to Piano a user's e-mail address.

**ANSWER:** IGN has insufficient knowledge or information to admit or deny the allegations in Paragraph 30 regarding what the "dynamic analysis" purported to find, such that these allegations are denied. Fed. R. Civ. P. 8(b)(5).

31. Defendant discloses users' e-mail addresses in an encrypted format (Base64), resulting in what Defendant calls a "user_token." The following excerpt from the dynamic analysis shows a disclosed "user_token" that contains a users' "encrypted" e-mail address:

user_token:
eyJhbGciOiJFUzI1NiIsInR5cCI6IkpXVCJ9.eyJhdWQiOiJodHRwczovL3BpYW5vLmlvIiwidWlkIjoiMmM2NDlkZDMtZDRhZC00YjdjLTk2ZDItZDA5M2E2Y2U1NjU1IiwiZW1haWwiOiJwZXBweW1heUB5YWhvby5jb20iLCJmaXJzdE5hbWUiOiIiLCJsYXN0TmFtZSI6IiIsImlhdCI6MTcxMDg2MjI3MywiZXhwIjoxNzEzNDU0NjczLCJpc3MiOiJodHRwczovL2lnbi5jb20ifQ.Lqw0152HdW7kFHE2RauPF_dVfnZq_o3GLcPw1ZaqadkGsO0oXz_T4n9Un2_EnIoNYf6Qtaq-bbLToJl5n2-OnA

**ANSWER:** IGN admits that ign.com integrates code provided by and admits that this code may, in some instances, transmit information including user e-mail addresses to Piano. IGN admits that such transmissions to Piano are automatically encrypted, but denies that Base64 is an encryption scheme. IGN has insufficient knowledge or information to admit or deny the allegations in Paragraph 31 regarding what the "dynamic analysis" purported to find, such that these allegations are denied. Fed. R. Civ. P. 8(b)(5). The screenshot associated with Paragraph 31 speaks for itself, and IGN denies all allegations and characterizations in Paragraph 31 to the extent they are inconsistent with the text of the document. Except as expressly admitted, IGN denies the allegations in Paragraph 31.

32. However, even an ordinary person can easily decrypt something encrypted in Base64. Indeed, Multiple free online resources exist to allow anyone with access to the Internet to

decode Base 64-encrypted text into legible text. For example, the following screenshot depicts one such free online resource:[20]




**ANSWER:** IGN has insufficient knowledge or information to admit or deny the allegations in Paragraph 32, such that they are denied. Fed. R. Civ. P. 8(b)(5). The text of the document cited in Paragraph 32 and Footnote 20 as well as the screenshot associated with this paragraph speaks for themselves, and IGN denies all allegations and characterizations in Paragraph 32 and Footnote 20 as well as the associated screenshot to the extent that they are inconsistent with the text of the document. The remainder of Paragraph 32 contains legal conclusions to which no response is required. To the extent a further response is required, IGN denies the allegations in Paragraph 32.

33. The top box in the screenshot above, titled "Decode from Base64 format," has been filled with the "user_token" text—which is the Base64-encrypted field Defendant transmitted to Piano. The bottom box in the screenshot above, labelled "<Decode>", is populated with legible text that the tool decrypted.

---

[20] BASE64 DECODE, https://www.base64decode.org/.

**ANSWER:** IGN has insufficient knowledge or information to admit or deny the allegations in Paragraph 33 regarding what the "dynamic analysis" purported to find, such that these allegations are denied. Fed. R. Civ. P. 8(b)(5). The screenshot associated with Paragraph 32 referred to in Paragraph 33 speaks for itself, and IGN denies all allegations and characterizations in Paragraph 33 to the extent they are inconsistent with the text of the document. Except as expressly admitted, IGN denies the allegations in Paragraph 33.

34. Notably, the user's e-mail address is clearly displayed in the decrypted text populated inside the bottom box.

**ANSWER:** IGN has insufficient knowledge or information to admit or deny the allegations in Paragraph 34 regarding what the "dynamic analysis" purported to find, such that these allegations are denied. Fed. R. Civ. P. 8(b)(5). The screenshot associated with Paragraph 32 referred to in Paragraph 34 speaks for itself, and IGN denies all allegations and characterizations in Paragraph 34 to the extent they are inconsistent with the text of the document. Except as expressly admitted, IGN denies the allegations in Paragraph 34.

35. In addition, Defendant also discloses a user's unique user ID, which Defendant calls a "uid," to Piano. The user's "uid" is a unique string of letters, numbers, and hyphens that helps Defendant and Piano identify a specific user. In the above decrypted "user_token", the disclosed user ID is "2c649dd3-d4ad-4b7c-96d2-d093a6ce5655."

**ANSWER:** IGN admits that a "user ID" is a unique string of letters, numbers, and hyphens that is assigned when a user creates an account with IGN. IGN admits that ign.com integrates code which may, in some instances, transmit information including user IDs to Piano. IGN has insufficient knowledge or information to admit or deny the allegations in Paragraph 34 regarding what the "dynamic analysis" purported to find, such that these allegations are denied.

Fed. R. Civ. P. 8(b)(5). The screenshot associated with Paragraph 32 referred to in Paragraph 35 speaks for itself, and IGN denies all allegations and characterizations in Paragraph 35 to the extent they are inconsistent with the text of the document. Except as expressly admitted, IGN denies the allegations in Paragraph 35.

**C. Defendant Discloses To Piano Information Identifying Which Specific Videos Were Watched By Which Users**

36. Defendant discloses to Piano the full title of a video that a user watches and the Universal Resource Locator ("URL") for that video. For example, in the excerpted dynamic analysis below, the disclosed video's title is "How X-Men: The Animated Series Reshaped the Franchise – IGN:"

```
pageTitle: How X-Men: The Animated Series Reshaped the Franchise - IGN
url: https://www.ign.com/videos/how-x-men-the-animated-series-reshaped-the-franchise
referrerUrl: https://www.ign.com/
contentType: video.other
```

**ANSWER:** IGN admits that ign.com integrates code which may, in some instances, transmit information including URLs to Piano, but denies that such transmission includes the titles of videos or any information reflecting whether a visitor to the website viewed any video. IGN has insufficient knowledge or information to admit or deny the allegations in Paragraph 34 regarding what the "dynamic analysis" purported to find, such that these allegations are denied. Fed. R. Civ. P. 8(b)(5). The screenshot associated with Paragraph 36 referred to in Paragraph 36 speaks for itself, and IGN denies all allegations and characterizations in Paragraph 36 to the extent they are inconsistent with the text of the document. Except as expressly admitted, IGN denies the allegations in Paragraph 36.

37. A video's title is the most basic identifier of that video and necessarily discloses the name of the video watched by the user.

**ANSWER:** Paragraph 37 contains legal conclusions to which no response is required.

To the extent a further response is required, IGN denies the allegations in Paragraph 37.

38. In addition, a video's URL takes anyone who enters that URL into an Internet search browser directly to the webpage containing the video. The following screenshot shows the disclosed URL entered into a web browser, which shows the video watched by the user:




**ANSWER:** IGN has insufficient knowledge or information to admit or deny the allegations in Paragraph 38, such that they are denied. Fed. R. Civ. P. 8(b)(5). The screenshot associated with Paragraph 38 speaks for itself, and IGN denies all allegations and characterizations in Paragraph 38 and associated screenshot to the extent they are inconsistent with the text of the document. Except as expressly admitted, IGN denies the allegations in Paragraph 38.

39. The dynamic analysis also found that Defendant discloses to Piano that a user actually watched the video as opposed to simply reading an article. Specifically, a field called "content_type" is sent to Piano. When a user views a video, the field is filled is as "video.other," which indicates a video was actually watched:

title: **How X-Men: The Animated Series Reshaped the Franchise - IGN**
description: X-Men '97 is a show steeped in Marvel nostalgia. It's a direct continuation of X-Men: The Animated Series, a show that holds a special place in a lot of fans' hearts. X-Men: The Animated Series introduced mutant heroes like Wolverine and Cyclops to a much bigger audience, winning legions of fans thanks to those colorful characters and a nonstop dose of mutant soap opera.To celebrate the release of X-Men '97, let's take a step back to explore why the original cartoon was so influential, and how it continues to influence the X-Men franchise even today. Cue up the theme song X-Men '97 features the voices of Cal Dodd, Lenore Zann, George Buza, Catherine Disher, Chris Potter, Alison Sealy-Smith, Adrian Hough, Christopher Britton, Alyson Court, Lawrence Bayne, and Ron Rubin. The first two episodes of the series will premiere on Disney+ on March 20, 2024.
content_type: video.other
custom_variables: {"theme":"dark","tags":["","X-Men","Feature","Entertainment"],"inlineTemplatesHaveShadows":true}

**ANSWER:** IGN denies that it discloses to Piano whether a visitor to the website viewed any video as opposed to simply reading an article. IGN has insufficient knowledge or information to admit or deny the allegations in Paragraph 39 regarding what the "dynamic analysis" purported to find, such that these allegations are denied. Fed. R. Civ. P. 8(b)(5). The screenshot associated with Paragraph 39 speaks for itself, and IGN denies all allegations and characterizations in Paragraph 39 and associated screenshot to the extent they are inconsistent with the text of the document. Except as expressly admitted, IGN denies the allegations in Paragraph 39.

## IV. DEFENDANT DISCLOSES PERSONALLY IDENTIFIABLE INFORMATION TO PIANO FOR THE PURPOSES OF MARKETING, ADVERTISING, AND ANALYTICS

40. Defendant transmits a user's e-mail address, user ID, video name, and video URL to Piano so that Piano can analyze user behavior. Through Piano's analysis results, Defendant is able to target different users with different marketing and advertising strategies, and thereby increasing its user base.

**ANSWER:** IGN admits that ign.com integrates code provided by Piano. IGN admits that this code may, in some instances, transmit information including URLs, User IDs, and/or user e-mail addresses to Piano, but denies that such transmission includes "video URL," the titles of videos or any information reflecting whether a visitor to the website viewed any video. IGN admits that it uses Piano for marketing and advertising, and admits that advertisements shown to visitors

to ign.com may, in certain instances, include content that is targeted to those visitors based on actions they have previously taken on the website. IGN admits that such advertising is used to increase its known user base. Except as expressly admitted, IGN denies the allegations in Paragraph 40.

41. Piano is a digital advertising and analytics platform that empowers its customers like Defendant to "create customized digital experiences and build commercial relationships with [their] users – fueling [their customers'] subscription, conversion, analytics, entitlement[,] and personalization goals."[21]

**ANSWER:** IGN has insufficient knowledge or information to admit or deny the allegations in Paragraph 41, such that they are denied. Fed. R. Civ. P. 8(b)(5). The text of the document cited in Paragraph 41 and Footnote 21 speaks for itself, and IGN denies all allegations and characterizations in Paragraph 41 and Footnote 21 to the extent that they are inconsistent with the text of the document. Except as expressly admitted, IGN denies the allegations in Paragraph 41.

42. Piano's senior advisor and Board member, Kelly Leach, stated that "[a]udience intelligence and optimization are critical elements of content monetization. By [the Piano and Tinypass merge] … the combined company is able to offer media companies the most comprehensive, effective[,] and user-friendly platform in the industry."[22]

**ANSWER:** IGN has insufficient knowledge or information to admit or deny the allegations in Paragraph 42, such that they are denied. Fed. R. Civ. P. 8(b)(5). The text of the document cited in Paragraph 42 and Footnote 22 speaks for itself, and IGN denies all allegations

[21] THE PIANO PLATFORM AND SERVICES, PIANO, https://piano.io/de.

[22] PIANO MEDIA AND TINYPASS MERGE, PRESS RELEASE (Aug. 11, 2015), https://piano.io/media/Piano_Press_release.pdf.

and characterizations in Paragraph 42 and Footnote 22 to the extent that they are inconsistent with the text of the document. Except as expressly admitted, IGN denies the allegations in Paragraph 42.

43. Piano's suite of technological tools provides services to customers like Defendant that "[f]uel the commerce side of your digital business;"[23] "[a]mplify your brand impact" "through … curation, audience personalization, targeting, and email delivery";[24] and "[i]dentify a user cohort, target them with a personalized experience, and report on the results, all in real-time,"[25] among other marketing, analytics, and advertising initiatives.

**ANSWER:** IGN has insufficient knowledge or information to admit or deny the allegations in Paragraph 43, such that they are denied. Fed. R. Civ. P. 8(b)(5). The text of the document cited in Paragraph 43 and Footnotes 23, 24, and 25 speaks for itself, and IGN denies all allegations and characterizations in Paragraph 43 and Footnotes 23, 24, and 25 to the extent that they are inconsistent with the text of the document. Except as expressly admitted, IGN denies the allegations in Paragraph 43.

44. One example of a tool Piano offers its customers, like Defendant, is the "Piano VX."[26] VX "is [Piano's] most powerful commerce engine that creates real-time value."[27] This tool delivers "[t]he numbers [Defendant] need[s]" to improve its marketing, analytics, and advertising capabilities," such as by "[c]aptur[ing] first-party data and profiles" and "[p]ersonaliz[ing] emails

[23] ANALYTICS + ACTIVATION, https://resources.piano.io/.

[24] PIANO ESP, https://piano.io/de/product/esp/.

[25] PIANO, https://piano.io/.

[26] PIANO VX, PIANO, https://piano.io/de/product/vx/.

[27] *Id.*

to new, current, and former users”:[28]




**ANSWER:** IGN has insufficient knowledge or information to admit or deny the allegations in Paragraph 44, such that they are denied. Fed. R. Civ. P. 8(b)(5). The text of the document cited in Paragraph 44 and Footnotes 26, 27, and 28 as well as the screenshot associated with this paragraph speaks for themselves, and IGN denies all allegations and characterizations in Paragraph 44 and Footnotes 26, 27, and 28 as well as the associated screenshot to the extent that they are inconsistent with the text of the document. Except as expressly admitted, IGN denies the allegations in Paragraph 44.

45. Accordingly, by using Piano’s suite of technological tools, including VX, Defendant is able to have “[e]verything [it] know[s] about a user immediately available for segmentation and targeting.”[29]

---

[28] *Id.*

[29] DMP, PIANO, https://piano.io/product/dmp/.

**ANSWER:** IGN has insufficient knowledge or information to admit or deny the allegations in Paragraph 45, such that they are denied. Fed. R. Civ. P. 8(b)(5). The text of the document cited in Paragraph 45 and Footnote 29 speaks for itself, and IGN denies all allegations and characterizations in Paragraph 45 and Footnote 29 to the extent that they are inconsistent with the text of the document. Except as expressly admitted, IGN denies the allegations in Paragraph 45.

46. Piano's Chief Executive, Trevor Kaufman, stated, "[d]igital media businesses are increasingly focused on monetizing their loyal users."[30] Piano's creation provided "publishers and media companies [such as Defendant] with the most effective and usable monetization and analytics tools available."[31]

**ANSWER:** IGN has insufficient knowledge or information to admit or deny the allegations in Paragraph 46, such that they are denied. Fed. R. Civ. P. 8(b)(5). The text of the document cited in Paragraph 46 and Footnotes 30 and 31 speaks for themselves, and IGN denies all allegations and characterizations in Paragraph 46 and Footnotes 30 and 31 to the extent that they are inconsistent with the text of the document. Except as expressly admitted, IGN denies the allegations in Paragraph 46.

47. One way Piano does this is through Piano Zero, which relies on the collection of user's personally identifiable information by companies like Defendant, and the disclosure of the same to Piano:

> Media companies are uniquely positioned to gather zero-party data—that is, data that is explicitly volunteered (for example, by users filling out a registration form or survey). *It's personal information, intent and preferences that consumers choose to*

[30] *Piano Media And Tinypass Merge*, Press Release (Aug. 11, 2015), https://piano.io/media/Piano_Press_release.pdf.

[31] *Id.*

> *provide for themselves*, and it adds to the reliable first-party data that media companies also collect by tracking user behavior and content consumption habits.
>
> It's because of this access to zero- and first-party data that we see *new opportunities for media companies to step up and reclaim ad revenue* that was previously lost to ad tech middlemen, and to build on their direct relationships with users and advertisers. And Piano is the only end-to-end software provider that can help them seize the opportunity to gather and utilize that data.
>
> …
>
> In order to benefit from their trusted relationship with users and advertisers, media companies need to capture zero-party data from known users. Piano ID, our identity management solution, does that, providing registration and login, authentication and flexible data capture via custom fields. *It enables you to identify your users across browsers and devices*, and capture user information via progressive profiling—asking for data when it's most relevant. *You can use all of the data collected in Piano ID to segment and target users for marketing and advertising.*[32]

**ANSWER:** IGN has insufficient knowledge or information to admit or deny the allegations in Paragraph 47, such that they are denied. Fed. R. Civ. P. 8(b)(5). The text of the document cited in Paragraph 47 and Footnote 32 speaks for itself, and IGN denies all allegations and characterizations in Paragraph 47 and Footnote 32 to the extent that they are inconsistent with the text of the document. Except as expressly admitted, IGN denies the allegations in Paragraph 47.

48. Elaborating on Piano ID, this service "[t]ransform[s] anonymous visitors into engaged customers by capturing and authenticating valuable user data such as names, email addresses, and passwords."[33] This allows companies like Defendant to "[e]ngage, authenticate and

---

[32] INTRODUCING PIANO ZERO: HOW PIANO MEETS PUBLISHER NEEDS IN THE COOKIELESS ERA, https://resources.piano.io/resources/introducing-piano-zero-how-piano-meets-publisher-needs-in-the-cookieless-era/ (emphasis added).

[33] IDENTITY MANAGEMENT, https://www.piano.io/product/activation/identity-management.

monetize" through "progressive profiling," which allows Defendant to "provide more tailored, personalized experiences based on the user interests and preferences" (i.e., to conduct targeted marketing and advertising based on user information).[34]

**ANSWER:** IGN has insufficient knowledge or information to admit or deny the allegations in Paragraph 48, such that they are denied. Fed. R. Civ. P. 8(b)(5). The text of the document cited in Paragraph 48 and Footnotes 33 and 34 speaks for themselves, and IGN denies all allegations and characterizations in Paragraph 48 and Footnotes 33 and 34 to the extent that they are inconsistent with the text of the document. Except as expressly admitted, IGN denies the allegations in Paragraph 48.

49. Piano also offers Piano ESP, which "knows what your audience wants and delivers it—automating the process of delivering personalized and incredibly relevant recommendations, email campaigns, and newsletters tailored to the individual user — even down to the right subject line, call to action, and send time."[35] The purpose of this for companies like Defendant is to "skyrocket[] your conversion loyalty and retention rates by keeping your entire audience engaged to a continual stream of relevant content and offers."[36] And Piano ESP does this by "learning and analyzing your audience across site and email, desktop to mobile – discovering every individual's preferences to recommend the next best experience your users are most likely to click on next."[37]

**ANSWER:** IGN has insufficient knowledge or information to admit or deny the allegations in Paragraph 49, such that they are denied. Fed. R. Civ. P. 8(b)(5). The text of the document cited in Paragraph 49 and Footnotes 35, 36, and 37 speaks for themselves, and IGN

[34] *Id.*

[35] Piano ESP, https://piano.io/de/product/esp/.

[36] *Id.*

[37] *Id.*

denies all allegations and characterizations in Paragraph 49 and Footnotes 35, 36, and 37 to the extent that they are inconsistent with the text of the document. Except as expressly admitted, IGN denies the allegations in Paragraph 49.

50. Defendant also offers the Piano DMP service, which allows companies like Defendant to "[c]ombine first-, second-, and third-party data with volunteered zero-party data. Develop user profiles and audience segments and put the data to work across your sites and multi-channel campaigns. Integrate zero-party data to ensure data reliability, transparency, and consent – so you can grow your business no matter what big tech companies decide."[38]

**ANSWER:** IGN denies that it offers the Piano DMP service. IGN has insufficient knowledge or information to admit or deny the remaining allegations in Paragraph 50, such that these allegations are denied. Fed. R. Civ. P. 8(b)(5). The text of the document cited in Paragraph 50 and Footnote 38 otherwise speaks for itself, and IGN denies all allegations and characterizations in Paragraph 50 and Footnote 38 to the extent that they are inconsistent with the text of the document. Except as expressly admitted, IGN denies the allegations in Paragraph 50.

51. More specifically, Piano DMP "gathers data and analyzes it to produce meaningful insight and segments," and "turns data into targetable audiences that deliver accurate, predictive information about future-oriented marketing and audience segmentation."[39]

**ANSWER:** IGN has insufficient knowledge or information to admit or deny the allegations in Paragraph 51, such that they are denied. Fed. R. Civ. P. 8(b)(5). The text of the document cited in Paragraph 51 and Footnote 39 otherwise speaks for itself, and IGN denies all allegations and characterizations in Paragraph 51 and Footnote 39 to the extent that they are

[38] Piano DMP, https://piano.io/de/product/dmp/.

[39] *Id.*

inconsistent with the text of the document. Except as expressly admitted, IGN denies the allegations in Paragraph 51.

52. The information Piano collects can be "sync[ed] with [Defendant's] preferred ad server and/or marketing tools, to enable real-time action."[40] In other words, once Piano analyzes and segments user information, that information can be shared with even more third parties for targeted marketing and advertising. These include "SpotX, Adform, Google Ad Manager, [and] iBillboard."[41] Indeed, "[e]very day Piano DMP automatically exports segments to various platforms (e.g., SSP and DSP), data providers and social networks. Among such importers are ad servers where DMP segments are used to target marketing campaigns."

**ANSWER:** IGN has insufficient knowledge or information to admit or deny the allegations in Paragraph 52, such that they are denied. Fed. R. Civ. P. 8(b)(5). The text of the document cited in Paragraph 52 and Footnotes 40 and 41 otherwise speaks for itself, and IGN denies all allegations and characterizations in Paragraph 52 and Footnotes 40 and 41 to the extent that they are inconsistent with the text of the document. Except as expressly admitted, IGN denies the allegations in Paragraph 52.

53. For clarity, a Demand Side Platform or "DSP" "allows advertisers to buy media across multiple sources," while a Supply Side Platform or "SSP" "facilitates the sale of advertising impressions for publishers."[42]

**ANSWER:** IGN has insufficient knowledge or information to admit or deny the allegations in Paragraph 53, such that they are denied. Fed. R. Civ. P. 8(b)(5). The text of the

---

[40] *Id.*

[41] AD SERVERS, https://docs.piano.io/ad-servers/.

[42] WHAT IS THE DIFFERENCE BETWEEN AN SSP AND A DSP?, https://advertising.amazon.com/en-gb/library/guides/dsp-ssp-dmp-difference.

document cited in Paragraph 53 and Footnote 42 otherwise speaks for itself, and IGN denies all allegations and characterizations in Paragraph 53 and Footnote 42 to the extent that they are inconsistent with the text of the document. Except as expressly admitted, IGN denies the allegations in Paragraph 53.

54. In other words, a DSP allows advertisers to choose what type of persons they want to target (e.g., men under 45 interested in video games), and an SSP allows publishers like Defendant to list "advertising inventory" (i.e., user segments and spots on their website) that caters to the wants of advertisers, and that advertisers can purchase to show ads:[43]




**ANSWER:** IGN has insufficient knowledge or information to admit or deny the allegations in Paragraph 50, such that they are denied. Fed. R. Civ. P. 8(b)(5). The text of the document cited in Paragraph 54 and Footnote 43 otherwise speaks for itself, and IGN denies all allegations and characterizations in Paragraph 54 and Footnote 43 to the extent that they are inconsistent with the text of the document. Except as expressly admitted, IGN denies the allegations in Paragraph 54.

---

[43] WHAT IS AN SSP? | GO FOR TEAL, https://youtu.be/Mziv_DUsnTA?si=y29VCg3ToCpRxOHL&t=73.

55. Piano explicitly tells companies like Defendant to "incentivize users to provide data by granting access to special content or features" so that Piano can operate off of the widest swath of information.[44]

**ANSWER:** IGN has insufficient knowledge or information to admit or deny the allegations in Paragraph 55, such that they are denied. Fed. R. Civ. P. 8(b)(5). The text of the document cited in Paragraph 55 and Footnote 44 otherwise speaks for itself, and IGN denies all allegations and characterizations in Paragraph 55 and Footnote 44 to the extent that they are inconsistent with the text of the document. Except as expressly admitted, IGN denies the allegations in Paragraph 55.

56. To summarize, Piano collects extensive user information—which it prompts companies like Defendant to incentivize users to provide. Piano then Piano ID to identify users and create profiles of their activity. Those profiles are then segmented and targeted with marketing like e-mails and recommendations through Piano ESP, and/or are disclosed to advertisers through Piano DMP and its integrations with other third parties. Finally, all of this is monitored by Piano through Piano VX, which allows companies like Defendant to understand how marketing and advertising campaigns are performing and further refine audience segments.

**ANSWER:** IGN has insufficient knowledge or information to admit or deny the allegations in Paragraph 50, such that they are denied. Fed. R. Civ. P. 8(b)(5). The remainder of Paragraph 56 contains legal conclusions to which no response is required. To the extent a further response is required, IGN denies the allegations in Paragraph 56. Except as expressly admitted, IGN denies the allegations in Paragraph 56.

[44] *Id.*

57. Defendant uses each and every one of the aforementioned features of Piano on its Website, and it discloses e-mail addresses, user IDs, and video titles to Piano for marketing, advertising, and analytics purposes.

**ANSWER:** IGN admits that ign.com integrates code provided by Piano but denies that it uses each and every one of the aforementioned features of Piano, and denies that these features operate in the manner alleged. IGN admits that this code may, in some instances, transmit information including URLs, User IDs, and/or user e-mail addresses to Piano, but denies that such transmission includes the titles of videos or any information reflecting whether a visitor to the website viewed any video. IGN admits that it uses Piano for marketing, advertising, and analytics. Except as expressly admitted, IGN denies the allegations in Paragraph 57.

## V. DEFENDANT KNOWINGLY DISCLOSES USERS' PERSONALLY IDENTIFIABLE INFORMATION TO PIANO

58. Based on the above, it is abundantly clear that Defendant *intentionally* and *knowingly* discloses to Piano its users' personally identifiable information and video-viewing information.

**ANSWER:** Paragraph 58 contains legal conclusions to which no response is required. To the extent a further response is required, IGN denies the allegations in Paragraph 58.

59. As mentioned above, Defendant discloses a user's 'user ID' to Piano in a singular network transmission with the user's e-mail address and video-viewing information. Defendant's disclosure of this user ID gives Piano another layer of identification for Piano to further organize and analyze users and its behaviors. This, in turn, supplies Defendant with improved marketing, advertising, and analytics outcomes as well as boosts revenue from strategic advertisements.

**ANSWER:** IGN admits that code integrated into ign.com may, in some instances, transmit information including URLs, User IDs, and/or user e-mail addresses to Piano, but denies

that such transmission includes the titles of videos or any information reflecting whether a visitor to the website viewed any video. IGN has insufficient knowledge or information to admit or deny whether this information gives Piano another layer of identification for Piano to further organize and analyze users and its behaviors, or whether this information results in any improvement to marketing, advertising, and analytics outcomes or increase in revenue, such that these allegations are denied. Fed. R. Civ. P. 8(b)(5). Except as expressly admitted, IGN denies the allegations in Paragraph 59.

60. Further, Defendant recognizes and explicitly states that "[c]urrently, our Services do not recognize browser do-not-track signals."[45] Thus, users who access Defendant's Website, such as Plaintiff, had no ability to prevent Defendant from tracking their personally identifying information and video-viewing information.

**ANSWER:** IGN admits that its Privacy Policy contains the quoted language. The text of the document cited in Paragraph 60 and Footnote 45 speaks for itself, and IGN denies all allegations and characterizations in Paragraph 60 and Footnote 45 to the extent that they are inconsistent with the text of the document. IGN denies that users who access ign.com have "no ability" to prevent tracking of any personally identifying information or video-viewing information. Except as expressly admitted, IGN denies the allegations in Paragraph 60.

61. Moreover, common sense dictates that a sophisticated media entity like Defendant, who includes a premium data collection and analysis API in its Website, is fully aware of the scope of the data that the third party is collecting. This shows that Defendant is choosing to intentionally provide user's personally identifiable information—including video-viewing information—to Piano to obtain Piano's analyzing, marketing, and advertising services.

---

[45] IGN, Privacy Policy, https://www.ign.com/privacy-policy#policy-2.

**ANSWER:** Paragraph 61 contains legal conclusions to which no response is required. To the extent a further response is required, IGN denies the allegations in Paragraph 61.

## VI. PLAINTIFF'S EXPERIENCE

62. Plaintiff Josue Joseph is a resident and citizen of Brockton, Massachusetts

**ANSWER:** IGN has insufficient knowledge or information to admit or deny the allegations in Paragraph 62, such that they are denied. Fed. R. Civ. P. 8(b)(5).

63. In 2014, Plaintiff Joseph created a free IGN account on the Website. Since that time, Plaintiff Joseph has watched numerous pre-recorded videos on the Website while signed into his account and while in Massachusetts. Plaintiff Joseph most recently viewed a video on the Website in or around September 2023, at which time he was logged into his Website account.

**ANSWER:** IGN has insufficient knowledge or information to admit or deny the allegations in Paragraph 63, such that they are denied. Fed. R. Civ. P. 8(b)(5).

64. Though his account was free of charge, Plaintiff Joseph was required to provide Defendant with his e-mail address as part of the sign-up process, for which he received numerous benefits such as (i) "[e]ntry into contests and offers"; (ii) "[f]ree game and music magazines"; (iii) "[a]ccess to IGN.com message boards"; (iv) "[t]ext and voice IGN.com chat"; (v) a "[p]ersonalized My.IGN start page"; (vi) "[c]ustomized gaming newsletters"; and (vii) a "[f]ree IGN.com e-mail address."[46]

**ANSWER:** IGN admits that users can choose to create an account on ign.com and that doing so is free of charge. IGN admits that users who choose to create an account must provide an e-mail address as part of the sign-up process. The text of the document cited in Paragraph 64 and

---

[46] BECOME AN IGN MEMBER TODAY, https://www.ign.com/articles/2001/03/09/become-an-ign-member-today-2.

Footnote 46 speaks for itself, and IGN denies all allegations and characterizations in Paragraph 64 and Footnote 46 to the extent that they are inconsistent with the text of the document. IGN has insufficient knowledge or information to admit or deny the remaining allegations in Paragraph 64, such that they are denied. Fed. R. Civ. P. 8(b)(5).

65. At all times relevant, Plaintiff Joseph never consented, agreed, nor otherwise permitted the Website to disclose his PII to third parties.

**ANSWER:** Paragraph 65 contains legal conclusions to which no response is required. To the extent a further response is required, IGN denies the allegations in Paragraph 65.

66. Likewise, Defendant never gave Plaintiff Joseph the opportunity to prevent the Website from disclosing his PII to third parties.

**ANSWER:** Paragraph 66 contains legal conclusions to which no response is required. To the extent a further response is required, IGN denies the allegations in Paragraph 66.

67. Nevertheless, each time Plaintiff Joseph viewed a pre-recorded video on the Website, Defendant disclosed Plaintiff Joseph's PII to Piano. Specifically, Defendant disclosed Plaintiff Joseph's: (i) e-mail address, (ii) user ID, and (iii) the title and URL of the video Plaintiff Joseph watched, including the fact that Plaintiff Joseph actually viewed the video.

**ANSWER:** IGN has insufficient knowledge or information to admit or deny the allegations in Paragraph 67 regarding Plaintiff's use of ign.com, such that these allegations are denied. Fed. R. Civ. P. 8(b)(5). IGN denies that the information that is transmitted to Piano includes the titles of videos or any information reflecting whether a visitor to the website viewed any video. Except as expressly admitted, IGN denies the allegations in Paragraph 67.

68. Using this information, Piano was able to identify Plaintiff Joseph and attribute his video viewing records to an individualized profile of Plaintiff Joseph. Indeed, even an ordinary

person could identify Plaintiff Joseph using the data Defendant disclosed to Piano. Piano compiled Plaintiff Joseph's PII and activity on the Website (including video-viewing information), which Defendant used and continues to use for marketing, advertising, and analytics purposes.

**ANSWER:** IGN has insufficient knowledge or information to admit or deny the allegations in Paragraph 68 regarding Plaintiff's use of ign.com and Piano's use, if any, of information related to Plaintiff, such that these allegations are denied. Fed. R. Civ. P. 8(b)(5). The remainder of Paragraph 68 contains legal conclusions to which no response is required. To the extent a further response is required, IGN denies the allegations in Paragraph 68.

## THE PARTIES

69. Plaintiff Joseph is, and has been at all relevant times, a resident of Brockton, Massachusetts and has an intent to remain there, and is therefore a citizen of Massachusetts.

**ANSWER:** IGN has insufficient knowledge or information to admit or deny the allegations in Paragraph 69, such that they are denied. Fed. R. Civ. P. 8(b)(5).

70. Defendant IGN Entertainment is a Delaware corporation with its principal place of business at 1716 Locust Street, Des Moines, Iowa 50309. Defendant develops, owns, and operates the Website, which is used throughout Massachusetts and the United States.

**ANSWER:** IGN admits it is incorporated in the State of Delaware. IGN denies that it has its principal place of business at 1716 Locust Street, Des Moines, Iowa 50309. IGN admits that it develops, owns, and operates ign.com. Except as expressly admitted, IGN denies the allegations in Paragraph 70.

## JURISDICTION AND VENUE

71. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under a law of the United States (the VPPA).

**<u>ANSWER:</u>** Paragraph 71 contains legal conclusions to which no response is required. To the extent a further response is required, IGN denies the allegations in Paragraph 71.

72. This Court also has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members, the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

**<u>ANSWER:</u>** Paragraph 72 contains legal conclusions to which no response is required. To the extent a further response is required, IGN denies the allegations in Paragraph 72.

73. This Court has personal jurisdiction over Defendant. By collecting its users' e-mail addresses—which can easily be linked to an individual user, and thus, their address—Defendant knowingly and purposefully collects personally identifiable information from Massachusetts citizens.

**<u>ANSWER:</u>** Paragraph 73 contains legal conclusions to which no response is required. To the extent a further response is required, IGN denies the allegations in Paragraph 73.

74. Further, as a result of this knowing and purposeful data collection, Defendant serves advertisements on Website directly at Massachusetts users based on their video-viewing history and profile within Defendant's Piano dashboard. One way Defendant can easily do so is by using users' IP addresses. Much like a telephone number, an IP address is a unique numerical code associated with a specific internet-connected device. Thus, knowing a user's IP address—and therefore geographical location—"provide[s] a level of specificity previously unfound in marketing."[47] An IP address allows advertisers to (i) "[t]arget [customers by] countries, cities,

---

[47] *IP Targeting: Understanding This Essential Marketing Tool*, ACCUDATA, https://www.accudata.com/blog/ip-targeting/ (last visited April 24, 2024).

neighborhoods, and … postal code"[48] and (ii) "to target specific households, businesses[,] and even individuals with ads that are relevant to their interests."[49] Indeed, "IP targeting is one of the most targeted marketing techniques [companies] can employ to spread the word about [a] product or service"[50] *because* "[c]ompanies can use an IP address … to personally identify individuals."[51]

**ANSWER:** IGN admits that it may display advertisements to users of ign.com, including users in Massachusetts. IGN admits that these advertisements may, in certain instances, include content that is targeted to users based on actions they have previously taken on the website and/or IP address, but denies that any such advertising is based on users' video viewing history. IGN denies that it can use an IP address to personally identify anyone. IGN has insufficient knowledge or information to admit or deny the allegations in Paragraph 74 regarding the information that purportedly can be obtained based on an individual's IP address, such that they are denied. Fed. R. Civ. P. 8(b)(5). The text of the document cited in Paragraph 74 and Footnotes 47, 48, 49, 50, and 51 otherwise speaks for themselves, and IGN denies all allegations and characterizations in Paragraph 74 and Footnotes 47, 48, 49, 50, and 51 to the extent that they are inconsistent with the text of the document. Except as expressly admitted, IGN denies the allegations in Paragraph 74.

75. Defendant also discloses the IP address of its users to Piano, and Defendant receives the IP address of its users when they visit the Website. Therefore, both Defendant and Piano know

---

[48] *Location-based Targeting That Puts You in Control*, CHOOZLE, https://choozle.com/geotargeting-strategies/.

[49] Herbert Williams, *The Benefits of IP Address Targeting for Local Businesses*, LINKEDIN (Nov. 29, 2023), https://www.linkedin.com/pulse/benefits-ip-address-targeting-local-businesses-herbert-williams-z7bhf.

[50] *IP Targeting: Understanding This Essential Marketing Tool*, *supra* note 1.

[51] Trey Titone, *The future of IP address as an advertising identifier*, AD TECH EXPLAINED (May 16, 2022), https://adtechexplained.com/the-future-of-ip-address-as-an-advertising-identifier/.

the location of Defendant's users, and Defendant can target advertisements at users based on their location.

**ANSWER:** IGN admits that in some instances, information that is shared with Piano may include a website visitor's IP address. IGN admits that advertisements shown to visitors to ign.com may, in certain instances, include content that is targeted to users based on IP address. IGN denies that it knows the location of its users. IGN has insufficient knowledge or information to admit or deny the remaining allegations in Paragraph 75, such that they are denied. Fed. R. Civ. P. 8(b)(5).

76. Defendant derives significant revenue from serving advertisements directed at Massachusetts users. Thus, Defendant purposefully availed itself of the privilege of doing business in Massachusetts by (i) knowingly collecting the PII of Massachusetts citizens, and (ii) knowingly deriving advertising revenue from its usage and disclosure of that PII and service of advertisements on Massachusetts users.

**ANSWER:** IGN admits that it may earn revenue from advertisements, including advertisements displayed to website visitors located in Massachusetts, but denies that it earns revenue from advertisements provided via Piano. IGN denies that it derives significant revenue from such advertisements. The remaining allegations in Paragraph 76 contain legal conclusions to which no response is required. To the extent a further response is required, IGN denies the allegations in Paragraph 76.

77. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in this District.

**ANSWER:** Paragraph 77 contains legal conclusions to which no response is required. To the extent a further response is required, IGN denies the allegations in Paragraph 77.

## CLASS ALLEGATIONS

78. Class Definition: Plaintiff seeks to represent a class of similarly situated individuals defined as all persons in the United States who created an account on the Website, watched a pre-recorded video on the Website while signed into their IGN account, and had their PII transmitted to a third party (the "Class").

**ANSWER:** Paragraph 78 contains legal conclusions to which no response is required. To the extent a further response is required, IGN denies the allegations in Paragraph 78.

79. Subject to additional information obtained through further investigation and discovery, the above-described Class may be modified or narrowed as appropriate, including through the use of multi-state subclasses.

**ANSWER:** Paragraph 79 contains legal conclusions to which no response is required. To the extent a further response is required, IGN denies the allegations in Paragraph 79.

80. **Numerosity (Fed. R. Civ. P. 23(a)(1))**: At this time, Plaintiff does not know the exact number of members of the aforementioned Class. However, given the popularity of Defendant's Website, the number of persons within the Class is believed to be so numerous that joinder of all members is impractical.

**ANSWER:** Paragraph 80 contains legal conclusions to which no response is required. To the extent a further response is required, IGN denies the allegations in Paragraph 80.

81. **Commonality and Predominance (Fed. R. Civ. P. 23(a)(2), 23(b)(3))**: There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class that predominate over questions that may affect individual members of the Class include:

(a) whether Defendant collected Plaintiff's and Class Members' PII;

(b) whether Defendant unlawfully disclosed and continues to disclose its users' PII, including their video viewing records, in violation of the VPPA;

(c) whether Defendant's disclosures were committed knowingly; and

(d) whether Defendant disclosed Plaintiff's and Class Members' PII without consent.

**ANSWER:** Paragraph 81 contains legal conclusions to which no response is required. To the extent a further response is required, IGN denies the allegations in Paragraph 81.

82. **Typicality (Fed. R. Civ. P. 23(a)(3))**: Plaintiff's claims are typical of those of the Class because Plaintiff, like all members of the Class, used the Website to watch videos, and had his PII collected and disclosed by Defendant.

**ANSWER:** Paragraph 82 contains legal conclusions to which no response is required. To the extent a further response is required, IGN denies the allegations in Paragraph 82.

83. **Adequacy (Fed. R. Civ. P. 23(a)(4))**: Plaintiff has retained and is represented by qualified and competent counsel who are highly experienced in complex consumer class action litigation, including litigation concerning the VPPA and its state-inspired offspring. Plaintiff and his counsel are committed to vigorously prosecuting this class action. Moreover, Plaintiff is able to fairly and adequately represent and protect the interests of the Class. Neither Plaintiff nor his counsel have any interest adverse to, or in conflict with, the interests of the absent members of the Class. Plaintiff has raised viable statutory claims, of the type reasonably expected to be raised by members of the Class, and will vigorously pursue those claims. If necessary, Plaintiff may seek leave of this Court to amend this Class Action Complaint to include additional representatives to represent the Class, additional claims as may be appropriate, or to amend the definition of the Class to address any steps that Defendant took.

**ANSWER:** Paragraph 83 contains legal conclusions to which no response is required.

To the extent a further response is required, IGN denies the allegations in Paragraph 83.

84. **Superiority (Fed. R. Civ. P. 23(b)(3))**: A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Class is impracticable. Even if every member of the Class could afford to pursue individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system and protects the rights of each member of the Class. Plaintiff anticipates no difficulty in the management of this action as a class action.

**ANSWER:** Paragraph 84 contains legal conclusions to which no response is required. To the extent a further response is required, IGN denies the allegations in Paragraph 84.

## CAUSE OF ACTION

## COUNT I

## VIOLATION OF THE VPPA, 18 U.S.C. § 2710, *et seq*.

85. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

**ANSWER:** IGN incorporates its answers to the foregoing allegations in Paragraphs 1 through 84 herein.

86. Plaintiff brings this claim individually and on behalf of the Class against Defendant.

**ANSWER:** Paragraph 86 contains legal conclusions to which no response is required.

To the extent a further response is required, IGN denies the allegations in Paragraph 86.

87. Defendant is a "video tape service provider" as defined by the VPPA because it "engage[s] in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials," inasmuch as it provides video (*i.e.*, "similar audio visual materials" under the VPPA's definition) to consumers via its Website. 18 U.S.C. § 2710(a)(4).

**ANSWER:** Paragraph 87 contains legal conclusions to which no response is required. To the extent a further response is required, IGN denies the allegations in Paragraph 87.

88. Plaintiff and Class Members are "consumers" as defined by the VPPA because they created an account with Defendant and thus "provide[d] consideration in the form of" personal information, and otherwise established a "commitment, relationship, or association" with Defendant. *Yershov v. Gannett Satellite Information Network, Inc.*, 820 F.3d 482, 488-89 (1st Cir. 2016) (cleaned up). Under the VPPA, therefore, Plaintiff and Class Members are "subscribers" of "goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1).

**ANSWER:** Paragraph 88 contains legal conclusions to which no response is required. To the extent a further response is required, IGN denies the allegations in Paragraph 88.

89. Plaintiff and Class Members viewed pre-recorded videos on the Website while signed into their IGN accounts. During these occasions, Defendant disclosed Plaintiff's and Class Members' PII to Piano, a third party. Specifically, Defendant disclosed Plaintiff's and Class Members: (i) e-mail address, (ii) Piano user IDs, and (iii) the title and URL of the videos Plaintiff and Class Members watched, including the fact that Plaintiff and Class Members.

**ANSWER:** Paragraph 89 contains legal conclusions to which no response is required. To the extent a further response is required, IGN denies the allegations in Paragraph 89.

90. The information disclosed by Defendant constitutes "personally identifiable information" because it makes it "reasonably and foreseeably likely to reveal which [Local Now] videos [Plaintiff and Class Members] [] obtained." Yershov, 920 F.3d at 486; *see also* 18 U.S.C. § 2710(a)(3). Indeed, the information disclosed by Defendant to Piano enables even an ordinary person to identify which specific videos were watched by Plaintiff or specific Class Members.

**ANSWER:** Paragraph 90 contains legal conclusions to which no response is required. To the extent a further response is required, IGN denies the allegations in Paragraph 90.

91. Defendant's disclosures of Plaintiff's and Class Members' PII to Piano constitute "knowing[] disclosures" of Plaintiff's and Class Members' "personally identifiable information" to a person as proscribed by the VPPA. 18 U.S.C. § 2710(a)(1).

**ANSWER:** Paragraph 91 contains legal conclusions to which no response is required. To the extent a further response is required, IGN denies the allegations in Paragraph 91.

92. Plaintiff and Class Members did not provide Defendant with any form of consent—either written or otherwise—to disclose their PII to third parties.

**ANSWER:** Paragraph 92 contains legal conclusions to which no response is required. To the extent a further response is required, IGN denies the allegations in Paragraph 92.

93. Nor were Defendant's disclosures made in the "ordinary course of business" as that term is defined by the VPPA. In particular, the Website's disclosures to Piano were not necessary for "debt collection activities, order fulfillment, request processing, [or] transfer of ownership." 18 U.S.C. § 2710(a)(2).

**ANSWER:** Paragraph 93 contains legal conclusions to which no response is required. To the extent a further response is required, IGN denies the allegations in Paragraph 93.

94. On behalf of themselves and the Class, Plaintiff seeks: (i) declaratory relief; (ii) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with VPPA's requirements for protecting a consumer's PII; (iii) statutory damages of $2,500 for each violation of the VPPA pursuant to 18 U.S.C. § 2710(c); and (iv) reasonable attorneys' fees and costs and other litigation expenses.

**ANSWER:** IGN denies that Plaintiff is entitled to any of the relief sought.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff seeks a judgment against Defendant, individually and on behalf of all others similarly situated, as follows:

(a) For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiff as representative of the Class, and naming Plaintiff's attorneys as Class Counsel to represent the Class;

(b) For an order declaring that Defendant's conduct violates the statutes referenced herein;

(c) For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(d) An award of statutory damages to the extent available;

(e) For punitive damages, as warranted, in an amount to be determined at trial;

(f) For prejudgment interest on all amounts awarded;

(g) For injunctive relief as pleaded or as the Court may deem proper; and

(h) For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit.

**ANSWER:** IGN denies that Plaintiff is entitled to any of the relief sought.

**JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38(b)(1), Plaintiff demands a trial by jury of all issues so triable.

**ANSWER:** IGN demands a jury trial as to all matters so triable.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense – Consent

The claims are barred in whole or in part because Plaintiff consented either expressly or implicitly to the conduct alleged to violate the VPPA. To use the Website, Plaintiffs were presented with and had the opportunity to review the IGN Privacy Policy and voluntarily consented to the IGN Privacy Policy when creating an account, which discloses the Website's use of cookies and information shared with third parties. Plaintiffs were similarly presented with IGN's Terms of Use, which incorporates the Privacy Policy. On information and belief, Plaintiffs continued to use services offered by IGN after agreeing to these provisions, and continued to use services offered by IGN after learning of some or all of the conduct that he alleges violates the VPPA.

### Second Affirmative Defense – Statute of Limitations

The claims are barred in whole or in part because, upon information and belief, Plaintiff failed to bring his causes of action with respect to certain of the alleged violations within the periods required by the statute of limitations for claims under the VPPA. 18 U.S.C. § 2710(c)(3) ("No action may be brought under this subsection unless such action is begun within 2 years from the date of the act complained of or the date of discovery."). Plaintiff filed the original complaint in 2024 and alleges that he first opened his account with IGN in 2014. Upon information and belief, his claim is barred to the extent it accrued outside of the limitations period.

### Third Affirmative Defense – Not Aggrieved

The claims are barred in whole or in part because Plaintiff is not "aggrieved" within the meaning of 18 U.S.C. § 2710(c)(1). Upon information and belief, Plaintiff has not suffered any

injuries, has not incurred any damages, and is not entitled to any legal remedies. Accordingly, Plaintiff is not "aggrieved" within the meaning of the VPPA and may not seek relief under the statute.

**Fourth Affirmative Defense – No Injury**

The claims are barred in whole or in part because Plaintiff has not sustained any cognizable injury or damages.

**Fifth Affirmative Defense – First Amendment**

The claims are barred in whole or in part by the First Amendment to the United States Constitution. The First Amendment protects the collection, creation, and dissemination of information and other "upstream" activities that make expression possible. *See, e.g.*, *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011). As applied to the conduct alleged in the FAC, the VPPA violates the First Amendment by unconstitutionally inhibiting IGN's ability to collect, create, and share information with its users, and by inhibiting the collection of information necessary for IGN to engage in expressive activity, without a sufficient governmental interest. The VPPA is a content-based restriction on speech because it explicitly places restrictions on the collection or creation of some categories of personal information (i.e., videos requested or watched) that give rise to expression, but not others (e.g., content read). 18 U.S.C. § 2710; *Reed v. Town of Gilbert*, 576 U.S. 155, 165 (2015). As a content-based restriction, the VPPA is subject to strict scrutiny. The VPPA fails strict scrutiny because it is not narrowly tailored to serve a compelling government interest. The VPPA also fails intermediate scrutiny because it burdens the collection and analysis of information without a sufficiently important governmental interest.

**Sixth Affirmative Defense – Ordinary Course of Business**

Plaintiff's claim and those of the putative class are barred, in whole or in part, because

IGN's alleged conduct falls within the VPPA's "ordinary course of business" exception under 18 U.S.C. § 2710(b)(2)(E).

**Seventh Affirmative Defense – Acts of Third Parties**

All or part of the damages alleged in the FAC, if any, were caused by the acts or omissions of other persons or entities for whose conduct IGN is not legally responsible.

**Eighth Affirmative Defense – Assumption of Risk**

The claims are barred in whole or in part by the doctrine of primary assumption of risk. Upon information and belief, Plaintiff approved and participated in the conduct of which he now complains. Plaintiff's conduct indicates that he implicitly consented to encounter an inherent and known risk. As such, Plaintiff excused IGN from any legal duty it may have had in connection with the conduct alleged in the FAC.

**Ninth Affirmative Defense – Laches**

The claims are barred in whole or in part by the doctrine of laches. The FAC does not allege the date(s) or time frame(s) when IGN allegedly first violated the VPPA. Upon information and belief, Plaintiff unreasonably delayed before seeking to vindicate his purported rights, which unfairly prejudiced IGN.

**Tenth Affirmative Defense – Estoppel and Waiver**

The claims are barred in whole or in part by the doctrines of estoppel and/or waiver. Upon information and belief, Plaintiff approved of the conduct of which he now complains. As a result, Plaintiff is barred from bringing their claims under the doctrines of estoppel and/or waiver.

**Eleventh Affirmative Defense – Ratification and Acquiescence**

The claims are barred in whole or in part by the doctrines of ratification and acquiescence. Upon information and belief, Plaintiff participated in the conduct of which he now complains by

accessing services offered by IGN, including after he knew or should have known of the conduct alleged in the FAC. As a result, Plaintiff is barred from bringing claims under the doctrines of ratification and acquiescence.

**Twelfth Affirmative Defense – Failure to Mitigate**

To the extent Plaintiff has suffered any damages, he has failed to take reasonable steps to mitigate those purported damages.

**Thirteenth Affirmative Defense – No Punitive or Exemplary Damages**

Plaintiff's claims for recovery of punitive and exemplary damages are barred in whole or in part because IGN acted at all times in good faith and without malice, willfulness, or reckless indifference.

**Fourteenth Affirmative Defense – Adequate Remedy at Law**

Plaintiff's claims for equitable relief fail because he has an adequate remedy at law.

**Fifteenth Affirmative Defense – Due Process**

Plaintiff's claims for damages are barred in whole or in part by the Due Process Clause of the United States Constitution. Plaintiff alleges that he and the putative class members he purports to represent are each entitled to recover $2,500 for each alleged violation of the VPPA. Plaintiff does not allege that he or the putative class members he purports to represent suffered any actual harm on account of the alleged conduct. Accordingly, any recovery would be grossly excessive, exorbitant, and disproportionate to a bare procedural or technical violation of the statute without any injury or harm and, thereby, violate the Due Process Clause of the United States Constitution.

**Sixteenth Affirmative Defense – Unjust Enrichment**

The claims are barred, in whole or in part, because any recovery from IGN would result in Plaintiff being unjustly enriched.

**Seventeenth Affirmative Defense – No Class Certification**

This case is not suitable for class treatment. On information and belief, there are insufficient common questions of law and fact to justify certifying the putative class, and common questions do not predominate over individual questions. Plaintiff cannot fairly and adequately represent the putative class or protect its interests because, among other reasons, he has interests antagonistic to those of the class, and there are defenses unique to Plaintiff. On information and belief, class litigation is not the appropriate or superior means of resolving the alleged controversies because, among other reasons, Plaintiff seeks damages such that individualized litigation of each class members' alleged claims would better suit the needs of fairness and justice.

August 22, 2025

Respectfully submitted,

*/s/ Lauren J. Tsuji*

Roy W. Bjorlin, BBO #666704
Roy.Bjorlin@wilsonelser.com
WILSON ELSER LLP
260 Franklin Street, 14th Floor
Boston, Massachusetts 02110
Telephone: 1.617.422.5300
Facsimile: 1.617.423.6917

James G. Snell *(Pro Hac Vice)*
JSnell@perkinscoie.com
PERKINS COIE LLP
3150 Porter Drive
Palo Alto, California 94304-1212
Telephone: 1.650.838.4300
Facsimile: 1.650.838.4350

Lauren J. Tsuji *(Pro Hac Vice)*
LTsuji@perkinscoie.com
PERKINS COIE LLP
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Telephone: 1.206.359.8000
Facsimile: 1.206.359.9000

**CERTIFICATE OF SERVICE**

I, Roy Bjorlin, hereby certify that, on this 22nd day of August, 2025, the foregoing document was submitted for filing through the ECF system. The document will be sent electronically to the registered participants and will be served via electronic mail on those who have appeared and are indicated as non-registered participants.

*/s/ Roy Bjorlin*
Roy Bjorlin